1  SCOTT+SCOTT LLP
   Walter W. Noss (277580)
2  Kristen M. Anderson (246108)
   707 Broadway, 10th Floor
3  San Diego, CA  92101
   Telephone:  (619) 233-4565
4  Facsimile:  (619) 233-0508
   Email: wnoss@scott-scott.com
5          kanderson@scott-scott.com

6  -and-

7  CAPLAN & ROSS, LLP
   Brian D. Caplan (*pro hac vice* pending)
8  Jonathan J. Ross (*pro hac vice* pending)
   270 Madison Avenue, 13th Floor
9  New York, NY 10016
   Telephone:  (212) 973-2376
10 Facsimile:  (212) 661-4290
   Email: bcaplan@caplanross.com
11        jross@caplanross.com

12 *Attorneys for Defendant Victor Willis*

13             UNITED STATES DISTRICT COURT

14           SOUTHERN DISTRICT OF CALIFORNIA

15

16 SCORPIO MUSIC (BLACK SCORPIO) S.A. and     Case No. 3:11-CV-01557-BTM (RBB)
   CAN'T STOP PRODUCTIONS, INC.

17                                            **MEMORANDUM OF POINTS**
                       Plaintiffs,            **AND AUTHORITIES IN SUPPORT**
                                              **OF DEFENDANT'S MOTION TO**
18 vs.                                        **DISMISS THE COMPLAINT**

19 VICTOR WILLIS                              Date:  November 18, 2011
                                              Time:  11:00 a.m.
20                     Defendant.             Courtroom:  15 – Fifth Floor
                                              Judge:  Hon. Barry T. Moskowitz
21

22                                            **NO ORAL ARGUMENT UNLESS**
                                              **REQUESTED BY COURT**

23

24

25

26

27

28
   _____
   Memorandum of Ps and As in Support          Case No. 3:11-CV-01557-BTM (RBB)
   of Defendant's Motion to Dismiss

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ..................................................................1

**STATEMENT OF FACTUAL ALLEGATIONS OF THE COMPLAINT** ..........................4

**I.    PLAINTIFFS' THREE CONTENTIONS AS TO THE VALIDITY OF THE NOTICE EACH FAIL TO SET FORTH A CLAIM FOR WHICH RELIEF CAN BE GRANTED** .................................................................8

    **A.    Section 203(a)(1) of The Copyright Act Unambiguously Provides Willis with the Right to Terminate the Grants Solely Executed by Him** .........8

    **B.    Plaintiffs' Conclusory "Work Made for Hire" Allegations Are Refuted by Documents Referred to in the Complaint and Are Otherwise Insufficient to Set Forth a Plausible Claim for Relief.** ...................12

    **C.    Plaintiffs' Attempt to Avoid the Merits of Their Work Made for Hire Claim through Time-Related Defenses Is Factually and Legally Meritless** .....................................................................22

**II.   PLAINTIFFS' ALTERNATIVE CONTENTIONS CONCERNING THE EFFECTS OF TERMINATION LIKEWISE FAIL TO SET FORTH A CLAIM FOR WHICH RELIEF CAN BE GRANTED** ...............................24

**CONCLUSION** ........................................................................25

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Ashcroft v. Iqbal,*
5
   129 S.Ct. 1937 (2009)............................................................................20

6

*Aymes v. Bonelli,*
   980 F.2d 857 (1992)..........................................................15, 16, 17, 21
7

*Barnhart v. Sigmon Coal Co.,*
8
   534 U.S. 438 (2002)..............................................................................8

9

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)........................................................................20, 21
10

*Clark v. Capital Credit*
11
   460 F.3d 1162 (9th Cir 2006) ..............................................................8

12

*Community for Creative Non-Violence v. Reid,*
13
   490 U.S. 730 (1989)................................................................... passim

14

*Dumas v. Gommerman,*
   865 F.2d 1093 (1989)......................................................................15, 17
15

*Eagle Rock Entm't v. Coming Home Productions, Inc.,*
16
   No. CV 03-571, 2004 WL 5642002 (C.D. Ca. Sep. 1, 2004)..............11

17

*Estate of Amero v. City of Oakland,*
18
   No. 10-16152, 2011 WL 3195372 (9th Cir. Jul. 28, 2011)..................22

19

*Estate of Cowart v. Nicklos Drilling Co.,*
   505 U.S. 469 (1992)..............................................................................8
20

*Greenwood v. CompuCredit Corp.,*
21
   615 F.3d 1204 (9th Cir. 2010) ..............................................................8

22

*Ileto v. Glock Inc.,*
23
   349 F.3d 1191 (9th Cir. 2003) ............................................................13

24

*Johnson v. Riverside Healthcare Sys., LP,*
   534 F.3d 1116 (9th Cir. 2008) ........................................................21, 22
25

*Kling v. Hallmark Cards, Inc.,*
26
   225 F.3d 1030 (9th Cir. 2000) ............................................................22

27

*MGIC Indem. Corp. v. Weisman,*
   803 F.2d 500 (9th Cir. 1986) ..............................................................14
28

Memorandum of Ps and As in Support    ii    Case No. 3:11-CV-01557-BTM (RBB)
of Defendant's Motion to Dismiss

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir.2001) ..................................................................13

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ................................................................13

*Sybersound Records, Inc. v. UAV Corp.,*
    517 F.3d 1137 (9th Cir. 2008) ..............................................................18

STATUTES, RULES AND REGULATIONS

17 U.S.C.
    §101..................................................................................................13, 14, 15
    §101(1)....................................................................................................15, 17
    §101(2)......................................................................................................passim
    §201................................................................................................................19
    §201(b)....................................................................................................12, 17
    §201(d)(2)......................................................................................................11
    §203............................................................................................................1, 10
    §203(a)..................................................................................................1, 7, 17
    §203(a)(1)....................................................................................................passim
    §203(a)(3)......................................................................................................10
    §203(b)..........................................................................................................24
    §203(b)(1)........................................................................................................4

37 Code of Federal Regulations
    §201.10..........................................................................................................10
    §201.10(b)(2)................................................................................................10
    §201.10(b)(2)(iv)..........................................................................................10

Federal Rules of Civil Procedure
    12(b)(6)....................................................................................................4, 13

OTHER AUTHORITIES

3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 11.03[A][1] (2004) ..............11

H.R.Rep. No. 94-1476, 94th Cong., 2d Sess. 124 (1976)........................................17

**PRELIMINARY STATEMENT**

Defendant Victor Willis is the original lead singer of the iconic musical group Village People, which recorded several hit albums in the 1970's and 1980's.  Willis, in addition to recording the lead vocals, also authored the lyrics to many of the musical compositions that were recorded by the Village People, including the classic songs, *Y.M.C.A.*, *In the Navy*, and *Go West*.  Through a series of agreements entered into from 1977-1979, Willis granted his copyright interests in those musical compositions to Can't Stop Music ("CSM"), a division of Plaintiff Can't Stop Productions, Inc. ("CSP").  Co-Plaintiff Scorpio Music, S.A. ("Scorpio") also claims current ownership interests to the rights granted by Willis to CSM.

Many of these songs were created shortly after January 1, 1978, when certain revisions to the U.S. Copyright Act took effect.  Of particular import to this action, those revisions included the right of authors to "terminate" post-1977 grants of copyright after 35 years, and thereby to recapture the ownership interests conveyed in the copyrighted works for their remaining terms of copyright.  17 U.S.C. §203.  Congress created this statutory termination right to protect authors who may have entered into unfavorable agreements, at a time when they had little bargaining leverage, by providing the author with an opportunity to enter into a new agreement once the true value of the copyrighted work has been established.

