1   Robert S. Besser, State Bar No. 46541
    Christopher Chapin, State Bar No. 112608
2   LAW OFFICES OF ROBERT S. BESSER
    1221 Second Street   Suite 300
3   Santa Monica, California 90401
    TEL: (310) 394-6611
4   FAX: (310) 394-6613

5   Attorneys for Plaintiffs
    CAN'T STOP PRODUCTIONS, INC.
6   and SCORPIO MUSIC (BLACK SCORPIO) S.A.

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  SCORPIO MUSIC (BLACK SCORPIO) S.A.        Case No. 11CV1557 BTM RBB
    and CAN'T STOP PRODUCTIONS, INC.,         Honorable Barry T. Moskowitz
12
                   Plaintiffs,               MEMORANDUM OF POINTS IN
13  vs.                                       OPPOSITION TO MOTION TO
                                              DISMISS COMPLAINT FOR
14  VICTOR WILLIS, an individual,             DECLARATORY RELIEF

15                 Defendant.                Date:  November 18, 2011
                                    /        Time:  11:00 a.m.
16                                           Ctrm:  15

17                                           **ORAL ARGUMENT REQUESTED**

18

19

20

21

22

23

24

25

26

27

28

                                    -1-

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

1

## TABLE OF CONTENTS

2

PAGE

4  I.     SUMMARY OF ARGUMENT...........................................................................2

5  II.    ARGUMENT..................................................................................................6

6         A.     THE COMPLAINT CONTAINS SUFFICIENT ALLEGATIONS

7                TO STATE A CLAIM FOR DECLARATORY RELIEF ..........................6

8         B.     WITH RESPECT TO JOINT WORKS, TERMINATION OF THE

9                COPYRIGHT GRANT REQUIRES A MAJORITY OF THE

10               AUTHORS EXECUTING THE GRANT ...............................................7

11        C.     EVEN IF WILLIS' THEORY IS CORRECT HIS MOTION TO

12               DISMISS CANNOT BE GRANTED BECAUSE THE ISSUE OF

13                WHAT PERCENTAGE OF EACH COPYRIGHT WILLIS

14               SEEKS TO RECAPTURE BELONGS TO WILLIS AND WHAT

15               PERCENTAGE TO HIS CO-AUTHORS WOULD REMAIN

16               UNRESOLVED ..................................................................................9

17

18 III.   CONCLUSION .............................................................................................10

3

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2
PAGE

3
*Ashton-Tate Corp. v. Ross*

4
916 F.2d 516, 520 (9th Cir. 1990) ............................................................9

5
*Bell Atlantic Corp. v. Twombly*

6
550 U. S. 544, 127 S.Ct. (1955, 1965) 167 L.Ed 929 (2007) ...................7

7
*Craigslist, Inc. v. Autoposterpro, Inc.*

8
(2009) U. S. Dist. LEXIS 31587 (N.D. Cal. [Oakland] 2009) ...................7

9
*Eagle Rock Entertainment v. Coming Home Productions*

10
2004 WL5642002 at *13 (C.D. Cal. 2004) ..............................................8

11
*Erickson v. Pardus*

12
551 U. S. 89 127 S.Ct. 2197, 2200, 167 L.Ed2d 1081 (2007) .................7

13
*Pareto v. F.D.I.C.*

14
139 F.3d 696, 699 (9th Cir. 1998) ............................................................7

15
*Robinson v. Buy Rite Costume Jewelry*

16
2004 U.S. Dist. LEXIS 16675 (S.D.N.Y. 2004)........................................9

17
*Sweet Music, Inc. v. Melrose Music Corp.*

18
189 F.Supp.655, 658 (SD Cal.1960) ....................................................4, 5

# STATUTES

19
17 U.S.C. § 101 ................................................................................2, 8

20
17 U.S.C. § 203(a)(1) ......................................................................2, 8

21
17 U.S.C. § 24 .....................................................................................4

22
17 U.S.C. § 201(a) .........................................................................8

23
Federal Rules of Civil Procedure, 12(b)(6) ...........................................6

24
Federal Rules of Civil Procedure, 8(a)(2) ..............................................6

# OTHER AUTHORITIES

25
Nimmer on Copyright, 3-11, § 11.03[A][1] .........................................2, 9

26
Nimmer on Copyright, 3-11, § 11.03[A][1] 6.10[A], 6.11 .....................3

27
1976 Copyright Act, § 203(a)(1) ...........................................................3

