Robert S. Besser, State Bar No. 46541
Christopher Chapin, State Bar No. 112608
LAW OFFICES OF ROBERT S. BESSER
1221 Second Street   Suite 300
Santa Monica, California 90401
TEL: (310) 394-6611
FAX: (310) 394-6613

Attorneys for Plaintiffs
CAN'T STOP PRODUCTIONS, INC.
and SCORPIO MUSIC (BLACK SCORPIO) S.A.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCORPIO MUSIC (BLACK SCORPIO) S.A. and CAN'T STOP PRODUCTIONS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> VICTOR WILLIS, an individual, <br><br> Defendant. | Case No. 11CV1557 BTM RBB <br> Honorable Barry T. Moskowitz <br><br> AMENDED MEMORANDUM OF POINTS IN OPPOSITION TO MOTION TO DISMISS COMPLAINT FOR DECLARATORY RELIEF <br><br> Date: November 18, 2011 <br> Time: 11:00 a.m. <br> Ctrm: 15 <br><br> **ORAL ARGUMENT REQUESTED** |

**AMENDED ONLY TO INCLUDE SIGNATURE OF COUNSEL THAT WAS INADVERTENTLY OMITTED FROM FILING DATED NOVEMBER 4, 2011.**

-1-

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

## I. SUMMARY OF ARGUMENT

Defendant VICTOR WILLIS ("Willis") argues that even though he is provably and admittedly a "joint author" of each of the songs at issue, he is not required to comply with the provisions of the Copyright Act which govern the termination of copyright grants by authors of joint works.[1]

The question of who has the right to terminate a grant of copyright in a Joint Work (defined under copyright law as works created by more than one person with each contributor's part "merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. Section 101) is answered by the Copyright Act – which unambiguously requires the agreement of the majority of authors who executed grant(s) in the work on or after January 1, 1978, in order to invoke the statutory right to termination provided by 17 U.S.C. §203(a)(1).

In fact, the 1976 revision to the Copyright Act, which took effect on January 1, 1978, specifically changed Section 203 to require that a grant of copyright in a joint work executed on or after January 1, 1978, may be terminated only by a majority of the joint authors who granted rights. This is a significant change from the 1909 Copyright Act.[2]

Willis attempts to return to the 1909 Copyright Act by arguing that *the right to transfer*, grant, assign or sell his interest in the copyrights without the consent of his co-authors under Section 201(d) of the 1976 Act is co-extensive with his *right to terminate*

---

[1] Plaintiffs reserve, but put aside for now, the issue of whether any of the copyrights which Willis seeks to recapture were works for hire. The unassailable fact is that each song had more than one author, each of whom executed grants of copyrights in the songs they wrote together. This alone is dispositive of this motion.

[2] The rationale for the distinction relates to the legal consequences of the failure of a grantor of renewal rights to survive until such rights vest. The heirs of an author that died in the first term of the copyright would automatically inherit the author's rights upon commencement of the renewal term whereas the surviving author would have had no right to terminate but for the provisions of the 1909 Copyright Act. 3-11 *Nimmer on Copyright*, §11.03[A][1].

-2-

those same grants, assignments or sales under Section 203(a)(1) of the 1976 Act without the co-authors' consent. However, the two concepts, <u>grants of rights</u> in Joint Works and the <u>termination of grants of copyright</u> in Joint Works, involve different statutory provisions and legislative goals.

As far as the grant of a right to transfer, a joint author may not transfer a greater copyright interest in the work than he or she owns. Thus, a Joint Work's co-author may transfer to another his or her share of the copyright and may grant a non-exclusive license in the entire work without the consent of any other joint author (subject only to a duty to account to the non-granting joint authors). The author may not, however, grant an exclusive license of rights, nor may he or she transfer more than a proportionate interest in the work." 3-11 *Nimmer on Copyright*, §§ 11.03[A][1], 6.10[A], and 6.11.

