SCOTT+SCOTT LLP
Walter W. Noss (277580)
Kristen M. Anderson (246108)
707 Broadway, 10th Floor
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
Email: wnoss@scott-scott.com
       kanderson@scott-scott.com

-and-

CAPLAN & ROSS, LLP
Brian D. Caplan (admitted *pro hac vice*)
Jonathan J. Ross (admitted *pro hac vice*)
270 Madison Avenue, 13th Floor
New York, NY 10016
Telephone: (212) 973-2376
Facsimile: (212) 661-4290
Email: bcaplan@caplanross.com
       jross@caplanross.com

*Attorneys for Defendant Victor Willis*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCORPIO MUSIC (BLACK SCORPIO) S.A. and CAN'T STOP PRODUCTIONS, INC.<br><br>Plaintiffs,<br><br>vs.<br><br>VICTOR WILLIS<br><br>Defendant. | Case No. 3:11-CV-01557-BTM (RBB)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**<br><br>Honorable Barry T. Moskowitz |

Defendant's Reply Memorandum                Case No. 3:11-CV-01557-BTM (RBB)

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........................................................................................1

I.      **PLAINTIFFS' OPPOSITION IS SOLELY BASED UPON THE INCORRECT CONTENTIONS THAT (i) A BROADER TERMINATION RIGHT EXISTED PRIOR TO THE 1976 REVISIONS TO THE COPYRIGHT ACT, AND (ii) THAT CONGRESS' INTENTION IN 1976 WAS PURPORTEDLY TO LIMIT THOSE BROADER RIGHTS**............................2

    A.      **Contrary to Plaintiffs' Contentions, Termination Rights did not Exist at all under the Copyright Act of 1909**................................................................2

    B.      **Contrary to Plaintiffs' Contentions, the Legislative History of the 1976 Revisions to the Copyright Act reflect that their Underlying Purposes and Goals were not to Limit Then-Existing Rights, but to Expand and Protect Authors' Rights**................................................................3

    C.      **Plaintiffs Likewise Wrongly Contend, without any support, that Congress inserted the Majority Requirement for Grants Executed by Co-authors into Section 203, but not Section 304, to place limits upon the termination rights of post-1978 co-authors; The True Reason for this Difference Arose from Unique Circumstances of the Renewal Term System, not any Goal of Limiting Authors' Rights**...................................4

    D.      **The Plain Meaning of the Statute is Wholly Consistent with the True Purposes of the Revisions to the Copyright Act**...................................................7

II.      **PLAINTIFFS HAVE NOT OPPOSED THE DISMISSAL OF THE REMAINING ALTERNATIVE CLAIMS CONTAINED IN THE COMPLAINT**................................................................................................................8

**CONCLUSION** ......................................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002) ....................................................................... 7

*Clark v. Capital Credit* 460 F.3d 1162 (9th Cir 2006) ................................................................... 7

*Fred Fisher Music Co. v. M. Witmark and Sons,* 318 U.S. 642 (1943) .......................................... 4

*Johnson v. Homecomings Financial*, 2011 WL 4373975 (S.D. Cal. Sept. 20, 2011) .................... 8

*Stitching Pensioenfonds ABP v. Countrywide Financial Corp.*, 2011 WL 3558173,
    (C.D.Cal. Aug. 9, 2011) ............................................................................................................ 8

*Sweet Music, Inc. v. Melrose Music Corp.*, 189 F. Supp. 655 (S.D. Ca. 1960) .............................. 5

**STATUTES**

17 U.S.C. § 203 (1976) .................................................................................................................... 2

17 U.S.C. § 203(a)(1) (1976). .......................................................................................................... 7

17 U.S.C. § 203(b) (1976) ................................................................................................................ 9

17 U.S.C. § 24 (1909) ................................................................................................................. 2, 4

17 U.S.C. § 304 (1976) .................................................................................................................... 3

17 U.S.C. 201(d) (1976) .................................................................................................................. 6

**OTHER AUTHORITIES**

H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. (1976) ............................................................. 3, 4, 5

