Steven M. Chasin (SBN 228723)
BAKER & McKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 835-6132
Fax: (202) 416-7132
Steven.Chasin@bakermckenzie.com

-and-

BAKER & MCKENZIE LLP
Carl W. Hampe
815 Connecticut Avenue, NW
Washington, DC 20006-4078
Telephone: +1 202 835 4259
Facsimile: +1 202 416 6979
Email: carl.hampe@bakermckenzie.com

ATTORNEY AT LAW, PC
Charles J. Sanders
29 Kings Grant Way
Briarcliff Manor, NY 10510
Telephone: +1 914 366 6642
Facsimile: +1 347 558 9658
Email: csanderslaw@aol.com

*Attorneys for Amicus Curiae Songwriters' Guild of America*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCORPIO MUSIC (BLACK SCORPIO) S.A. and CAN'T STOP PRODUCTIONS, INC.<br><br>Plaintiffs,<br><br>vs.<br><br>VICTOR WILLIS<br><br>Defendant. | Case No. 3:11-CV-01557-BTM (RBB)<br><br>**MEMORANDUM OF AMICUS PARTY SONGWRITERS GUILD OF AMERICA IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br>Honorable Barry T. Moskowitz |

**TABLE OF CONTENTS**

*INTEREST OF AMICUS CURIAE* ............................................................................................... 1

**SUMMARY OF ARGUMENT** ..................................................................................................... 1

**I.      ARGUMENT** ......................................................................................................................... 1

      **A.     Case of First Impression.** ......................................................................................... 1

      **B.     Importance of Preserving Congressional Intent.** ................................................. 2

      **C.     Plaintiffs' Litigation Appears Vexatious.** ............................................................. 3

**CONCLUSION** ............................................................................................................................... 5

# TABLE OF AUTHORITIES

**Page(s)**

**STATUTES**

17 U.S.C § 24 .......................................................................................................................3

17 U.S.C. § 101 ....................................................................................................................4

17 U.S.C. § 106 ....................................................................................................................3

17 U.S.C. § 201(a) ...............................................................................................................4

17 U.S.C. § 201(d) ...............................................................................................................4

17 U.S.C. § 203 ....................................................................................................................2

17 U.S.C. § 203(a) ...............................................................................................................1

17 U.S.C. § 203(a)(1) ...........................................................................................................4

17 U.S.C. § 304(c) ...............................................................................................................2

17 U.S.C. §304(d) ................................................................................................................2

**OTHER AUTHORITIES**

37 C.F.R. § 201.10(b) (1977) ...............................................................................................4

H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. 124-28 (1976) ..............................................3

Goldstein on Copyright § 5.4.2 (3d. ed. 2010) .....................................................................4

S. Rep. No. 473, 94th Cong., 1st Sess. 111 (1975) ..............................................................3

### *INTEREST OF AMICUS CURIAE*

The Songwriters Guild of America ("SGA") is the nation's oldest and largest organization run exclusively by and for songwriters, with more than five thousand members nationwide and over eighty years of advocacy experience concerning songwriters' rights. SGA is a voluntary association comprised of composers and the estates of deceased members. It provides a variety of services to its members, including contract analysis, copyright renewal and termination filings, and royalty collection and auditing to ensure that members receive proper compensation for their creative efforts. SGA's efforts on behalf of all U.S. songwriters includes advocacy before the U.S. Congress to obtain favorable legislation for songwriters and participating as a party or as *amicus curiae* in litigation of significance to the creators of the American canon of popular music.

### **SUMMARY OF ARGUMENT**

This is one of the first cases to be litigated in federal court that will determine whether the authors of creative works will be able to exercise their crucial statutory right to terminate transfers of copyright that they made over 35 years ago -- frequently made at times when the true market value of that work had not been clearly established. In this case, the music publishing entity that is challenging the songwriter's exercise of his statutory right is interposing what appear to be unjustified and unsupported arguments in an attempt to frustrate through protracted litigation the rights made available to creators by Congress. The Songwriter's Guild of America respectfully encourages the Court to consider fully the Constitutionally–rooted purpose of the statutory termination right protecting authors when determining whether the plaintiff music publisher in this case is asserting valid – or merely vexatious – arguments in this litigation. SGA's view is that the publisher's arguments are without legal merit, and should be promptly rejected.