In January 2011, Willis, pursuant to and in accordance with such statutory provisions, duly served on Plaintiffs a "Notice of Termination of Post 1977 Grants of Copyrights on Certain Works of Victor Willis" (the "Notice") with respect to his interests in 33 musical compositions (the "Compositions") that were the subject of his post-1977 grants of copyright to CSM (the "Grants").  With respect to each of the Grants identified in the Notice, Willis was the sole grantor, and through those Grants he conveyed his copyright interests in the Compositions to CSM.

Plaintiffs have disputed the validity of the Notice, and have now commenced this action, seeking a declaration of this Court that Willis', "attempt to exercise rights of recapture pursuant to Section 203(a) of the United States Copyright Act ( 17 U.S.C. Section 203(a)) is void and of no force or effect".  Plaintiffs' Complaint claims that the Notice is invalid for the following three reasons:

1    First, Plaintiffs contend that because the Compositions are "joint works," as defined under applicable

2    copyright law, Section 203(a)(1) of the Copyright Act requires a majority of the authors of the joint

3    work to terminate.   Second, Plaintiffs' claim – for the first time since the creation of the

4    Compositions – that Willis was a "writer for hire" under applicable copyright law and thus had no

5    copyright interests in the Compositions that could be the subject of a termination notice.   Third,

6    Plaintiffs' resort to the absurd claim that Willis should now be barred from contesting the "validity

7    of his status as a writer for hire" on equitable grounds of statute of limitations, laches and estoppel,

8    simply because he has received significant income under the Grants for the last 30 years.

9         In addition, and perhaps realizing the lack of merit of those challenges to the validity of the

10   Notice, Plaintiffs also seek, alternatively, two declarations from this Court in the event the Notice is

11   found to be valid.   First, Plaintiffs assert, without any legal or factual basis, that Willis' recapture

12   rights should be limited to the royalty percentage interests contained in the Grants, *i.e.* the 12%-20%

13   income streams Willis currently receives under the terms of the Grants.   Second, Plaintiffs seek a

14   wholly unnecessary declaration that the Notice of Termination should not be deemed to terminate

15   existing licenses to use the Compositions.

16        Each of the arguments concerning the validity of the Notice is either incorrect as a matter of

17   law or belied by the very documents referred to and relied upon by Plaintiffs in the Complaint.

18   Plaintiffs' two alternative arguments similarly fail to state claims for relief as a matter of law.

19        First, as a matter of law, Section 203(a)(1) does not require a majority of the authors of a

20   joint work to execute a Notice of termination of a particular grant of copyright.   The express, clear,

21   and unambiguous language of Section 203(a)(1) states that " In the case of a **grant** executed by one

22   author, termination of the grant may be effected by that author...."   Here, the Grants were solely

23   executed by Willis, and thus Mr. Willis can serve Notice of termination of those Grants that he alone

24   made.

25        Next, the documents referred to and relied upon by Plaintiffs in the Complaint refute

26   definitively any claim that Willis was an "employee" or a "writer for hire", or that his contributions

27   to the creation of the Compositions were "works made for hire".   Specifically, the Grants themselves

28

1   contain no express provisions therein that use the phrase or term "writer for hire" or "employee" or

2   "work made for hire", nor are there any provisions in the Grants upon which a "writer for hire" or

3   "employee" status or "works for hire" designation could be reasonably implied or inferred.  To the

4   contrary, the agreements expressly contain language of transfer and conveyance, which is wholly

5   consistent with a grant of copyrights by the author – Willis – to CSM, and completely at odds with

6   any claim that the Compositions were works made for hire.  Similarly, the Complaint relies upon the

7   contemporaneous registrations of these works in the United States Copyright Office filed by and on

8   behalf of Scorpio.  Each of these 33 separate registrations that were filed at various times over an

9   approximately thirty month period specifically identify Willis – not CSM – as one of the "authors"

10  of the Compositions, and make no claim that they were work made for hire.  The implausible,

11  conclusory, sparse allegations of the Complaint concerning Willis' supposed "employment

12  relationship" with CSP  do not overcome in any way these dispositive documents, and otherwise

13  wholly fail to allege any of the essential factual indicia of an employee relationship as set forth in the

14  seminal Supreme Court work-for-hire decision, *Community for Creative Non-Violence v. Reid*, 490

15  U.S. 730 (1989).

16          Third, Plaintiffs' time-related defense that the statute of limitations, estoppel and laches bar

17  Willis from contesting "the validity of his status as a writer for hire," are wholly misplaced and have

18  no bearing here.  The simple fact is that Willis' Notice does not seek to contest any "work-for-hire"

19  status, as it was not until after Willis served and filed his Termination Notice in January 2011 that

20  Plaintiffs ever even raised this argument.  Accordingly, for limitations purposes, the work for hire

21  dispute cannot be deemed to have accrued any earlier than January of this year.  Moreover, pursuant

22  to the Copyright Act statute, Willis' claims to copyright ownership through the Notice did not vest,

23  and thus did not accrue, until the Notice was served, less than one year ago.  Finally, Plaintiffs'

24  "equitable" argument that Willis' statutory claims under the Copyright Act should be barred because

25  he has received "hundreds of thousands of dollars" over the last 30 years under the Grants is absurd

26  on its face.  This contention has no basis in fact or law, and instead evidences the Plaintiffs'

27  desperation to make any argument no matter how implausible to cut off Willis' statutory right to

28

Memorandum of Ps and As in Support          3          Case No. 3:11-CV-01557-BTM (RBB)
of Defendant's Motion to Dismiss

1   serve a Notice of Termination of the Grants, and the effect thereof.  In any event, the Complaint is

2   completely devoid of any allegations of that would support either a statute of limitations, laches or

3   estoppel bar to Willis contesting Plaintiffs' newly minted claim of work-for-hire.

4          Finally, neither of Plaintiffs' alternative contentions concerning the effect of the Notice have

5   any legal validity.  First, with respect to the copyright interest that Willis will recapture in the

6   Compositions, the Copyright Act is clear and unambiguous as to the effect of termination, providing

7   that, "all rights under this title that were covered by the terminated grants revert to the author…"

8   Plaintiffs' claim, that those interests should be limited by the *royalty percentages* agreed to by Willis

9   at the time of execution of the Grants, has no basis in law and is directly contrary to the very purpose

10  of the Act to protect authors from unfair bargains entered into when they had no leverage.  Second,

11  with respect to the sought Declaration as to Plaintiffs' right to continue to exploit existing uses of the

12  Compositions, there is simply no justiciable controversy ripe for adjudication.  Willis has never

13  disputed this point, which merely asserts Plaintiffs' rights under the so-called "derivative works

14  exception" to the termination provisions of the Copyright Act.  *See* 17 U.S.C. §203(b)(1).

15         Accordingly, Willis now moves to dismiss the Complaint pursuant to Federal Rule of Civil

16  Procedure 12(b)(6) on the grounds that, as matter of law, it fails to state a claim upon which relief

17  can be granted to Plaintiffs.[1]

18                  **STATEMENT OF FACTUAL ALLEGATIONS OF THE COMPLAINT**

19         The following pertinent factual allegations set forth in the Complaint (annexed as Exhibit A

20  to the accompanying Declaration of Brian D. Caplan ("Caplan Decl.") are, solely to the extent they

21  are plausible, to be taken as true[2] for the purposes of this motion:

22  _____

23  [1]      While Defendant moves to dismiss the Complaint brought by Plaintiffs, which asserts
24  specific grounds attacking the Notice, Defendant reserves its rights as to all other issues that have
    arisen between the parties, including Defendants' positions that Willis is the sole author of the lyrics
25  to the Compositions; that there were no translations or adaptations of "Foreign works" as no such
    foreign works existed; and Henri Belolo did not make any copyrightable contributions to the
26  Compositions.