28

## I.    SUMMARY OF ARGUMENT

Defendant VICTOR WILLIS ("Willis") argues that even though he is provably and admittedly a "joint author" of each of the songs at issue, he is not required to comply with the provisions of the Copyright Act which govern the termination of copyright grants by authors of joint works.[1]

The question of who has the right to terminate a grant of copyright in a joint work (defined under copyright law as works that are a unitary whole with each contributor's part "merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. Section 101) is answered by the Copyright Act – which unambiguously requires the agreement of the majority of authors who executed grant(s) in the work on or after January 1, 1978, in order to invoke the statutory right to termination provided by 17 U.S.C. §203(a)(1).

In fact, the 1976 revision to the Copyright Act, which took effect on January 1, 1978, specifically changed Section 203 to require that a grant of copyright in a joint work executed on or after January 1, 1978, may be terminated only by a majority of the joint authors who granted rights.

Grants in joint works made prior to January 1, 1978 could be terminated by each executing joint author as to their separate contribution only, even if a majority of the executing joint authors did not join in such termination. 3-11 *Nimmer on Copyright*, §11.03[A][1]. The rationale for the distinction relates to the legal consequences of the failure of a grantor of renewal rights to survive until such rights vest. The heirs of an author that died in the first term of the copyright would automatically inherit the author's rights upon commencement of the renewal term whereas the surviving author would have had no right to terminate but for the provisions of the 1909 Copyright Act. *Id.*

---

[1]  Plaintiffs reserve, but put aside for now, the issue of whether any of the copyrights which Willis seeks to recapture were works for hire. The unassailable fact is that each song had more than one author, each of whom executed grants of copyrights in the songs they wrote together. This alone is dispositive of this motion.

1  Willis apparently wants to return to the 1909 Act and to do so argues that *the*
2  *right to transfer*, grant, assign or sell his interest in the copyrights without the consent of
3  his co-authors under Section 201(d) of the 1976 Act is co-extensive with his *right to*
4  *terminate* those same grants, assignments or sales under Section 203(a)(1) of the 1976
5  Act without the co-authors' consent. However, the two concepts, grants of rights in joint
6  works and the termination of grants of copyright by authors of joint works, involve
7  different statutory provisions and legislative goals.

8  As far as the right to transfer, a joint author may not transfer a greater copyright
9  interest in the work than he or she owns. Thus, a co-author may transfer to another his
10  or her share of the copyright and may grant a non-exclusive license in the entire work
11  without the consent of any other joint author (subject only to a duty to account to the
12  non-granting joint authors). But the author may not grant an exclusive license of rights,
13  nor may he or she transfer more than a proportionate interest in the work." 3-11 *Nimmer*
14  *on Copyright*, §§ 11.03[A][1], 6.10[A], and 6.11.

15  With this is mind, the "majority-to-terminate" grants or licenses by joint authors
16  under Section 203(a)(1), operates as follows. A majority of the co-authors who made
17  grants or otherwise exploited their undivided interest (as Willis and his co-authors have
18  done) must agree and join in the termination in order for the statutory conditions of
19  Section §203 to be met. [2]

20  Willis has misconstrued and taken out of context a quote from *Nimmer on*
21  *Copyright* (see Memorandum Of Points And Authorities In Support Of Motion To
22  Dismiss Complaint ("Willis Memo"), p.11, ll 10-18) to attempt to establish the
23  proposition that he can terminate his grant because he executed a separate document
24  from the other joint authors. (See Willis Memo, p. 12, ll 17-22 where Willis asserts that
25  it is the right of the majority of authors that executed a particular grant being terminated,

26  _____

27  [2] Willis never actually commits to a position as to whether he is just one author of the
   joint works involved in this action, but the complaint herein clearly so alleges. (See Complaint,
28  ¶'s 20 through 23)

-3-

1   rather than a majority of the authors who granted rights in the work, "that is the

2   requirement of a valid notice of termination.") The point that Professor Nimmer makes

3   in the language quoted by Willis is simply that a majority of authors who have granted

4   rights in the creation of the joint work must join in the termination.  Those who have not

5   made grants do not need to do so.  That this is what Professor Nimmer meant is made

6   clear later in the same section relied upon by Willis where Professor Nimmer in the

7   context of explaining the differences between the 1909 Act and the 1976 Act states:

8              "As indicated above, if this were a grant executed on or after January 1,

9   1978, no termination could occur because the consent of a majority of joint owners is

10  required for this purpose."