With regard to the right to terminate grants or licenses of Joint Works, Section 203(a)(1) of the Copyright Act provides that a majority of the co-authors who made the grants or otherwise exploited their undivided interest (as Willis and his co-authors have done) must agree and join in the termination in order for the statutory conditions of Section §203 to be met.[3]

In an effort to circumvent this obvious mandate of the Copyright Act, Willis has misconstrued and taken out of context a quote from *Nimmer on Copyright* (see Memorandum Of Points And Authorities In Support Of Motion To Dismiss Complaint ("Willis Memo"), p.11, ll 10-18) to attempt to establish the proposition that he can terminate his grant because he executed a separate document from the other joint authors. (See Willis Memo, p. 12, ll 17-22 where Willis asserts that it is the right of the majority of authors that executed a particular grant being terminated, rather than a majority of the authors who granted rights in the work, "that is the requirement of a valid

---

[3] Willis never actually commits to a position as to whether he is just one author of the Joint Works involved in this action, but the complaint herein clearly so alleges. (See Complaint, ¶'s 20 through 23). See also Declaration of Robert S. Besser, filed and served concurrently herewith, which attaches copies of the Records of the United States Copyright Office identifying each of the authors for each of the 33 compositions involved in this action.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

notice of termination"). The point that Professor Nimmer makes in the language quoted by Willis is simply that a majority of authors who have granted rights in the creation of the joint work must join in the termination. Those who have not made grants do not need to do so. That this is what Professor Nimmer meant is made clear later in the same section relied upon by Willis where Professor Nimmer in the context of explaining the differences between the 1909 Act and the 1976 Act states:

> "As indicated above, if this were a grant executed on or after January 1, 1978, no termination could occur because the consent of a majority of joint owners is required for this purpose."

Thus even the authority relied upon by Willis recognizes that it is a majority of the joint owners (i.e., authors) that is essential to terminate a grant of copyright in a joint work.

Moreover, it has long been established that form will not be favored over substance to defeat the obvious policy behind the Copyright Act. In *Sweet Music, Inc. v. Melrose Music Corp.*, 189 F.Supp. 655 (SD Cal. 1960) this Court soundly rejected the idea that it mattered whether "granting documents" were signed on the same piece of paper by all joint authors. The *Sweet Music* case arose in the context of the determination of the effect under the 1909 Copyright Act of authors who had assigned their renewal rights and did or did not survive into the renewal term.[4] In response to the argument that it mattered that both authors (only one of whom survived to the renewal term) had executed the same document rather than separate assignments, the Court stated:

> "Plaintiff's argument overlooks the fact that the renewal provisions of § 24 of the Act (*17 U.S.C. § 24*)

---

[4] Under the 1976 revisions to the Copyright Act, there are no longer "initial" and "renewal" terms of copyright, so the rationale that would permit only one author to terminate as to his contribution no longer exists.

-4-

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

were designed to protect only the classes of persons specifically designated therein, and not a surviving co-author. <u>If Sweet and Grant each had executed separate assignments of their respective interests in the renewal copyright, it is beyond argument that both Sweet and plaintiff, as his transferee with notice, would be bound under the rationale of the Fisher case. The mere circumstance that they happened to join in the same assignment agreement should not dictate a different result in the face of the policy declared in § 28 of the Act.</u>" (Emphasis added) *Sweet, supra.,* at 658.

Here, the "mere circumstance" is that the authors of all 33 Joint Works involved in this action happened to execute separate granting documents. The clear purpose and policy of the revisions to the termination provisions under the 1976 Act was to make termination only available to a majority decision where Joint Works are concerned. Thus, Willis' argument is fundamentally flawed because it attempts to defeat the policy of the 1976 revision by relying on the proposition that it matters whether all the authors of a joint work executed the same document when granting the rights necessary to create the joint work.

Willis seems to admit that he is only one of the joint authors who executed the grants necessary to convey the complete copyright in the 33 Joint Works, but claims that he is nonetheless a "majority of one" with respect to each of the 33 jointly authored songs. His notion that he was the "sole grantor" comes from his assertion that **his** songwriting contracts were separate documents granting his interest to one corporation (in the case of YMCA as an example), Plaintiff Can't Stop Productions, Inc., "Can't Stop") while the other authors of the same songs signed with different entities – in most cases with Plaintiff Scorpio Music (Black Scorpio) S.A. This contention is supported

with seriously flawed logic and no legal authority whatsoever.[5]

To the extent Willis claims that because he and his co-authors signed separate pieces of paper instead of all signing the same piece of paper, such a distinction has never been recognized by any Court and defies logic.