S. Rep. No. 473, 94th Cong., 1st Sess. (1975) ........................................................................ 3, 4, 5

**TREATISES**

3 *Nimmer on Copyright* § 11.03[A][1] ............................................................................................ 6

3 *Nimmer on Copyright* § 9.02 ........................................................................................................ 2

*Goldstein on Copyright* § 5.4.2 (3d. ed. 2010) ............................................................................... 7

## PRELIMINARY STATEMENT

Plaintiffs' Complaint for declaratory relief in this action asserts numerous, alternative, bases for a declaration that Defendant's Notice of Termination was invalid. As each of these bases fail to set forth a claim for which relief can be granted to Plaintiffs, Defendant Victor Willis ("Willis") moved to dismiss all of these "claims" set forth in the Complaint (the "Motion"). Plaintiffs' Opposition to Defendant's Motion to Dismiss the Complaint only opposes one aspect of the Motion; namely, Plaintiffs' erroneous contention that a majority of the authors of a Composition is needed to terminate a Grant executed by only one of the authors. Plaintiffs provide no opposition to Defendant's request that all of the other claims set forth in the Complaint should also be dismissed.

With respect to the grantor issue, Plaintiffs simply ignore the plain, and concededly unambiguous, terms of the statute. Instead, Plaintiffs resort to reliance upon unsupported, and erroneous, contentions concerning purported policies and purposes of the statutory provisions at issue. Without citation to any support, Plaintiffs essentially attempt to turn the statute on its head and argue that the 1976 revisions to the Copyright Act were somehow meant to limit a co-author's rights. This is the exact opposite of the true purposes of the revisions to protect authors' rights, as expressly stated in the legislative history to the Act. Plaintiffs likewise ignore, and thereby concede, Willis' position that Plaintiffs' strained interpretation of the "Grant" -- to mean various separate grants of each co-author entered into at different times with various different grantees -- is wholly inconsistent and unworkable with the related provisions of the Copyright Act and implementing Regulations, which clearly contemplate the termination of a specific grant.

Accordingly, Willis respectfully submits that given the unambiguous language of the statute and related Regulations, and the true purposes underlying its provisions, Plaintiffs' claim that Willis could not serve a Notice of Termination of the Grants solely executed by him should be dismissed, and the remaining claims in the Complaint should likewise be dismissed for the unopposed reasons set forth in the Motion.

## ARGUMENT

**I.   PLAINTIFFS' OPPOSITION IS SOLELY BASED UPON THE INCORRECT CONTENTIONS THAT (i) A BROADER TERMINATION RIGHT EXISTED PRIOR TO THE 1976 REVISIONS TO THE COPYRIGHT ACT, AND (ii) THAT CONGRESS' INTENTION IN 1976 WAS PURPORTEDLY TO LIMIT THOSE BROADER RIGHTS**

   **A.   Contrary to Plaintiffs' Contentions, Termination Rights did not Exist at all under the Copyright Act of 1909**

On page 2 of the Opposition Memorandum, Plaintiffs make the erroneous statement that, "the 1976 revision to the Copyright Act changed Section 203 to require that a grant of copyright in a joint work executed on or after January 1, 1978, may be terminated only by a majority of the joint authors who granted rights." Plaintiffs then build upon this legal fallacy to argue that Willis is somehow attempting to return to old, rejected, law. Putting aside for the moment the tortuous paraphrasing of the statute, this statement is simply incorrect, as the revisions did not "change" Section 203. That section, and, for that matter, termination rights in general, simply did not exist prior to the 1976 revisions to the Copyright Act.

Under the Copyright Act of 1909, Section 24 thereof provided for two separate terms of copyright, an original and renewal term, both lasting 28 years, for a total of 56 years of copyright protection. 17 U.S.C. § 24 (1909). The purpose of the separate renewal term of copyright was to provide the author with a second opportunity to market his work after its value had been established during the original term of copyright. 3 *Nimmer on Copyright* § 9.02, citing the House Report for the 1909 Act, H.R. Rep. No. 2222 60th Cong. 2d Sess. P. 14. At the expiration of the original term of copyright, the copyright in the work would automatically, by operation of law, return to the author, or the statutory heirs of the author. Thus, there was no "termination right" under the Copyright Act prior to the 1976 revisions. Rather, barring an express assignment of the renewal term, the copyright would simply re-vest in the author.