**I.     ARGUMENT**

    **A.     Case of First Impression.**

Given the terms of 17 U.S.C. § 203(a), grants of copyrighted works by authors to third parties made on or after January 1, 1978 are just now becoming eligible for termination by their author/grantors. SGA follows closely the responses of recipients of such notices of termination,

Memorandum of Amicus                              1           Case No. 3:11-CV-01557-BTM (RBB)

and to the Guild's knowledge this is the first disputed termination claim directly concerning the rights of an author to reach the stage of dispositive motion in federal court. The precedential importance of this case is therefore critical, as future termination claimants – authors -- and future recipients of such claims (usually publishers) will be observing carefully how the federal courts resolve these disputes.

It is a simple fact that authors of copyrighted works have limited financial – and therefore limited legal – resources. If the recipients of the many termination claims that will be filed in the coming years – all of which possess superior economic resources -- are permitted to engage in protracted litigation and legal gamesmanship to block the effect of clearly meritorious termination claims by creators, then songwriters, authors and other creators will run the constant risk of being drained of the resources necessary to persevere in the litigation process, and authors' rights under Section 203 of the Copyright Act will have been chilled to the point of evisceration.

SGA also knows from its decades of familiarity with the music industry that the songwriters, artists and companies involved in the music business are concentrated in the New York City and Southern California areas (with somewhat fewer cases arising in Nashville, Tennessee). Litigation on music copyright issues arises most typically in either the Second Circuit or the Ninth Circuit. Thus, this case is also particularly precedential in that it arises in a U.S. District Court within the Ninth Circuit Court of Appeals.

Judicial determinations in initial cases such as this will be critical to whether songwriters and other creators will be enabled on both a legal and a practical basis to pursue and enjoy their statutory termination rights, or whether publishers will be allowed to frustrate those rights through a protracted-litigation strategy. SGA respectfully requests that this Court keep this consideration in mind as it resolves this litigation.

**B.    Importance of Preserving Congressional Intent.**

One of the most important and hard-earned rights granted to songwriters, literary authors, and other creators by Congress under the U.S. Copyright Act (pursuant to its Constitutional mandate to protect authors and inventors under Article I Section 8 of the Constitution) is the right to terminate grants of copyrights in certain circumstances. 17 U.S.C. §§ 203, 304(c) and (d). Congress enacted

the termination right as a matter of fairness to creators and their families, to act as an effective safety net and estate planning mechanism so that authors would have the necessary incentive to pursue their economically perilous craft.

In that regard, Congress was clear in articulating its motivations for adopting the termination right, stressing that creators have historically been forced to enter into grants through licenses and transfer agreements with parties early in a work's copyright term, prior to the establishment of the work's true market value, and at a time when authors have little or no economic leverage against transferees holding far superior bargaining and economic positions. According to both the House and Senate Reports accompanying the Copyright Act of 1976:

> The provisions of section 203 are based upon the premise that the reversionary provisions of the present section on copyright renewal (17 U.S.C. sec. 24) [applicable to ALL pre-1978 copyrights] should be eliminated, and that the proposed law should substitute for them a provision safeguarding authors against unremunerative transfers. A provision of this sort is needed because of the unequal bargaining position of authors, resulting in part from the impossibility of determining a work's value until it has been exploited.

H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. 124-28 (1976); S. Rep. No. 473, 94th Cong., 1st Sess. 111 (1975).

This litigation has been brought by a music publishing company with far superior legal resources in order to defeat the recapture of copyright in certain musical works by a songwriter (Victor Willis) who transferred his copyright interests to that publisher early in his career, before the true market value of the works of Mr. Willis had been established. In order to effectuate the intent of Congress behind the statutory termination right, Mr. Willis' claim should be viewed sympathetically, and his unequal bargaining position vis-à-vis the Plaintiff fully considered as this case is resolved.

**C.    Plaintiffs' Litigation Appears Vexatious.**

Mr. Willis has moved to dismiss Plaintiff's complaint for failing to state a claim upon which relief may be granted. Plaintiff Scorpio Music opposes this motion principally on the ground that only a majority of authors of a joint work may terminate a prior transfer of copyright interest.

Scorpio Music further asserts that this argument survives the standard for a motion to dismiss. SGA observes that this argument, on its face, is baseless.

Copyright has often been called a "bundle of rights," and those various rights are set forth principally in Section 106 of the Copyright Act. 17 U.S.C. § 106. All of these rights are owned jointly and severally by the joint authors of a work, 17 U.S.C. § 201(a), and are subject to further disposition consistent with ownership of property, including the transfer of such ownership right in a work. 17 U.S.C. § 201(d). Congress fully intended that individual authors be able to collaborate to produce a joint work, and yet still retain individual rights to their share of the work as a whole, as manifested in its definition of the term "joint work" (joint works are prepared by "two or more authors with intention that their contributions be merged into . . . a unitary whole"). 17 U.S.C. 101. It is thus well established that each joint author is free to grant or license his or her ownership share in every joint work without the authority of the other joint authors, unless otherwise agreed among them in writing.