27  [2]      In certain instances, particularly in Complaint ¶16, Plaintiffs have misstated how Willis
    described himself in the Notice and in the Schedule "A" attached thereto, and the recitation below of

28  _____
    Memorandum of Ps and As in Support          4      Case No. 3:11-CV-01557-BTM (RBB)
    of Defendant's Motion to Dismiss

A. Between 1977 and 1979, Willis entered into a series of agreements with CSP.[3] Compl. ¶7;

B. Pursuant to these Agreements, CSP "acting on behalf of Scorpio, hired [Willis] to translate the lyrics of and/or create new lyrics for certain musical compositions which were owned and published in France" by Scorpio.  Compl. ¶8;

C. CSP, "instructed Willis concerning  what English lyrics it desired him to provide, and supervised [Willis'] work in this regard by among other things, providing him with, and paying for the facilities in which he rendered his services."  Compl. ¶9;

D. Willis, "in accordance with the terms of the Agreements, wrote and/or translated some but not all of the English lyrics of these compositions."  Compl. ¶10;

E. CSP assigned to Scorpio its rights in these lyrics and "filed on behalf" of Scorpio "copyright registrations in the... Copyright Office for the songs."  Compl. ¶11;

F. These registrations credited Willis "as being one of several writers on each of these compositions."  Compl. ¶12;

G. Willis received for over 30 years "as compensation for his services and in accordance with the terms of the Agreements, a percentage of [CSP's] receipts from [their] commercial exploitation, which percentages range from 12% to 20% depending upon the composition."  Compl. ¶13;

H. In January 2011, Willis served upon CSP the Termination Notice, a copy of which is attached as Exhibit "A" to the Complaint.  Compl. ¶14;

I. The Termination Notice "purports to terminate the rights among others [Scorpio] and its agent [CSP] in certain composition which are enumerated on Schedule A of the Notice".  Compl. ¶15;

---

the Complaint allegations reflect these allegations, subject to footnotes that correct any such misstatements of a cited document.

[3]        All references to CSP include its division Can't Stop Music who is the actual party to these agreements with Willis.

---

J.   The Termination Notice "incorrectly states that [Willis] is 'the author of the work and the sole grantor of the rights under the Agreements"[4], and also that Willis "wrongfully suggests that the entire copyright in all of the Compositions should be assigned to him" upon the expiration of the 35 year period.[5]  Compl. ¶16;

K.   CSP responded to the Termination Notice by advising Willis' attorney that Willis "had no legitimate right to seek termination" of Scorpio's copyright ownership and demanded that the Termination Notice be withdrawn.  Compl. ¶17;

L.   Willis through his attorney refused, Complaint ¶18, and that such refusal "is contrary to the facts and the governing law."  Compl. ¶19;

M.   "The Compositions in their English language versions are joint works written by more than one person."  Compl. ¶20;

N.   Each of the writers " granted their copyright interests, if any, either to [CSP] as agent for [Scorpio], or to [Scorpio] itself.  Compl. ¶22;

O.   Willis signed the Agreements with CSP, and the other writers signed agreements with Scorpio.  Compl. ¶23;

P.   A portion of Section 203(a)(1) is quoted` as follows: "[i]n the case of a grant executed by two or more authors of a joint work, termination of the grant may be effected by a majority of the authors who executed it."  Compl. ¶24;

Q.   Willis, "simply because he signed documents different from the ones signed by the other authors of the same joint work, is neither the sole grantor nor only author of any of the Compositions and hence he is not a 'majority of authors'.  As a result, Willis "could not terminate the copyright assignment for any of the Compositions

---

[4]   As indicated by the Notice and in Schedule "A" attached thereto, Willis is actually described as "the sole grantor of the rights under the Agreements" and is described in the Schedule as "Author(s) Executing Grant".  These documents do not claim that Willis is the sole author of the works as suggested by this portion of Complaint ¶16.

[5]   Neither the Notice nor the Schedule A in any way makes such suggestion, expressly or impliedly, but merely follows the relevant statutory language and Copyright Office regulations.

without at least one other writer joining with him" so that "Willis' attempt to do so is, therefore void as to all compositions." Compl. ¶25;

R. Willis was "employed" by CSP and "hence he is a writer for hire with no right in the copyrights" for which he provided "some English lyrics." Compl. ¶26;

S. In addition to the Agreements that established Willis' writer for hire status, "the circumstances pursuant to which [he] rendered his services confirm that he functioned as an employee" of CSP. Compl. ¶27;

T. CSP, as part of its regular business representing Scorpio in the U.S "supervised and controlled the manner and means by which [Willis] worked including its location and duration, as well as the substance and meaning of the lyrics to be provided." Compl. ¶28;

U. These Compositions, "with some of the English lyrics provided " by Willis, "appeared as parts of record albums (*i.e.* collective works) further qualifying [Willis'] contribution to the Compositions as being works made for hire pursuant to" Section 101(2). Compl. ¶29;

V. Section 203(a) of the Copyright Act "specifically <u>excludes</u> works made for hire." Compl. ¶30.

W. Willis entered into the Agreements more than 30 years ago. Compl. ¶31;

X. During this period CSP paid Willis "hundreds of thousands of dollars." Compl. ¶32;

Y. "Equitable concepts such as laches and estoppel, as well as the relevant statute of limitations, preclude any attempt by [Willis] to contest the validity of his status as a writer for hire." Compl. ¶33;

Z. Plaintiffs further allege that Willis is claiming "the right to recapture at least half of the copyrights in each of the Compositions." Compl. ¶34;

AA. In so doing, Willis is "ignoring the existence of other people listed as writers of the Compositions to claim that he alone wrote all of their lyrics." Compl. ¶35;

BB.   Although Willis has no right to any portion of the copyrights, and the statute of limitations and equitable doctrines preclude him from disputing authorship attribution" but in "the event it is found otherwise," then the maximum reversionary share of copyright should be governed by, and be equal to, the percentage of royalties set forth in the Agreements" which Willis received "as his compensation for services rendered."  Compl. ¶36;

CC.   Such percentages ranged from 12% to 20%.  Compl. ¶37; and

DD.   Willis cannot terminate the existing licenses and derivative works authorized by Plaintiffs which existed prior to the terminations.  Compl. ¶38.

## ARGUMENT

## I.   PLAINTIFFS' THREE CONTENTIONS AS TO THE VALIDITY OF THE NOTICE EACH FAIL TO SET FORTH A CLAIM FOR WHICH RELIEF CAN BE GRANTED

### A.   Section 203(a)(1) of The Copyright Act Unambiguously Provides Willis with the Right to Terminate the Grants Solely Executed by Him

When statutory language is clear and the statutory scheme is coherent and consistent, a court may not make further inquiries that obstruct the plain language.  *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002).  "As in all statutory construction cases, we begin with the language of the statute.  The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case".  *Id.*; *see Clark v. Capital Credit* 460 F.3d 1162, 1168 (9th Cir 2006) ("Well-established canons of statutory construction provide that any inquiry into the scope and meaning of a statute must begin with the text of the statute itself); *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992) ("When a statute speaks with clarity to an issue judicial inquiry into its meaning, in all but the most extraordinary circumstances, is finished."); *Greenwood v. CompuCredit Corp.*, 615 F.3d 1204, 1207 (9th Cir. 2010), *cert. granted*, ⸺ U.S. ⸺, 131 S.Ct. 2874, 179 L.Ed.2d 1187 (2011) ("As always," the "starting point is the plain language of the statute … [i]f the plain meaning of the statute is unambiguous, that meaning is controlling."  *Id*.