11          Thus even the authority relied upon by Willis recognizes that it is a majority of the

12  joint owners (i.e., authors) that is essential to terminate a grant of copyright in a joint

13  work.

14          It has long been established that form will not be favored over substance to

15  defeat the obvious policy behind the Copyright Act.  In *Sweet Music, Inc. v. Melrose*

16  *Music Corp.*, 189 F.Supp. 655 (SD Cal. 1960) this Court soundly rejected the idea that it

17  mattered whether "granting documents" were signed on the same piece of paper by all

18  joint authors.  The *Sweet Music* case arose in the context of the determination of the

19  effect under the 1909 Copyright of authors who had assigned their renewal rights and

20  did or did not survive into the renewal term.[3]  In response to the argument that it

21  mattered that both authors (only one of whom survived to the renewal term) had

22  executed the same document rather than separate assignments, the Court stated:

23              "Plaintiff's argument overlooks the fact that the renewal provisions of § 24

24  of the Act (*17 U.S.C. § 24*) were designed to protect only the classes of persons

25  specifically designated therein, and not a surviving co-author. If Sweet and Grant each

26  _____

27          [3] Under the 1976 revisions to the Copyright Act, there are no longer "initial" and

28  "renewal" terms of copyright, so the rationale that would permit only one author to terminate as
    to his contribution no longer exists.

-4-

1  had executed separate assignments of their respective interests in the renewal
2  copyright, it is beyond argument that both Sweet and plaintiff, as his transferee with
3  notice, would be bound under the rationale of the Fisher case. The mere circumstance
4  that they happened to join in the same assignment agreement should not dictate a
5  different result in the face of the policy declared in § 28 of the Act." (Emphasis added)
6  *Sweet*, *supra.*, at 658.

7        Here, the "mere circumstance" is that the authors of all 33 joint works involved in
8  this action happened to execute separate granting documents. The clear purpose and
9  policy of the revisions to the termination provisions under the 1976 Act was to make
10  termination only available to a majority decision where joint works are concerned.
11  Thus, Willis' argument is fundamentally flawed because it attempts to defeat the policy
12  of the 1976 revision by relying on the proposition that it matters whether all the authors
13  of a joint work executed the same document when granting the rights necessary to
14  create the joint work.

15        Willis seems to admit that he is only one of the joint authors who executed the
16  grants necessary to convey the complete copyright in the 33 joint works, but claims that
17  he is nonetheless a "majority of one" with respect to each of the 33 jointly authored
18  songs. His notion that he was the "sole grantor" comes from his assertion that ***his***
19  songwriting contracts were separate documents granting his interest to one corporation
20  (in the case of YMCA as an example), Plaintiff Can't Stop Productions, Inc., "Can't
21  Stop") while the other authors of the same songs signed with different entities – in most
22  cases with Plaintiff Scorpio Music (Black Scorpio) S.A. This contention is supported
23  with seriously flawed logic and no legal authority whatsoever.[4]

24        To the extent Willis claims that because he and his co-authors signed separate

25  _____

26      [4]  For business reasons that were relevant in the 1970's, each co-writer of a
     song would sometimes literally sign separate pieces of paper with respect to their joint
27  grant of copyright in each particular song. The fact that the grantees may have been
     different as to each author is of no relevance whatsoever. The songs are still joint
28  works under the Copyright Act. See, *Sweet Music*, *infra.*

-5-

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

1  pieces of paper instead of all signing the same piece of paper, such a distinction has
2  never been recognized by any Court.

3      If Willis claims that the effect of his Notice of Termination is that he "recaptures"
4  the entire copyright because he is the sole author who granted a copyright in each
5  song, then he must, at the very least, provide evidence to overcome the allegations of
6  the Complaint that he was only one joint author and that the other joint authors made
7  grants of copyright interest in the same songs.  This issue cannot be resolved on a
8  pleadings motion.

9      If Willis claims the effect of his Notice to be that Willis recovers "his interest," i.e.,
10 whatever he granted in the first place, a substantial factual issue arises that cannot be
11 determined by Willis' Motion to Dismiss.

12     Whatever Willis' actual contribution to each song may been, it was by law
13 undivided and cannot be carved out in order to be terminated unilaterally – he must
14 have with him a majority of his co-authors.