If Willis claims that the effect of his Notice of Termination is that he "recaptures" the entire copyright because he is the sole author who granted a copyright in each song, then he must, at the very least, provide evidence to overcome the allegations of the Complaint that he was only one joint author and that the other joint authors made grants of copyright interest in the same songs. This issue cannot be resolved on a pleadings motion.

If Willis claims the effect of his Notice to be that Willis recovers "his interest," i.e., whatever he granted in the first place, a substantial factual issue arises that cannot be determined by Willis' Motion to Dismiss.

Whatever Willis' actual contribution to each song may have been, it was by law undivided and cannot be carved out in order to be terminated unilaterally – he must have with him a majority of his co-authors.

Finally, it is curious that Willis has brought a motion to dismiss instead of a counterclaim for declaratory relief. Since there is a genuine dispute between the parties as to whom the right to terminate belongs, a dismissal will accomplish nothing because the dispute will remain causing continuing unnecessary cost and uncertainty.

II.   ARGUMENT

   A.   THE COMPLAINT CONTAINS SUFFICIENT ALLEGATIONS TO STATE A CLAIM FOR DECLARATORY RELIEF

Willis moves to dismiss this case with prejudice "and without leave to amend" on

---

[5] For business reasons that were relevant in the 1970's, each co-writer of a song would sometimes literally sign separate pieces of paper with respect to their joint grant of copyright in each particular song. The fact that the grantees may have been different as to each author is of no relevance whatsoever. The songs are still Joint Works under the Copyright Act. See, *Sweet Music, infra.*

the ground that the Complaint for Declaratory Relief Complaint fails to state a claim for which relief can be granted under *Federal Rules of Civil Procedure* ("*FRCP*"), 12(b)(6). However, Plaintiffs have stated sufficient facts to accomplish what is required by the *FRCP* and its "notice pleading" foundation.

    A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *FRCP* 8(a)(2). The rules require that this statement constitute a "showing" rather than a blanket assertion of entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed. 929 (2007). Specific facts are not necessary; the statement need only give the defendant notice of what the claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081(2007). Plaintiff's factual allegations need only "be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct., at 1965.

    In order to survive a motion to dismiss under *FRCP* 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Craigslist, Inc. v. Autoposterpro, Inc.*, 2009 U.S. Dist. LEXIS 31587 (N.D. Cal. [Oakland]) 2009). The Complaint for Declaratory Relief herein contains far more than labels and conclusions or formulaic recitations of facts. It sets forth a genuine, justiciable dispute that must be decided in order for Plaintiffs to continue to operate their businesses in an orderly manner.

    In evaluating a motion to dismiss, the Court must accept as true all material allegations of the complaint, as well as reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to plaintiffs. *Id.* Plaintiffs have more than adequately pled their claim that Willis' purported unilateral "Notice of Termination" of his copyright grants in Joint Works is invalid.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

B.   **WITH RESPECT TO JOINT WORKS, TERMINATION OF THE COPYRIGHT GRANT REQUIRES A MAJORITY OF THE AUTHORS EXECUTING THE GRANT**

Willis claims to be the "sole grantor" of his joint copyright interest in each of the 33 songs listed in the Notice of Termination. Exhibit "A" to the Complaint ("Cmplt."); Willis Memo, p. 1, ll. 22-23.

The facts alleged by the Complaint herein provide an adequate statement that this claim is untrue:

Paragraphs 20 through 23 allege:

"20.   The Compositions, in their English language versions, are Joint Works written by more than one person.

21.   In accordance with the Copyright Law Joint Works are considered as a 'unitary whole' with each contributor's part 'merged into [in]separable or in[ter]dependent parts of a unitary whole.' 17 U.S. C. Section 101.

22.   Each of [the] writers of the Compositions granted their copyright interests, if any, either to Can't Stop, as the agent of Scorpio Music, or to Scorpio Music itself.

23.   While Defendant Willis signed the Agreements, the other writers of the Compositions signed songwriter agreements with Scorpio Music."

Cmplt., p. 5, ll. 2-10.