The 1976 revisions to the Copyright Act did away with the renewal term system for new works created after January 1, 1978 (the effective date of the revisions) providing for a term of copyright of the author's life plus 50 years (since extended further), 17 U.S.C. § 203 (1976), and also added an additional 19 years to the renewal term of copyright for pre-1978 works. 17 U.S.C. § 304

Defendant's Reply Memorandum           2           Case No. 3:11-CV-01557-BTM (RBB)

(1976). Since there would now no longer be an automatic re-vesting in the author, the revisions also included a new termination right for post-1978 works, codified in the new § 203 of the Copyright Act. Moreover, with respect to then existing works (i.e. works created prior to 1978), the revisions also provided for a termination of the renewal term grant with respect to the additional 19 years of copyright (the so-called "extended term"), codified in new § 304 of the Copyright Act.

Thus, Plaintiffs' Opposition wrongly represents that § 203 was "changed" by the 1976 revisions -- in an apparent attempt to further their errant implication that the 1976 revisions were meant to limit authors' rights.

### B. Contrary to Plaintiffs' Contentions, the Legislative History of the 1976 Revisions to the Copyright Act reflect that their Underlying Purposes and Goals were not to Limit Then-Existing Rights, but to Expand and Protect Authors' Rights

Plaintiffs cannot point to any statement, and Willis is not aware of any, in either the House or Senate Reports to the 1976 Copyright Act that would even remotely imply that the purpose and "legislative goals" underlying Sections 203 and 304 were to place limits upon, or to otherwise restrict, then-existing rights of authors under the Copyright Act of 1909. To the contrary, the House and Senate Reports unequivocally reflect that the purpose of enacting the termination provisions was to protect authors by providing an opportunity to re-market their works once the true value of such works had been established.

For example, the House and Senate Reports to the 1976 Copyright Act, in no uncertain terms, express the goal of protecting authors' from "unremunerative transfers" made by authors due to unequal bargaining positions and the impossibility of knowing the true value of a work until it has a track record of exploitation :

> The provisions of section 203 are based upon the premise that the reversionary provisions of the present section on copyright renewal (17 U.S.C. sec. 24) should be eliminated, and that the proposed law should substitute for them a provision safeguarding authors against unremunerative transfers. A provision of this sort is needed because of the unequal bargaining position of authors, resulting in part from the impossibility of determining a work's value until it has been exploited. H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. 124-28 (1976); S. Rep. No. 473, 94th Cong., 1st Sess. 111 (1975)

Moreover, the termination provisions, and in particular the prohibition against transfers of termination rights prior to the effective date of termination, were also a direct response to the Supreme Court's decision of *Fred Fisher Music Co. v. M. Witmark and Sons,* 318 U.S. 642 (1943), which effectively thwarted the legislative intent of the renewal term system.  In that case, the Court held that an author's simultaneous assignment of both the original term and the author's contingent interests in the renewal term of copyright in a single document was valid, even though the renewal right would not vest until the commencement of the renewal term. Accordingly, this ruling significantly eviscerated the ability of an author to regain his copyright upon the commencement of the renewal term, as publishers could simply insert language assigning the renewal term of copyright into their original agreements with authors.  As noted in the House Report and Senate Reports:

> Section 203 would not prevent the parties to a transfer or license from voluntarily agreeing at any time to terminate an existing grant and negotiating a new one, thereby causing another 35 year period to start running.  However, the bill seeks to avoid the situation that has arisen under the present renewal provision, in which third parties have bought up contingent future interests as a form of speculation. Section 203(b)(4) would make a further grant of rights that revert under a terminated grant valid "only if it is made after the effective date of the termination." … H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. 127 (1976); S. Rep. No. 473, 94th Cong., 1st Sess. 111 (1975)

Thus, rather than limiting authors' rights, the clear intent and purpose of the 1976 Copyright Act is to protect author's rights through the creation of a new termination right. Plaintiffs' strained interpretation of the termination provision espoused in this action is in direct conflict with that express purpose.

### C. Plaintiffs Likewise Wrongly Contend, without any support, that Congress inserted the Majority Requirement for Grants Executed by Co-authors into Section 203, but not Section 304, to place limits upon the termination rights of post-1978 co-authors; The True Reason for this Difference Arose from Unique Circumstances of the Renewal Term System, not any Goal of Limiting Authors' Rights

Under the Copyright Act of 1909, an author's grant of the renewal term would only be effective if the granting author survived to the commencement of that term.  17 U.S.C. § 24 (1909).  Thus, if the author died prior to the renewal term commencing, the author's grant of renewal rights would be void, and the renewal rights would instead vest automatically, by

Defendant's Reply Memorandum                  4         Case No. 3:11-CV-01557-BTM (RBB)

operation of law, in the author's statutory heirs, notwithstanding the assignment of the renewal term contained in the document executed by the author.  Thus, with respect to pre-1978 works, a termination of the renewal term grant would not be necessary for a deceased co-author's heirs to recapture the co-author's copyright interests in the work, since the renewal term copyright would have already automatically vested in the deceased author's heirs, by operation of law, if the author did not survive to the renewal term.  Consequently, it could be the case that a grant executed by two or more authors would only act to convey renewal rights as to one of the two authors.

Given such circumstances unique to pre-1978 works, the House and Senate Reports make clear that the reason for the differing language under 203 and 304 was not to place limits upon co-authors going forward; Rather, it was due to the realities concerning renewal rights grants by two or more co-authors contained in one document, where one may vest and one may not vest due to the author's death:

> Under Section 304, a grant of renewal rights executed by joint authors during the first term of copyright would be effective only as to those who were living at the time of renewal; where any of them are dead, their statutory beneficiaries are entitled to claim the renewal independently as a new estate.  It would therefore be inappropriate to impose a requirement of majority action with respect to transfers executed by two or more authors.   H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. 141 (1976); S. Rep. No. 473, 94th Cong., 1st Sess. 124 (1975)

Thus, once again, Plaintiffs' unsupported arguments as to the purposes and legislative goals of the 1976 revisions to the Copyright Act are directly contradicted by the actual legislative history. Rather than seeking to limit authors' rights, the House and Senate Reports clearly express an intent to protect an author's right to terminate (in this instance to preserve a surviving co-author's ability to terminate a grant of his extended term interests, notwithstanding the death of a co-author who executed the same grant).

In this connection, Plaintiffs oddly rely upon *Sweet Music v. Melrose Music*, 189 F. Supp. 655 (S.D. Ca. 1960), which concerned the renewal term vesting issues discussed above, and holds that co-authors' separate renewal interests in a joint work are to be separately addressed, *even where the renewal assignments were contained in the same document*.  Thus, the Court then found that because one of the co-authors did not survive to the renewal term, the renewal

assignment was not void in total, but rather the assignee only owned the renewal interests of the surviving co-author (with the dead co-author's renewal interests devolving to his heirs by operation of law). This holding is thus at odds with Plaintiffs' argument and wholly consistent with Willis' position and the fundamental copyright principles of alienability and severability of co-authors' copyright interests in a work. *See* 17 U.S.C. 201(d). As *Sweet Music v. Melrose* makes clear, it is proper and appropriate for Willis to terminate a Grant that solely concerns his copyright interests in a Composition, and thereby reclaim ownership of those copyright interests in the Composition. Plaintiffs' out-of-context quote from the *Melrose* decision noting that had there been separate assignments of the renewal terms the same result would have been reached (see Opposition at p. 5), simply does not support Plaintiffs' arguments here.

In this same vein, Plaintiffs' selective excising of one sentence from the *Nimmer* treatise on Copyright, when placed back into its full context, likewise actually supports Willis' position. Nimmer provides a hypothetical example of Author A, B, and C, all transferring their rights to D, to explain when a majority would be needed to terminate under Section 304 (for pre-1978 works). While Plaintiffs egregiously fail to note it in their Opposition, Nimmer's example is expressly based upon such authors having all executed the <u>same granting document</u>, not separate grants by each, and then Nimmer correctly notes that the termination of such a document under Section 203(for a post-1978 work) would require a majority of the three authors who executed that Grant:

> Grants executed by two or more joint authors prior to January 1, 1978, are terminable by each executing joint author even if a majority of the executing joint authors do not join in such termination … Suppose, for example, that a work is jointly written by A, B and C, who share the copyright equally. <u>If all three joint authors join in executing a grant of renewal rights in the work to D</u> in advance of the vesting of such rights, and if all three survive to the time of such vesting, then absent any termination of the grant, D will be entitled to the renewal term of copyright in the work. Suppose at the time the authors are able to terminate A wishes to terminate the grant, but neither B nor C is willing to join in the termination. As indicated above, if this were a grant executed on or after January 1, 1978, no termination could occur because the consent of a majority of joint owners is required for this purpose.

3 *Nimmer on Copyright* § 11.03[A][1](emphasis added). Nimmer also points out, however, in the earlier part of the section cited in Willis' initial motion papers, that a single grant executed by only three of five total authors of a work would only require a majority of the three authors who actually executed the Grant being terminated, not a majority of the five authors in total. *Id; see also,*

Defendant's Reply Memorandum     6     Case No. 3:11-CV-01557-BTM (RBB)

*Goldstein on Copyright* § 5.4.2, at 5:119 (3d. ed. 2010) ("Termination of a grant of interests in a joint work under section 203(a)(1) requires action by a majority of the authors who executed the grant, and not merely a majority of the authors of the work."). Plaintiffs' desperate attempt to conflate the two different examples provided by Nimmer only highlights the fallacy of Plaintiffs' Complaint in this action, and the depths to which Plaintiffs will go in their efforts to thwart Willis' termination rights.

### D. The Plain Meaning of the Statute is Wholly Consistent with the True Purposes of the Revisions to the Copyright Act

Plaintiffs' Opposition does not dispute that the unambiguous terms of a statute are to be given effect. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)("As in all statutory construction cases, we begin with the language of the statute. The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case); *Clark v. Capital Credit* 460 F.3d 1162, 1168 (9th Cir 2006)("Well-established canons of statutory construction provide that any inquiry into the scope and meaning of a statute must begin with the text of the statute itself). Plaintiffs likewise do not dispute that the statute here is unambiguous, providing that, "in the case of a grant executed by one author, termination of the grant may be effected by that author . . . ." 17 U.S.C. § 203(a)(1) (1976).

The above review of the actual legislative history and purposes of the enactment of the termination provisions only confirms that the statute means what it says. Moreover, Plaintiffs' Opposition does not dispute that the related Regulations and other provisions of the Copyright Act noted in Willis' initial Motion papers, are likewise wholly consistent with Willis' position and a plain reading of the statute.

Willis, as the sole author who executed the Grants that are the subject of the Notice of Termination, is entitled to terminate those Grants.

1  **II.   PLAINTIFFS HAVE NOT OPPOSED THE DISMISSAL OF THE REMAINING ALTERNATIVE CLAIMS CONTAINED IN THE COMPLAINT**

By failing to address Willis' remaining arguments in favor of dismissal, Plaintiffs' Opposition effectively concedes that the Complaint's other attacks upon the validity of the notice of termination are all unfounded.  *See, Johnson v. Homecomings Financial*, 2011 WL 4373975, \*7 (S.D. Cal. Sept. 20, 2011) (where plaintiff failed to address the arguments raised in defendants' motion to dismiss, the Court concluded that plaintiff conceded the merits of defendants' motion as to those claims); s*ee also, Stitching Pensioenfonds ABP v. Countrywide Financial Corp.*, 2011 WL 3558173, \*4 (C.D.Cal. Aug. 9, 2011) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue."), *citing, Sportscare of America, P.C. v. Multiplan, Inc.*, 2011 WL 589955, \*1 (D.N.J. Feb. 10, 2011).

Notwithstanding Plaintiffs' one-sentence "reservation of rights" in a footnote with respect to the Complaint's work-made for-hire claim, Plaintiffs have not refuted or opposed Willis' requested dismissal of this claim.  Willis has duly raised and argued in the initial motion papers that such claim fails to set forth a claim for which relief can be granted to Plaintiffs.  As explained in the initial Motion papers, the Complaint's allegations are wholly insufficient to set forth a work-made-for-hire claim and are otherwise directly contradicted by the documents referred to and relied upon by Plaintiffs.  Plaintiffs have provided no substantive opposition or refutation to deny the dismissal requested by Willis.

The Opposition then wholly fails to oppose any of the other claims placed into issue by the Motion.  Plaintiffs do not oppose Willis' argument, raised in the initial Motion papers, that the Complaint's frivolous Laches, Statute of Limitations, and other time-related Claims, should all be dismissed as a matter of law.  Similarly, the Opposition does not dispute or oppose that there is simply no controversy ripe for decision concerning the "derivative works exception," and thus the Complaint's claim in this regard should likewise be dismissed.  Moreover, the Opposition does not oppose Willis' raised argument that the express, unambiguous, terms of the Copyright Act, which provide that upon the effective date of termination Willis will reclaim "all rights" under the

Defendant's Reply Memorandum         8         Case No. 3:11-CV-01557-BTM (RBB)

1  Copyright Act that were conveyed under the Grants, 17 U.S.C. § 203(b) (1976), mandates dismissal
2  of the Complaint's claim that Willis' reclaimed rights should be limited to the specific 12-20%
3  shares of income Willis agreed to accept thirty years ago in the Grants.  Accordingly, Willis
4  respectfully submits that for the reasons set forth in the Motion all of these meritless claims should
5  be dismissed.

6  Finally, the fact that other issues may arise between the parties in the future simply has no
7  bearing on the dismissal of this Complaint, which did not plead any such controversies between the
8  parties.  For example, while there may be a dispute as to the number of actual co-authors for certain
9  of the Compositions, that dispute is simply not raised in the Complaint before this Court.  Willis'
10 Motion to Dismiss properly and dispositively addresses all of the claimed controversies set forth in
11 the Complaint – each of which fail to set forth a claim for relief as a matter of law.  It is respectfully
12 submitted that the lack of any plausible claim for relief in the Complaint mandates its dismissal in
13 total.

## CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that this Court dismiss the Plaintiffs' Complaint in it entirety, and that Defendant be granted such other and further relief that to this Court seems just, proper and equitable.

DATED: November 11, 2011                    Respectfully Submitted,

CAPLAN & ROSS, LLP

                                                    /s/  Jonathan J. Ross
                                                    JONATHAN J. ROSS

Brian D. Caplan (admitted *pro hac vice*)
Jonathan J. Ross (admitted *pro hac vice*)
270 Madison Avenue, 13th Floor
New York, NY 10016
Telephone:  (212) 973-2376
Facsimile:  (212) 661-4290
Email:  bcaplan@caplanross.com
         jross@caplanross.com

-and-

SCOTT+SCOTT LLP
Walter W. Noss (277580)
Kristen M. Anderson (246108)
707 Broadway, 10th Floor
San Diego, CA  92101
Telephone:  (619) 233-4565
Facsimile:  (619) 233-0508
Email:  wnoss@scott-scott.com
         kanderson@scott-scott.com

*Attorneys for Defendant Victor Willis*

---

Defendant's Reply Memorandum          10    Case No. 3:11-CV-01557-BTM (RBB)

CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2011, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 11, 2011.

       /s/ Jonathan J. Ross
JONATHAN J. ROSS

CAPLAN & ROSS, LLP
270 Madison Avenue, 13th Floor
New York, NY 10016
Telephone:  (212) 973-2376
Facsimile:  (212) 661-4290
Email: jross@caplanross.com

and

SCOTT+SCOTT LLP
707 Broadway, 10th Floor
San Diego, CA  92101
Telephone:  (619) 233-4565
Facsimile:  (619) 233-0508
Email:  wnoss@scott-scott.com

*Attorney for Defendant Victor Willis*