Section 203 plainly states that "in the case of a grant executed by one author, termination of the grant may be effected by that author . . . ." 17 U.S.C. § 203(a)(1). Contrary to what Plaintiff Scorpio Music asserts, there was absolutely no confusion among legislators at the time of enactment of the U.S. Copyright Act of 1976 over the rights in authors to determine their own form of grants, or of the differentiation between a "joint work" and a "grant executed by two or more authors of a joint work." There should be none now. A "joint work" is a description of a type of work with multiple authors, as defined in Section 101 of the Act. A "joint grant" is simply a commercial choice that a joint author or group of joint authors is free to make in the marketplace. The Copyright Office has recognized this distinction in its regulations implementing the termination right. *See, e.g.,* 37 C.F.R. 201.10(b) (1977). Scorpio Music's attempts to blur this clear distinction are contrary to any plain reading of the statute and to the implementing regulations drafted by the agency with expertise, the U.S. Copyright Office. So too is Scorpio's argument contrary to a leading copyright treatise, which fully supports SGA's reading of Section 203. "Termination of a grant of interests in a joint work under section 203(a)(1) requires action by a majority of the authors who executed the grant, and not merely a majority of the authors of the work." Goldstein on Copyright § 5.4.2, at

5:119 (3d. ed. 2010). We note that Plaintiff did not even refer to this authority, let alone attempt to distinguish it.

Plaintiff's reading of Section 203 is simply nonsensical. It requires a belief that Congress somehow intended that joint authors (or their far-flung descendants), none of whom are parties to a grant made by a co-author, must nevertheless give assent as a precondition to the exercise by such co-author of his or her termination of an individual grant. Such a reading of the plain language of the statute is so tortured that it would utterly stand Congressional intent on its head. In fact, such a situation was exactly what Congress was seeking to avoid when it clarified for authors in plain language the precise method by which termination of individual grants may be accomplished pursuant to Section 203.

Given this clear lack of statutory ambiguity concerning the distinction between a "joint work" and a "joint grant," Plaintiff's opposition to Mr. Willis' motion to dismiss appears baseless, and imposed for the simple purpose of protracting the litigation and frustrating Mr. Willis' right as an author under Section 203 to terminate a transfer of copyright that he made over 30 years ago and now views as less than fully remunerative. Taking into consideration the "unequal bargaining position" held by Mr. Willis with respect to Plaintiff Scorpio Music and all the other factors enumerated herein underlying the importance placed by Congress on safeguarding an author's right to terminate, SGA respectfully requests that this Court effectuate congressional intent and grant the motion to dismiss this litigation.

## CONCLUSION

For the above-cited reasons, amicus party SGA respectfully urges this Court to dismiss the Complaint.

DATED: November 14, 2011                    Respectfully Submitted,

                                            BAKER & MCKENZIE LLP


                                                 /s/  Steven M. Chasin
                                            STEVEN M. CHASIN

Memorandum of Amicus                5           Case No. 3:11-CV-01557-BTM (RBB)

Steven M. Chasin (SBN 228723)
BAKER & McKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 835-6132
Fax:  (202) 416-7132
Steven.Chasin@bakermckenzie.com

-and-

Carl W. Hampe
815 Connecticut Avenue, NW
Washington, DC 20006-4078
Telephone: +1 202 835 4259
Facsimile: +1 202 416 6979
Email: carl.hampe@bakermckenzie.com

ATTORNEY AT LAW, PC
Charles J. Sanders
29 Kings Grant Way
Briarcliff Manor, NY 10510
Telephone: +1 914 366 6642
Facsimile: +1 347 558 9658
Email: csanderslaw@aol.com

*Attorneys for Amicus Curiae Songwriters' Guild of America*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2011, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via Federal Express to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on November 14, 2011.

           /s/  Steven M. Chasin
STEVEN M. CHASIN

Steven M. Chasin (SBN 228723)
BAKER & McKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, D.C. 20006
Tel: (202) 835-6132
Fax:  (202) 416-7132
Steven.Chasin@bakermckenzie.com

*Attorney for Amicus Curiae*
*Songwriters' Guild of America*