1    In their Complaint, Plaintiffs acknowledge that Willis entered into a series of separate grants

2  of his copyright interests to CSP with respect to the Compositions, and that the other putative

3  authors entered into other separate agreements with Scorpio with respect to their interests in the

4  Compositions.  Plaintiffs then conclude that because the affected Compositions are joint works,

5  Willis is "neither the sole grantor nor only author of any of the Compositions and hence, he is not a

6  'majority of the authors'", and therefore Willis "could not terminate the copyright assignments for

7  any of the Compositions without at least one other writer joining him for such Composition", so that

8  Willis' termination of the copyright assignments is "void as to all of the Compositions."

9    In short, according to Plaintiffs, to have a valid termination of a joint work under Section

10  203(a)(1) what is required is a majority of the authors of the work who executed the several grants

11  related to the joint work, even if such grants were separately executed and with separate grantees.  In

12  other words, according to the Plaintiffs, the term grant as used in Section 203(a)(1) essentially means

13  "collective grants," *i.e.*, all the grants related to the joint work affected by the termination.  However,

14  in support of their interpretation, the Plaintiffs have conflated the statutory requirement of a majority

15  of the authors who executed a particular grant being terminated, with the majority of the authors who

16  wrote the work.

17    It is respectfully submitted that Plaintiffs are misreading the clear and unambiguous language

18  of Section 203(a)(1), the applicable portion of which reads as follows:

19    In the case of <u>a grant</u> executed by one author, termination of <u>the grant</u> may be
    effected by that author.  In the case of <u>a grant</u> executed by two or more authors of a
20    joint work, termination of <u>the grant</u> may be effected by a <u>majority of the authors who
    executed it.</u> (emphasis added).

21

22  17 U.S.C. §203(a)(1).  The term "grant" is used in the singular, not the plural, and the phrase

23  "executed it" refers to the grant in the singular not the plural as confirmed by the word "it" as

24  opposed to the word "them," which would have had to been employed if the term "grant" was

25  intended, as alleged by Plaintiffs, to include multiple or separate grants by the other authors of a joint

26  work.  Even the Copyright Office understood that the term "grant" was used in the singular and not

27  the plural sense with respect to a joint work, when the Copyright Office required in its regulations

28

1   related to the notice of termination provided, *inter alia*, "in the case of a joint work, the authors who

2   executed the grant being terminated". *See* 37 C.F.R. §201.10(b)(2)(iv) (emphasis added).

3         Moreover, the operative words of the entire Section 203 relating to the termination provisions

4   are "the grant" and not "joint authors" or "collective grants" "or "several grants" or similar terms

5   that denote plural grants, no matter how much Plaintiffs may try to justify their argument.  The term

6   "grant" is always used in the singular and not plural sense. *See, e.g.*, 17 U.S.C. §203(a)(1) which

7   states: "In the case of a grant executed by one author, termination of the grant may be effected by

8   that author ..."; 17 U.S.C §203(a)(3) which states:  "Termination of the grant may be effected at any

9   time during a period of five years beginning at the end of thirty-five years from the date of execution

10  of the grant; or, if the grant covers the right of publication of the work, the period begins at the end

11  of thirty-five years from the date of publication of the work under the grant or at the end of forty

12  years from the date of execution of the grant, whichever term ends earlier."  (emphasis added).

13        Similarly, the regulations of the Copyright Office as set out in 37 C.F.R. §201.10, which sets

14  out the requirements for filing a termination notice under Section 203 does not even acknowledge or

15  accept that the phrase "the grant" also means "collective grants" or any other similar term that

16  denotes plural grants, but focuses only on the grant (singular) rather than the number of authors of a

17  joint work as the operative word. *See, e.g.*, 37 C.F.R §201.10(b)(2) as to what the notice should

18  provide, states:

19         (ii) The name of each grantee whose rights are being terminated, or the grantee's
           successor in title, and each address at which service of the notice is being made;
20
           (iii) The date of execution of the grant being terminated and, if the grant covered the
21         right of publication of a work the date of publication of the work under the grant**;** (iv)
           For each work to which the notice of termination applies, the title of the work and the
22         name of the author or, in the case of a joint work, the authors who executed the grant
           being terminated; and, if possible and practicable, the original copyright registration
23         number; (v) A brief statement reasonably identifying the grant to which the notice of
           termination applies;" (emphasis added).
24
25        In short, as indicated above, both the statutory scheme and the related regulations

26  manifest a coherent and consistent understanding of the term "grant," as singular not plural,

27  in the context of a joint work.  Indeed, Plaintiffs' unreasonable proffered interpretation

28

Memorandum of Ps and As in Support          10      Case No. 3:11-CV-01557-BTM (RBB)
of Defendant's Motion to Dismiss

1  cannot be reconciled with the other statutory provisions.  For example, under Plaintiffs'

2  theory there would be no way to determine the date of "the grant" being terminated (and thus

3  the effective date of termination which runs therefrom) or the dates by which the Notice of

4  Termination must be served (which likewise is established by reference to the date of

5  execution of "the grant").

6      Although there do not appear to be any cases that have yet addressed this specific issue, the

7  following excerpt from the frequently cited and well respected treatise, Melville B. Nimmer & David

8  Nimmer, Nimmer on Copyright (2004), is both instructive and persuasive.   In volume 3,

9  §11.03[A][1], at pages 11-38, the following example is given:

10         Suppose that a work is written by five joint authors, only three of whom join in
           executing a grant either of their interest in the copyright or of a non exclusive license
11         of the work. Any two of the three executing joint authors may terminate the grant. It
           would not be sufficient for the two non executing joint authors to join only one
12         executing joint author for termination purposes.  This is for the reason that the three
           together would not constitute a majority of the authors who executed the grant.  If
13         two of the three executing joint authors join in a termination (regardless of how many
           authors wrote the work) they thereby terminate the rights granted by the third
14         executing joint author.  It is the grant per se, and not merely the terminating authors'
           respective grant of rights therein, that is terminated.   A termination by two of the
15         three executing joint authors also affects the rights of the remaining joint authors
           who neither joined in the original execution of the grant nor in its subsequent
16         termination.  Whatever rights were properly conveyed in a joint work are terminated
           if the requisite number of authors who made the grant join in the termination.  This is
17         true even though the grant and its termination may affect (either favorably or
           adversely) the rights of the non granting joint authors."  (emphasis added).

18

19  3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright §11.03[A][1] (2004).  Such a

20  reading of the statute is likewise wholly supported by and consistent with the principles of co-

21  ownership of copyright, and the divisibility of copyright rights, under which it is well-established

22  that joint authors of a work are co-owners of that copyright, with each enjoying the right and ability

23  to independently license and assign their rights in such copyright to third parties.  See e.g.,

24  §201(d)(2) of the Copyright Act, 17 U.S.C. §201(d)(2) ("any of the exclusive rights comprised in a

25  copyright … may be transferred … and owned separately.  The owner of any particular exclusive

26  right is entitled, to the extent of that right, to all of the protections and remedies accorded to the

27  copyright owner by this title"); Eagle Rock Entm't v. Coming Home Productions, Inc., No. CV 03-

28

Memorandum of Ps and As in Support                11       Case No. 3:11-CV-01557-BTM (RBB)
of Defendant's Motion to Dismiss

1    571, 2004 WL 5642002, at *13 (C.D. Ca. Sep. 1, 2004) (noting that "joint authors co-own the

2    copyright; they are joint owners of the work in undivided shares" and thus, "a joint owner can

3    transfer his interest in the joint work to a third-party").

4            Indeed, it for this very reason that oftentimes there are two or more publisher/copyright

5    owners of a given musical composition, as the songwriters separately assign their copyright interests

6    to different publishers.  For example, assume three writers create a musical work.  Songwriter A has

7    a relationship with Warner/Chappell Music and assigns his one-third copyright interest in the song to

8    Warner/Chappell; songwriter B assigns his one-third interest to EMI Music Publishing, and

9    songwriter C assigns his one-third interests in the copyright to Sony Music Publishing, making

10   Warner, EMI and Sony equal co-owners of the copyrights in the musical work.  Warner's interests in

11   the song solely derive from Writer A.  Writers B and C have not conveyed anything to Warner.

12   Writer A, as the sole author who executed the grant of rights to Warner, may thus, on his own,

13   terminate that specific grant of his one-third interests in the copyright to Warner.  Such is the exact

14   circumstance here, where Willis executed a grant of his copyright interests in the Compositions to

15   CSM, and, according to the Complaint, the other purported writers of the Compositions executed

16   separate grants of their copyright interests in the Compositions to Scorpio.

17           The language of Section 203(a)(1) is clear, plain and unambiguous with respect to the

18   termination of a grant of a joint work, viz., it is the majority of the authors who executed the grant

19   being terminated, rather than the majority of the authors who wrote the work, that is the requirement

20   for a valid notice of termination.  In the instant action, Willis was the only joint work author who

21   executed each particular grant that is being terminated.  Willis, as the only author who executed the

22   Grant is well within his statutory rights to terminate it.

23   **B.     Plaintiffs' Conclusory "Work Made for Hire" Allegations Are Refuted by
24           Documents Referred to in the Complaint and Are Otherwise Insufficient to Set
             Forth a Plausible Claim for Relief.**

25           The U.S. Copyright Act provides that in the case of a "work made for hire," the "employer of

26   other person for whom the work was prepared is considered the author for purposes of this title."  17

27   U.S.C. §201(b).  The Copyright Act further provides that the termination provisions at issue in this

28

Memorandum of Ps and As in Support          12       Case No. 3:11-CV-01557-BTM (RBB)
of Defendant's Motion to Dismiss

1    action are not applicable to "works made for hire."  Based upon these provisions, Plaintiffs contend

2    that the Notice is a nullity because the Compositions were allegedly works made for hire.

3            The U.S. Copyright Act provides a very specific, and limiting, definition of a "work made for

4    hire" as follows:

5            A work made for hire is –

6            (1) a work prepared by an employee within the scope of his or her employment; or

7            (2) a work specially ordered or commissioned for use as a contribution to a
                 collective work, as a part of a motion picture or other audiovisual work, as a
8                translation, as a supplementary work, as a compilation, as an instructional text, as
                 a test, as answer material for a test, or as an atlas, if the parties expressly agree in
9                a written instrument signed by them that the work shall be considered a work
                 made for hire.

10

11   17 U.S.C. §101.  Notwithstanding the Complaint's conclusory allegations, the documents referred to

12   and relied upon in the Complaint establish the implausibility of any work for hire claim here.

13           While facts which are alleged in the complaint are presumed true on a motion to dismiss

14   under Fed .R. Civ. P. 12(b)(6), the Court need not "accept as true allegations that contradict matters

15   properly subject to judicial notice or by exhibit" or those which are "merely conclusory," require

16   "unwarranted deductions" or "unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266

17   F.3d 979, 988 (9th Cir.2001), *amended on other grounds*, 275 F.3d 1187 (9th Cir. 2001); *see also*

18   *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (court need not accept as true unreasonable

19   inferences or conclusions of law cast in the form of factual allegations).  Moreover, "in order to

20   '[p]revent[ ] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting…documents

21   upon which their claims are based,' a court may consider a writing referenced in a complaint but not

22   explicitly incorporated therein if the complaint relies on the document and its authenticity is

23   unquestioned."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (court properly considered

24   defendant's engagement letter on 12(b)(6) motion where plaintiff's breach of contract complaint

25   explicitly referred to the engagement letter and the authenticity of the letter was not in dispute (citing

26   *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998), *superseded by statute on other grounds,*

27   *as stated in Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006)).

28

1    In ¶¶7 and 8 of the Complaint, Plaintiffs allege that between 1977 and 1979, Willis entered

2    into a series of agreements, under which he was "employed" by CSP and "hence a writer for hire

3    with no right in the copyrights" (*see* Compl. ¶26), and these agreements established Willis' "writer

4    for hire status" (*see* Compl. ¶27).

5    In all, there were nine such agreements, with the post-1977 agreements compromising the

6    Grants identified in the Notice, all of which were identical except as to their dates, the songs

7    involved, the rates of royalty compensation and the signatory on behalf of CSP.  Although Plaintiffs

8    conspicuously did not attach a copy of one of the Grants to the Complaint in this action, Plaintiff

9    CSP, in a separate recent civil action in the United States District Court for the Southern District of

10   New York, has acknowledged the identical nature of the terms of the Grants, and filed a copy of one

11   of the Grants with the Court in that Action.  *See* Caplan Decl., ¶4, and Ex. B thereto (copy of

12   Affidavit of Stewart L. Levy dated June 8, 2011 and Exhibit E annexed thereto [hereinafter referred

13   to as the "Levy Affidavit."]).  A review of Exhibit E to the Levy Affidavit (the Grant for the

14   Composition *Y.M.C.A.*) establishes that, contrary to the allegations of the Complaint, the Grants do

15   not have any express provisions therein that use the phrase or term "writer for hire" or "employee",

16   or "work made for hire", nor are there any provisions therein upon which an "employee" or "writer

17   for hire" status, or that the Compositions were "works made for hire," are implied, or that such terms

18   could even be reasonably inferred.  Defendant respectfully requests that the Court take Judicial

19   Notice of the Levy Affidavit, which was filed publicly in the United States District Court for the

20   Southern District of New York, and thus it is properly considered since,  "[o]n a motion to dismiss,

21   [a court] may take judicial notice of matters of public record outside the pleadings."  *MGIC Indem.*

22   *Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (holding that district court properly took

23   judicial notice of documents from a prior proceeding – motion to dismiss and supporting

24   memorandum of law – when considering a motion to dismiss).

25   Given the Copyright Act's requirement that the parties "expressly agree in a written

26   instrument signed by them that the work shall be considered a work made for hire," 17 U.S.C. §101,

27   the absence of any such express provision in the Grants precludes, as a matter of law, any claim by

28

Memorandum of Ps and As in Support          14      Case No. 3:11-CV-01557-BTM (RBB)
of Defendant's Motion to Dismiss

1   Plaintiffs that the Compositions were specially ordered or commissioned as works made for hire,

2   under the second prong of the work for hire definition.  17 U.S.C. §101(2).  Accordingly, Plaintiffs'

3   contention that the Compositions were works made for hire, can only be based upon the first prong

4   of the work for hire definition, namely that Willis prepared the Compositions while he was an

5   "employee" of CSM and "within the scope of his or her employment."  17 U.S.C. §101(1).

6        The actual terms of the Grant directly contradict Plaintiffs' contentions.  First, the wording of

7   the Grant makes clear that Willis' contribution to the Compositions occurred prior to the execution

8   of the Grant, stating in its first sentence, "Whereas, [Willis] has translated the lyrics of or created

9   new lyrics for certain compositions…"  Thus, the Grant is directly contrary to Plaintiffs' allegation

10  that Plaintiffs "pursuant to the agreements… hired defendant to translate the lyrics of and/or create

11  new lyrics for" the Compositions.  *See* Compl. ¶8.  Moreover, there is no mention of "employment,"

12  or any matter even remotely related to an employment relationship in the Grant.  To the contrary, the

13  Grant contains typical language consistent with the assignment of copyright interests from an author

14  to a publisher, stating:

15       [Willis] hereby sells, assigns, transfers and delivers to Publisher, its successors, and
         assigns, the Adaptation [including the title and lyrics thereof] … together with the
16       worldwide copyright thereof and the right to secure and hold any and all extensions
         and renewals thereof of such copyright throughout the entire world, together with all
17       of his rights, title and interest, both legal and equitable therein….

18       Just as Plaintiffs' factual allegations concerning the Grants are implausible, Plaintiffs' other

19  factual allegations fall far short of the settled and established standards to ascertain whether there is

20  an employee relationship in connection with works made for hire under the Copyright Act, which

21  have been set forth by the U.S. Supreme Court in *Community for Creative Non-Violence v. Reid*,

22  490 U.S. 730 (1989), hereinafter "*CCNV v. Reid*", as well as in the opinion of the Ninth Circuit in

23  *Dumas v. Gommerman*, 865 F.2d 1093 (1989), and in the opinion of the Second Circuit in *Aymes v.*

24  *Bonelli*, 980 F.2d 857 (1992).  Specifically, in *CCNV v. Reid*, the Supreme Court held that to

25  determine whether a work is a "work made for hire" within the §101 definition, a court should first

26  apply general common law of agency principles to ascertain whether the work was prepared by an

27  employee or an independent contractor, and, depending upon the outcome, should then apply either

28

1   §101(1), for employees, or §101(2), for independent contractors.  *Id.* at 740-41.  However, the

2   Supreme Court made it very clear that regardless of whether the work was prepared by an employee

3   or an independent contractor, supervision or control over creation of the work alone is not

4   controlling.  *Id.* at 741-42.

5          Where the work is claimed to have been prepared by an "employee," the Supreme Court in

6   *CCNV v. Reid*, identified certain factors that characterize an "employer-employee" relationship as

7   defined by agency law, *Id.* at 751-52, but the Court also noted that no single factor is determinative.

8   *Id.* at 752.  The *Reid* factors are as follows:

> [1] the hiring party's right to control the manner and means by which the product is
> accomplished ... ; [2] the skill required; [3] the source of the instrumentalities and
> tools; [4] the location of the work; [5] the duration of the relationship between the
> parties; [6] whether the hiring party has the right to assign additional projects to the
> hired party; [7] the extent of the hired party's discretion over when and how long to
> work; [8] the method of payment; [9] the hired party's role in hiring and paying
> assistants; [10] whether the work is part of the regular business of the hiring party;
> [11] whether the hiring party is in business; [12] the provision of employee benefits;
> and [13] the tax treatment of the hired party.

14  *Id.* at 751-52.  However, as noted by the Second Circuit in *Aymes v. Bonelli*, 980 F.2d 857 (2d Cir.

15  1992):

> Reid established that no one factor was dispositive, but gave no direction concerning
> how the factors were to be weighed.  It does not necessarily follow that because no
> one factor is dispositive all factors are equally important, or indeed that all factors
> will have relevance in every case.  The factors should not merely be tallied but
> should be weighed according to their significance in the case.

19         The *Aymes* Court then set forth five factors always relevant to a work-for-hire analysis;

20  namely, the provision of employee benefits, the tax treatment of the hired party, whether the alleged

21  hiring party has the right to assign additional projects to the hired party, the means and manner of

22  creation, and the skill required.  *Id.* at 861.  As the *Aymes* Court stated "These factors will almost

23  always be relevant and should be given more weight in the analysis, because they will usually be

24  highly probative of the true nature of the employment relationship".  *Id.* at 861.  In the *Aymes* case,

25  the Court then found that while the right to control and assign additional work, might be important in

26  some cases depending on the degree to which the employer actually controlled the manner of the

27  creation, these factors were outweighed primarily by: (1) the "peculiar expertise or creative genius"

28

Memorandum of Ps and As in Support          16      Case No. 3:11-CV-01557-BTM (RBB)
of Defendant's Motion to Dismiss

1   required, viz., a highly-skilled independent contractor, (2) the absence of any employee benefits,

2   *e.g.*, health, unemployment, or life insurance benefits, and (3) also the failure to pay social security

3   taxes and withhold federal or state income taxes. *Id.* at 862-64.

4         The Ninth Circuit, in *Dumas v. Gommerman*, similarly places the emphasis of the employee

5   analysis upon traditional factors such as the payment of salary, employee benefits and tax treatment.

6   After engaging in an extensive review of the "works for hire" doctrine under the 1909 Copyright Act

7   and the 1976 Copyright Act,[6] the Court concluded that "[o]ur analysis leads to a clear result in this

8   case.  Only the works of formal, salaried employees are covered by §101(1).  Only certain types of

9   specially commissioned works qualify as "work made for hire" under §101(2)." *Id.* at 1102.  While

10  the limitation to "formal, salaried, employees," was subsequently rejected as too limiting by *CCNV*

11  *v. Reid*, the following factors set forth in *Dumas* mirrors the *Reid* factors:

12        When the issue is raised in the context of deciding the parties' status when the
      relationship is ambiguous, relevant factors will be such things as (1) whether the

13        artist worked in his or her own studio or on the premises of the buyer; (2) whether
      the buyer is in the regular business of creating works of the type purchased; (3)

14        whether the artist works for several buyers at a time, or exclusively for one; (4)
      whether the buyer retains authority to assign additional projects to the artist; (5) the

15        tax treatment of the relationship by the parties; (6) whether the artist is hired through
      the channels the buyer customarily uses for hiring new employees; (7) whether the

16        artist is paid a salary or wages, or is paid a flat fee; and (8) whether the artist obtains
      from the buyer all benefits customarily extended to its regular employees. While the

17        degree of control and input exercised by the buyer may be relevant to an inquiry into
      joint authorship, it will not ordinarily be relevant in determining the employment

18        status of the artist, just as this factor is not relevant in distinguishing between, for
      example, in-house and outside counsel."

19

20

---

21  [6]     In doing so, the Court noted the seriousness of a work for hire determination given its impact

22  upon the termination provisions of the Copyright Act:  "A more important effect of section 201(b) is
to eliminate termination rights that the employee would otherwise have if ownership vested in the

23  employer by transfer, rather than ab initio.  17 U.S.C. §203(a) provides that for works other than
those made for hire, a transfer or license of the copyright or any right under the copyright is subject

24  to termination 35 years after the transfer or license is made.  This provision was intended to adjust
for "the unequal bargaining position of authors, resulting in part from the impossibility of

25  determining a work's value until it has been exploited." H.R.Rep. No. 94-1476, 94th Cong., 2d Sess.
124 (1976), U.S. Code Cong. & Admin. News 1976, p. 5740.  Designating a work as "made for hire"

26  irretrievably takes away more than just the artist's copyright; it also deprives him or her of the
opportunity to renegotiate the transfer after the market value of the work has been more precisely

27  determined." *Id.* at p.XXX (footnote omitted).

---

28    Memorandum of Ps and As in Support     17     Case No. 3:11-CV-01557-BTM (RBB)
  of Defendant's Motion to Dismiss

1   *Id*. at 1105.  Given these established and specific requirements, the allegations of the Complaint do

2   not assert a plausible work for hire claim here.  First, the express terms of the Grants themselves

3   belie any such contention, as there is no reference whatsoever in the Grants to an employment

4   relationship of any kind.  Surely, if Willis were an "employee" or a "writer for hire" or that the

5   Compositions were "works made for hire", there would have been such express language in the

6   document that confirmed such status or designation, or at least even some language that impliedly

7   confirms such status or designation or from which such status or designation could reasonably be

8   inferred.

9          Second, and further contradicting the conclusory allegations of the Complaint, the

10   registrations of the copyrights in the Compositions with the U.S. Copyright Office (prepared and

11   submitted by Plaintiffs) identify and describe Willis as an "author" of the Compositions and

12   expressly disclaim that his contributions were works made for hire.  A certified copy the registration

13   for the Composition *Y.M.C.A.* is annexed to the Caplan Decl. as Exhibit C.  Just as with the Levy

14   Affidavit, the Court may take judicial notice of these publicly filed documents and consider them on

15   this motion.  *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008)

16   (taking judicial notice of copyright registration records from U.S. Copyright Office).

17          As noted in ¶¶11 and 12 of the Complaint, Plaintiffs state that "copyright registrations" in the

18   Copyright Office were filed for the Compositions and these registrations "credited Willis as being

19   one of several writers on each of the compositions."  In all, as noted in the Notice, there are thirty

20   three (33) such registrations with respect to the works whose grants are being terminated.

21          Initially, it should be noted that each of these registrations were prepared and filed by CSP by

22   its then personnel or by its then attorneys.  *See* Caplan Decl., Ex. C.  These registrations were filed

23   over approximately a thirty months period between January 1, 1978, and June 1980.

24

25

26

27

28

---

Memorandum of Ps and As in Support            18        Case No. 3:11-CV-01557-BTM (RBB)
of Defendant's Motion to Dismiss

As acknowledged in the Complaint at ¶12, the "authors" are identified as Willis and the other putative writers.[7]  If the Compositions had been works made for hire, the employer, here CSM, would have been identified as the author on the registration.  *See* 17 U.S.C. §201.  Moreover, and consistent with the fact that the Compositions were not works for hire, in response to the question in Section 2 on the copyright registration form that asks, "Was the author's contribution to the work a 'work made for hire'", Plaintiffs checked "No" for Willis, as well as for each of the other putative authors.  Caplan Decl., *Ex. C.*

Notwithstanding the conclusive documentary evidence cited above – the Grants themselves and the contemporaneously filed Registrations – which conclusively confirm that Willis was not an "employee" or a "writer for hire", or that the Compositions were "works made for hire", Plaintiffs nevertheless assert allegations of purported facts which they claim establish such status or such designation.

Fatal to Plaintiff's claim, these very documents referred to and relied upon in the Complaint belies and contradicts the "factual" allegations made in the Complaint to support their position that Willis was an "employee."  Specifically, Plaintiffs allege that under the Grants:

CSP "hired [Willis] to translate the lyrics of and/or create new lyrics for certain musical compositions."  Compl. ¶8;

CSP "instructed Willis concerning what English lyrics it desired him to provide, and supervised [Willis'] work in this regard by among other things, providing him with, and paying for the facilities in which he rendered his services."  Compl. ¶9;

Willis was "employed" by CSP and "hence he is a writer for hire with no right in the copyrights" for which he provided "some English lyrics."  Compl. ¶26; and,

Such Agreements "established Willis' writer for hire status."  Compl. ¶27.

Then, perhaps realizing the actual provisions of the Grants do not support these allegations of employment, Plaintiffs further allege that:

---

[7]     While it is not germane to the instant motion, Defendant contends that Henri Belolo, one of the three authors listed on the copyright registrations at issue, had no role in the creation of the Compositions.

1    "The circumstances pursuant to which [Willis] rendered his services confirm that he
     functioned as an employee" of CSP.  Compl.¶27; and,

2

3    CSP, as part of its regular business representing Scorpio in the U.S. "supervised and
     controlled the manner and means by which [Willis] worked including its location and
     duration, as well as the substance and meaning of the lyrics to be provided."  Compl.

4    ¶28.

5         As is evident from these allegations, Plaintiffs have merely pleaded labels and conclusions

6    and a formulaic recitation of purported facts to establish that Willis was an "employee" as such term

7    is understood in the context of the Copyright Act.  This is not sufficient.  As stated in *Bell Atl. Corp.*

8    *v. Twombly,* 550 U.S. 544, 555-56 (2007):

9         While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
          detailed factual allegations, a plaintiff's obligation to provide the grounds of his

10        entitlement to relief requires more than labels and conclusions, and a formulaic
          recitation of the elements of a cause of action will not do.  Factual allegations must

11        be enough to raise a right to relief above the speculative level, on the assumption that
          all the allegations in the complaint are true (even if doubtful in fact) (citations,

12        internal quotations and alterations omitted).

13   Additionally, writing for the majority, Justice Souter explained:

14        "we do not require heightened fact pleading of specifics, but only enough facts to
          state a claim to relief that is plausible on its face.  Because the plaintiffs here have

15        not nudged their claims across the line from conceivable to plausible, their complaint
          must be dismissed."  *Id.* at 570.

16

17        Also, as stated in *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009), "[T]he tenet that a court

18   must accept as true all of the allegations contained in a complaint is inapplicable to legal

19   conclusions."  As a result, "a court considering a motion to dismiss can choose to begin by

20   identifying pleadings that, because they are no more than conclusions, are not entitled to the

21   assumption of truth.  While legal conclusions can provide the framework of a complaint, they must

22   be supported by factual allegations."  *Ashcroft v. Iqbal, supra,* 129 S.Ct. at 1950.

23        Without conceding that Plaintiffs have pleaded more than labels and conclusions, perhaps the

24   closest Plaintiffs come to pleading "factual allegations" are those contained in Complaint ¶9, that

25   CSP "instructed Willis concerning  what English lyrics it desired him to provide, and supervised

26   [Willis'] work in this regard by among other things, providing him with, and paying for the facilities

27   in which he rendered his services," and in Complaint ¶28, that CSP, as part of its regular business

28

1   representing Scorpio in the U.S. "supervised and controlled the manner and means by which [Willis]

2   worked including its location and duration, as well as the substance and meaning of the lyrics to be

3   provided."

4           Glaringly absent from the Complaint's allegations are any factual allegations concerning any

5   of the *Reid* factors, other than control, and in particular the five essential factors set forth in *Aymes*

6   and *Dumas*.   Nowhere in the Complaint are there any allegations concerning the provision of

7   employee benefits to Willis by Plaintiffs, the tax treatment of the payments made to Willis, whether

8   CSM had the right to assign additional projects to Willis, specific allegations concerning the means

9   and manner of creation, and the skill required.  *See Aymes*, 980 F.2d at 861.  The absence of even

10  factual allegations as to these essential elements, coupled with the documentary evidence directly

11  contradicting a work for hire claim, makes Plaintiffs' claim implausible.

12          In any event, even with respect to the allegations that do appear in the Complaint, no details

13  are provided as to any of these "facts" and the "factual allegations" of the Complaint are simply not

14  sufficient so that "any reasonable inferences drawn from them" could even allow a court to accept as

15  plausible that Willis was an "employee" of CSP or that the Compositions were "works made for

16  hire," and it is clear that there is no "reasonable expectation" that discovery could establish Willis'

17  status as an "employee" based upon these conclusory, unsupported, allegations.  *Cf. Johnson v.*

18  *Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008), *Twombly*, 550 U.S. at 556.

19  Perhaps one of the best indications that Willis was an independent contractor and not an employee, is

20  the fact that there were nine separate agreements entered into over a thirty plus  month period for the

21  works that Willis wrote rather than one over-all agreement that covered all his works.  Surely, if

22  Willis were an "employee" there would or should have been one all inclusive agreement that covered

23  all these works, or even a provision therein or in one of the nine Agreements that gave CSP the right

24  to assign additional projects to Willis (one of the *Reid* factors for which no allegations appear in the

25  Complaint); instead there were only the nine separate Agreements executed over a thirty month

26  period.  Of the *Reid* factors, Plaintiffs solely allege "supervision and control," which allegations

27

28

Memorandum of Ps and As in Support         21      Case No. 3:11-CV-01557-BTM (RBB)
of Defendant's Motion to Dismiss

1    themselves are barren of any specifics or details, and, as noted in *Aymes* and *Dumas*, is insufficient,

2    by itself, to sustain a finding of an employee relationship.

3           The insufficient allegations of the Complaint, which allegations are even contradicted by the

4    documents relied upon by Plaintiffs, utterly fails, as matter of law, to set forth a plausible claim that

5    Willis was an employee of CSP, or that the Compositions were otherwise works made for hire.

6    **C.     Plaintiffs' Attempt to Avoid the Merits of Their Work Made for Hire Claim
             through Time-Related Defenses Is Factually and Legally Meritless**

7

8           In *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir.2008), the Court

9    held that dismissal is proper where there is either a lack of a cognizable legal theory or the absence

10   of sufficient facts alleged under a cognizable legal claim.

11          The sole factual allegations supporting Plaintiffs' time-based attack on the validity of the

12   Notice are their allegations that Willis entered into the Grants more than thirty years ago and, during

13   that time has been paid hundreds of thousands of dollars under the terms of those Grants.  Compl.

14   ¶¶31-32.  Plaintiffs then conclude, based solely upon those allegations, that, "equitable concepts

15   such as laches and estoppel, as well as the relevant statute of limitations, preclude any attempt by

16   defendant Willis to contest the validity of his status as a writer for hire."  Compl. ¶33.

17          Plaintiffs have not alleged any factual basis for the application of any of these "equitable

18   concepts."  *See Estate of Amero v. City of Oakland*, No. 10-16152, 2011 WL 3195372, at *4 (9th

19   Cir. Jul. 28, 2011) ("In this circuit, the plaintiff carries the burden of pleading and proving the

20   following elements of equitable estoppel: (1) knowledge of the true facts by the party to be estopped,

21   (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true

22   facts by the relying party, and (4) detrimental reliance."); *Kling v. Hallmark Cards, Inc.*, 225 F.3d

23   1030 (9th Cir. 2000) (To obtain a judgment on the affirmative defense of laches, a defendant must

24   prove both an unreasonable delay by the plaintiff and prejudice to itself.).  Plaintiffs do not even

25   attempt to allege any of these essential factual elements.  All Plaintiffs allege is that Willis,

26   rightfully, received royalties under the terms of the Grants for 30 years.  Whether or not Willis

27   served the Notice, and whether or not Willis contends he created the Compositions as an author and

28

Memorandum of Ps and As in Support          22      Case No. 3:11-CV-01557-BTM (RBB)
of Defendant's Motion to Dismiss

1   not a worker for hire, Willis was entitled to receive those payments, and Plaintiffs were contractually

2   obligated to make them.  The conduct alleged – receiving royalty payment for 30 years – provides no

3   basis to preclude Willis from contesting Plaintiff's work-for-hire claim.

4        Similarly, there is no basis to assert that Willis cannot contest Plaintiffs' work for hire claim

5   on the basis of a statute of limitations.  First, the Complaint contains no allegations of time as to

6   when Plaintiffs contend that Willis' "claim" to contest such status accrued for limitations purposes.

7   In fact, the Complaint does not even specify what statute of limitations should be applied.  Such

8   allegations are wholly insufficient to state a claim for relief.

9        As a factual matter, it was not until <u>after</u> Willis served and filed his Termination Notice dated

10  January 21, 2011, that the Plaintiffs ever claimed that Willis was an "employee" or a "writer for

11  hire".  In fact, as detailed above, both the Grants themselves and the copyright registrations for the

12  Compositions evidence that Willis WAS NOT an employee or worker for hire of CSP.  In other

13  words, the total time period during which this "issue" has been in play is approximately six months.

14  Purely from a time line basis, it is difficult to understand how laches and the statute of limitations

15  have any bearing or relevancy to preclude Willis from challenging Plaintiffs' assertion that he was

16  an "employee" or "writer for hire."  Plaintiffs can cite no statute or case law that, given the time line,

17  would in any way support their assertion.

18       Willis has simply not slept on any of his rights; there has been no reasonable reliance by

19  Plaintiffs upon any improper conduct of Willis, and Willis' statutory rights under the termination

20  provisions of the Copyright Act did not even vest until he served the Notice less than one year ago.

21                       *      *      *

22       In sum, there is no basis for any of the three grounds set forth in the Complaint in support of

23  Plaintiffs' claim that the Notice is invalid.  Willis enjoys the statutory right to serve a Notice of

24  Termination of the Grants, which he alone executed; Willis was not an employee or otherwise a

25  worker for hire of CSP; and Willis' Notice is timely.  Accordingly, the Complaint does not set forth

26  a plausible claim for a Declaration that the Notice is not valid.

27

28

## II. PLAINTIFFS' ALTERNATIVE CONTENTIONS CONCERNING THE EFFECTS OF TERMINATION LIKEWISE FAIL TO SET FORTH A CLAIM FOR WHICH RELIEF CAN BE GRANTED

In the Complaint, Plaintiffs assert that in the event the Notice is found to be valid and effective, Willis' rights thereunder should nevertheless be limited in two respects. First, Plaintiffs assert, in direct contravention of the express terms and purposes of the statute that Willis' recaptured interests should be limited to the royalty percentages set forth in the Grants. Next, Plaintiffs claim that a dispute exists between the parties as to the effect of termination upon existing licenses. As to the first contention, Plaintiffs are wrong as a matter of law. As to the second contention, Plaintiffs are wrong that there is any dispute between the parties.

With respect to both of these contentions, §203(b) of the Copyright Act unambiguously addressed them, which provides in pertinent part:

> (b) Effect of Termination – Upon the effective date of termination, all rights under this title [i.e. the Copyright Act] that were covered by the terminated grants revert to the author …, but with the following limitations:
>
> > (1) A derivative work prepared under authority of the grant before its termination may continue to be utilized under the terms of the grant after its termination…

17 U.S.C. §203(b).

Plaintiffs' absurd argument that the royalty share set forth in the Grant is the proper measure of Plaintiffs' copyright interests in the respective Composition simply ignores the express language of the Copyright Act, which provides that "all" copyrights that were covered by the terminated grant revert to the author. In this instance, all of Willis' copyright interests in the Compositions were covered by the Grants, and thus all of those copyright interests will revert to him upon termination of that Grant, regardless of the income percentages set forth in the Grants.

Finally, as is clear from the Notice and the pre-litigation letters between the parties (all of which are referred to in the Complaint), Willis has not and does not dispute that existing derivative works may continue to be exploited under existing licenses, after termination, under the terms of the Grant and those existing licenses. This is simply the law under the so-called 'derivative works exception' of the Copyright Act. There is no dispute that is ripe for relief from this Court.

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that this Court dismiss the Plaintiffs' Complaint in it entirety, and that Defendants be granted such other and further relief that to this Court seems just, proper and equitable.

DATED:  September 26, 2011

Respectfully Submitted,

SCOTT+SCOTT LLP


_____/s/  Walter W. Noss_____
WALTER W. NOSS

Walter W. Noss(277580)
Kristen M. Anderson (246108)
707 Broadway, 10th Floor
San Diego, CA  92101
Telephone:  (619) 233-4565
Facsimile:  (619) 233-0508
Email:  wnoss@scott-scott.com
          kanderson@scott-scott.com

-and-

CAPLAN & ROSS, LLP
Brian D. Caplan (*pro hac vice* pending)
Jonathan J. Ross (*pro hac vice* pending)
270 Madison Avenue, 13th Floor
New York, NY 10016
Telephone:  (212) 973-2376
Facsimile:  (212) 661-4290
Email:  bcaplan@caplanross.com
          jross@caplanross.com

*Attorneys for Defendant Victor Willis*