15     Finally, it is curious that Willis has brought a motion to dismiss instead of a
16 counterclaim for declaratory relief.  Since there is a genuine dispute between the
17 parties as to whom the right to terminate belongs, a dismissal will accomplish nothing
18 because the dispute will remain causing continuing unnecessary cost and uncertainty.

19 II.     ARGUMENT

20
21         A.     THE COMPLAINT CONTAINS SUFFICIENT ALLEGATIONS TO STATE
                  A CLAIM FOR DECLARATORY RELIEF

22     Willis moves to dismiss this case with prejudice "and without leave to amend" on
23 the ground that the Complaint for Declaratory Relief Complaint fails to state a claim for
24 which relief can be granted under *Federal Rules of Civil Procedure* ("*FRCP*"), 12(b)(6).
25 However, Plaintiffs have stated sufficient facts to accomplish what is required by the
26 *FRCP* and its "notice pleading" foundation.

27     A complaint must contain "a short and plain statement of the claim showing that
28 the pleader is entitled to relief."  *FRCP*, 8(a)(2).  The rules require that this statement

-6-

1 constitute a "showing" rather than a blanket assertion of entitlement to relief. *Bell*
2 *Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed. 929 (2007).
3 Specific facts are not necessary; the statement need only give the defendant notice of
4 what the claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89,
5 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081(2007). Plaintiff's factual allegations need only
6 "be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct., at
7 1965.

8       In order to survive a motion to dismiss under *FRCP*, 12(b)(6), the plaintiff's
9 obligation to provide the grounds for his entitlement to relief necessitates that the
10 complaint contain "more than labels and conclusions, and a formulaic recitation of the
11 elements of a cause of action will not do." *Craigslist, Inc. v. Autoposterpro, Inc.*, 2009
12 U.S. Dist. LEXIS 31587 (N.D. Cal. [Oakland]) 2009). The Complaint for Declaratory
13 Relief herein contains far more than labels and conclusions or formulaic recitations of
14 facts. It sets forth a genuine, justiciable dispute that must be decided in order for
15 Plaintiffs to continue to operate their businesses in an orderly manner.

16       In evaluating a motion to dismiss, the Court must accept as true all material
17 allegations of the complaint, as well as reasonable inferences to be drawn from them.
18 *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the
19 light most favorable to plaintiffs. *Id*. Plaintiffs have more than adequately pled their
20 claim that Willis' purported unilateral "Notice of Termination" of his copyright grants in
21 joint works is invalid.

22       B.    WITH RESPECT TO JOINT WORKS, TERMINATION OF THE
                 COPYRIGHT GRANT REQUIRES A MAJORITY OF THE AUTHORS
23                  EXECUTING THE GRANT

24       Willis claims to be the "sole grantor" of his joint copyright interest in each of the
25 33 songs listed in the Notice of Termination. Exhibit "A" to the Complaint ("Cmplt.");
26 Willis Memo, p. 1, ll. 22-23.

27       The facts alleged by the Complaint herein provide an adequate statement that
28 this claim is untrue:

-7-

1    Paragraphs 20 through 23 allege:

2        "20.    The Compositions, in their English language versions, are joint works
3                written by more than one person.

4        21.    In accordance with the Copyright Law joint works are considered as a
5                'unitary whole' with each contributor's part 'merged into [in]separable or
6                in[ter]dependent parts of a unitary whole.'  17 U.S.C. Section 101.

7        22.    Each of [the] writers of the Compositions granted their copyright interests,
8                if any, either to Can't Stop, as the agent of Scorpio Music, or to Scorpio
9                Music itself.

10       23.    While Defendant Willis signed the Agreements, the other writers of the
11               Compositions signed songwriter agreements with Scorpio Music."

12                        Cmplt., p. 5, ll. 2-10.

13       A "joint work" is defined by Section 101 of the Copyright Act as "a work prepared

14   by two or more authors with the intention that their contributions be merged into

15   inseparable or interdependent parts of a unitary whole."  17 U.S.C. §101.  Joint authors

16   co-own the copyright; they are joint owners of the work in undivided shares.  17 U.S.C.,

17   §201(a);  *Eagle Rock Entertainment v. Coming Home Productions, Inc.*, 2004 WL

18   5642002 at *13 (C.D. Cal. 2004).  This citation to *Eagle Rock*, also used by Willis (Willis

19   Memo., p. 11, l. 27 - p. 12, l. 3) while correct with respect to transfer rights, has nothing

20   to do with termination rights.

21       17 U.S.C. §203 provides:

22               "In the case of any work . . . the exclusive or nonexclusive grant of

23        a transfer or license of copyright or of any right under a copyright,

24        executed by the author on or after January 1, 1978 . . . is subject to

25        termination under the following conditions:

26               (1) in the case of a grant executed by one author, termination of the

27        grant may be effected by the author . . . .  **In the case of a grant**

28        **executed by two or more authors of a joint work, termination of the**

-8-

1    **grant may be effected by a majority of the authors who executed it.**"

2    The Ninth Circuit, as well as the Second Circuit, employs a two part test for joint

3    authorship.  The test requires a co-authorship claimant to show that "each of the

4    putative co-authors (1) made independently copyrightable contributions to the work; and

5    (2) fully intended to be co-authors. *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 520 (9th

6    Cir. 1990); *Robinson v. Buy Rite Costume Jewelry*, 2004 U.S. Dist. LEXIS 16675

7    (S.D.N.Y. 2004).  This analysis may not be necessary here because Willis appears to

8    admit that he is a joint author of each of the 33 songs whose copyrights he has

9    purported to terminate.[5]   Willis Memo p. 12, ll. 20-22.  However, unless and until Willis

10   concedes that he is only one author of each of the joint works involved in this action, an

11   evidentiary hearing will be required to determine authorship of each of the 33

12   compositions.

13   Willis takes a giant, absurd and unprecedented logical leap by asserting that he

14   (or any joint author) has the right to recapture his separate grant of copyright without

15   reference to his or his co-owners' "undivided interests" or their grants of copyright in the

16   same song.

17   Since it is the grant *per se*, and not merely the terminating authors' respective

18   grants of rights therein, that is terminated (3-11 *Nimmer on Copyright* §11.03[A][1]),

19   Willis' Notice of Termination would terminate the other authors' interests in their grants.

20   As noted above, this result would amount to a rejection of the 1976 revision of the

21   Copyright Act, which was designed specifically to eliminate claims such as Willis makes

22   herein, and be a return to the law as it existed prior to the 1976 revision.

23       C    EVEN IF WILLIS' THEORY IS CORRECT HIS MOTION TO DISMISS
             CANNOT BE GRANTED BECAUSE THE ISSUE OF WHAT
24           PERCENTAGE OF EACH COPYRIGHT WILLIS SEEKS TO
             RECAPTURE BELONGS TO WILLIS AND WHAT PERCENTAGE TO
25           HIS CO-AUTHORS WOULD REMAIN UNRESOLVED

26

27   [5]   He also asserts inconsistently that the other writers listed on the copyright registration
     are "putative" writers and that he therefore is the only writer who can terminate.  Motion to
28   Dismiss, p. 1, ll. 22-23.  This raises a factual issue that cannot be resolved on a pleadings motion.

-9-

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

1    Even from his moving papers, it is impossible to ascertain what portion of each

2  copyright Willis believes he is entitled to recapture.  If Willis is permitted to terminate

3  any grant of a jointly owned copyright at his sole discretion, and in any amount he

4  decides, the result would truly be nothing short of chaos.

5    What exactly would Willis be recovering?  In some instances he is credited with

6  having written words and music, but in others only words.  He also gratuitously asserts

7  (for no apparent reason) that Mr. Belolo, one of the credited authors, "had no role in the

8  creation of the Compositions" at issue. (Willis Memo, p. 19, footnote 7)  Even if this

9  were the case, however, Willis would still not constitute a majority of the authors of any

10  one of the Compositions because they each had at least one more other author.  Thus,

11  an evidentiary hearing would be necessary to determine Willis' rights under Willis'

12  theory and there is no basis for dismissal of the Complaint.

13  III.    CONCLUSION

14    For all the foregoing reasons, Plaintiffs CAN'T STOP PRODUCTIONS, INC. and

15  SCORPIO MUSIC (BLACK SCORPIO) S.A. hereby respectfully request that

16  Defendant's motion be denied in its entirety and that he be ordered to answer the

17  Complaint forthwith.

18    Dated:  November 3, 2011

19    LAW OFFICES OF ROBERT S. BESSER

20

21    By _____
          ROBERT S. BESSER
22          Attorneys for Plaintiffs SCORPIO MUSIC (BLACK
          SCORPIO) S.A. and CAN'T STOP PRODUCTIONS, INC.

23

24

25

26

27

28

-10-