A "Joint Work" is defined by Section 101 of the Copyright Act as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. §101. Joint authors co-own the copyright; they are joint owners of the work in undivided shares. 17 U.S.C., §201(a); *Eagle Rock Entertainment v. Coming Home Productions, Inc.*, 2004 WL 5642002 at *13 (C.D. Cal. 2004). This citation to *Eagle Rock*, also used by Willis (Willis Memo., p. 11, l. 27 - p. 12, l. 3), while correct with respect to transfer rights, has nothing to do with termination rights.

17 U.S.C. §203 provides:

"In the case of any work . . . the exclusive or nonexclusive grant of a transfer or license of copyright or of any right under a copyright, executed by the author on or after January 1, 1978 . . . is subject to termination under the following conditions:

(1) in the case of a grant executed by one author, termination of the grant may be effected by the author . . . . **In the case of a grant executed by two or more authors of a joint work, termination of the grant may be effected by a majority of the authors who executed it.**"

The Ninth Circuit, as well as the Second Circuit, employs a two part test for joint authorship. The test requires a co-authorship claimant to show that "each of the putative co-authors (1) made independently copyrightable contributions to the work; and (2) fully intended to be co-authors. *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 520 (9th Cir. 1990); *Robinson v. Buy Rite Costume Jewelry*, 2004 U.S. Dist. LEXIS 16675 (S.D.N.Y. 2004). This analysis may not be necessary here because Willis appears to admit that he is a joint author of each of the 33 songs whose copyrights he has purported to terminate.[6] Willis Memo p. 12, ll. 20-22. However, unless and until Willis concedes that he is only one author of each of the Joint Works involved in this action, an evidentiary hearing will be required to determine authorship of each of the 33 compositions.

Willis takes a giant and logic defying leap by asserting that he (or any joint author) has the right to recapture his separate grant of copyright without reference to his co-owners' "undivided interests" or their grants of copyright in the same song.

Since it is the grant *per se*, and not merely the terminating authors' respective grants of rights therein, that is terminated (3-11 *Nimmer on Copyright* §11.03[A][1]),

---

[6] He also asserts inconsistently that the other writers listed on the copyright registration are "putative" writers and that he therefore is the only writer who can terminate. Motion to Dismiss, p. 1, ll. 22-23. This raises a factual issue that cannot be resolved on a pleadings motion.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

Willis' Notice of Termination would terminate the other authors' interests in their grants. As noted above, this result would amount to a rejection of the 1976 revision of the Copyright Act, which was designed specifically to eliminate claims such as Willis makes herein, and be a return to the law as it existed prior to the 1976 revision.

### C. EVEN IF WILLIS' THEORY IS CORRECT, HIS MOTION TO DISMISS CANNOT BE GRANTED BECAUSE THE ISSUE OF WHAT PERCENTAGE OF EACH COPYRIGHT WILLIS SEEKS TO RECAPTURE BELONGS TO WILLIS AND WHAT PERCENTAGE TO HIS CO-AUTHORS WOULD REMAIN UNRESOLVED

Even from his moving papers, it is impossible to ascertain what portion of each copyright Willis believes he is entitled to recapture. If Willis is permitted to terminate any grant of a jointly owned copyright at his sole discretion, and in any amount he decides, the result would truly be nothing short of chaos.

What exactly would Willis be recovering? In some instances he is credited with having written words and music, but in others only words. He also gratuitously asserts (for no apparent reason) that Mr. Belolo, one of the credited authors, "had no role in the creation of the Compositions" at issue. (Willis Memo, p. 19, footnote 7) Even if this were the case, which it is not, Willis would still not constitute a majority of the authors of any one of the Compositions because they each had at least one more other author. Thus, an evidentiary hearing would be necessary to determine Willis' rights under Willis' novel theory and there would still be no basis for dismissal of the Complaint.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS

III. CONCLUSION

For all the foregoing reasons, Plaintiffs CAN'T STOP PRODUCTIONS, INC. and SCORPIO MUSIC (BLACK SCORPIO) S.A. hereby respectfully request that Defendant's motion be denied in its entirety and that he be ordered to answer the Complaint forthwith.

Dated:  November 7, 2011

LAW OFFICES OF ROBERT S. BESSER

By  *RTBR*
ROBERT S. BESSER
Attorneys for Plaintiffs SCORPIO MUSIC (BLACK SCORPIO) S.A. and CAN'T STOP PRODUCTIONS, INC.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS