# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCORPIO MUSIC S.A., et al., <br><br>　　　　　　　　　　Plaintiffs, <br> v. <br> VICTOR WILLIS, <br><br>　　　　　　　　　　Defendant. | Case No. 11cv1557 BTM(RBB) <br><br> **ORDER GRANTING MOTION TO DISMISS** |

Defendant Victor Willis ("Willis" or "Defendant") has filed a motion to dismiss Plaintiffs' Complaint. On March 20, 2012, the Court held oral argument on the motion. For the reasons discussed below, Defendant's motion is **GRANTED**.

## I. FACTUAL BACKGROUND

Defendant Victor Willis is the original lead singer of the Village People. This lawsuit concerns Willis's attempt to terminate his post-1977 grants to Can't Stop Music of his copyright interests in 33 musical compositions ("Compositions"), including the hit songs, "YMCA," "In the Navy," and "Go West."

Plaintiff Scorpio Music S.A. ("Scorpio") is a French corporation engaged in the business of publishing and otherwise commercially exploiting musical compositions. (Compl. ¶ 1.) Plaintiff Can't Stop Productions, Inc., ("CSP") is the exclusive sub-publisher and administrator in the United States of musical compositions published and owned by Scorpio

Music.  (Compl. ¶ 2.)  Can't Stop Music ("CSM") is a division of Plaintiff Can't Stop Productions, Inc.

Plaintiffs allege that between 1977 and 1979, they hired Willis to translate the lyrics of and/or create new lyrics for certain musical compositions which were owned and published in France by Scorpio.  Copyright registrations for the 33 Compositions at issue credit Willis as being one of several writers.  (Compl. ¶ 12.)  By way of Adaptation Agreements, Willis transferred his copyright interests in the subject Compositions to CSM, and CSM thereupon assigned to Scorpio its rights in the lyrics.  (Compl. ¶ 11.)  The Adaptation Agreements provided that Willis would receive a set percentage (12%-20%, depending on the composition) of CSM's gross receipts from exploitation of the Compositions.

In January 2011, Willis served on Plaintiffs a "Notice of Termination of Post-1977 Grants of Copyright on Certain Works of Victor Willis" with respect to his interests in the 33 Compositions.  (Ex. A to Complaint.)

On July 14, 2011, Plaintiffs commenced this lawsuit.  Plaintiffs challenge the validity of the termination and seek a declaratory judgment that Willis has no right, title, or interest in the copyrights to the Compositions, requiring Willis to withdraw the notice of termination, and enjoining Willis from making any claims to the copyrights in the Compositions.  In the event that Willis is found to have a right to terminate, Plaintiffs seek a declaration that (1) Willis's reversion of rights be limited to "the same percentage ownership as he receives as compensation relating to the Compositions and as set forth in the Adaptation Agreements"; and (2) Willis be enjoined from terminating any licenses issued or derivative works authorized, by Plaintiffs, which existed prior to the termination of the copyright assignment.

//
//
//
//

## II. **DISCUSSION**

### A. Valdiity of the Notice of Termination

Plaintiffs' main argument is that Willis's notice of termination is not valid because Willis is the only author who served a notice of termination. According to Plaintiffs, under 17 U.S.C. § 203(a)(1), a majority of all of the authors who transferred their copyright interests in a joint work, whether their transfers were part of the same transaction or separate transactions, must join in a termination for it to be valid. Willis and Amicus Songwriters' Guild of America ("SGA"), on the other hand, contend that since Willis was the only person who executed the grants of his copyright interests in the Compositions, he alone has the ability to terminate those grants. The Court agrees with Willis and SGA.

Because the transfers of copyright at issue in this case occurred after January 1, 1978, the Copyright Act of 1976 ("Act") governs. The Act provides authors and their statutory successors with the ability to terminate a transfer of copyright or license by serving advance notice under specified time limits and conditions.

17 U.S.C. § 203 provides:

> (a) Conditions for Termination.--In the case of any work other than a work made for hire, the exclusive or nonexclusive grant of a transfer or license of copyright or of any right under a copyright, executed by the author on or after January 1, 1978, otherwise than by will, is subject to termination under the following conditions:
>
> > (1) *In the case of a grant executed by one author, termination of the grant may be effected by that author* or, if the author is dead, by the person or persons who, under clause (2) of this subsection, own and are entitled to exercise a total of more than one-half of that author's termination interest. *In the case of a grant executed by two or more authors of a joint work, termination of the grant may be effected by a majority of the authors who executed it*; if any of such authors is dead, the termination interest of any such author may be exercised as a unit by the person or persons who, under clause (2) of this subsection, own and are entitled to exercise a total of more than one-half of that author's interest.

Termination of the grant may be effected at any time during a period of five years beginning at the end of thirty-five years from the date of execution of the grant. 17 U.S.C. § 203(a)(3). To terminate a grant, a termination notice must be served on the grantee or grantee's successor not less than two nor more than ten years before the date of termination specified

in the notice.  17 U.S.C. § 203(a)(4)(A).

The issue before the Court is whether, in a case where joint authors of a work transfer their respective copyright interests through separate agreements, a single author may alone terminate his separate grant of his copyright interest in the joint work or whether a majority of all the authors is necessary to terminate that grant.  Upon consideration of the language and purpose of 17 U.S.C. § 203 in conjunction with the law governing the rights of joint authors, the Court concludes that a joint author who separately transfers his copyright interest may unilaterally terminate that grant.

When interpreting a statute, we start with the "plain meaning" of the statue's text.  In re Roman Catholic Archbishop of Portland in Oregon, 661 F.3d 417, 433 (9th Cir. 2011).  As explained by the Supreme Court, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992).  However, "we do more than view word or sub-sections in isolation.  We derive meaning from context, and this requires reading the relevant statutory provisions as a whole."  Hanford Downwinders Coal., Inc. v. Dowdle, 71 F.3d 1469, 1475 (9th Cir. 1995).

Section 203(a)(1) provides, "In the case of a grant executed by one author, termination of the grant may be effected by that author."  Section 203(a)(1) goes on to provide, "In the case of a grant executed by two or more authors of a joint work, termination of the grant may be effected by a majority of the authors who executed it."  When referring to a grant executed by two or more authors of a joint work, section 203(a)(1) refers to a "grant" in the singular, not "grants."  Thus, under the plain meaning of the statute, if two or more joint authors join in a grant of their copyright interests, a majority of the authors is necessary to terminate the grant.  If, however, a single joint author enters into a grant of his copyright interest, that author alone can terminate his grant.

The Court's reading of section 203(a)(1) harmonizes with the law governing the rights of joint authors, both as it existed at the time of the passage of the Act and as it exists today. As recognized in the House Report accompanying the passage of the Copyright Act of 1976,

"Under the bill, as under the present law, coowners of a copyright would be treated generally as tenants in common, with each coowner having an independent right to use of [sic] license the use of a work, subject to a duty of accounting to the other coowners for any profit." H.R.Rep. No. 94-1476, at 121 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5736.[1]  Then, as now, each co-owner of a joint work becomes a holder of an undivided interest in the whole. Pye v. Mitchell, 574 F.2d 476, 480 (9th Cir. 1978) (citing to 1 Nimmer on Copyright § 69 (1976)). Thus, "[i]n the absence of an agreement to the contrary, one joint owner may always transfer his interest in the joint work to a third party, subject only to the general requirements of a valid transfer of copyright." Nimmer on Copyright § 6.11 (2011) ("Nimmer").

Congress was aware that a single joint author may grant his interest in the joint work separately from his co-authors or may join in a grant with one or more of his co-authors. Knowing this, Congress legislated that "*[i]n the case* of a grant executed by two or more authors of a joint work," a majority of the authors who executed the grant is necessary for termination. 18 U.S.C. § 203(a)(1) (Emphasis added.) In other words, *when* two or more authors of a joint work execute a joint grant, a majority of the authors who executed the grant is necessary to terminate the grant. Section 203(a)(1) certainly does not *require* that a joint author enter into a joint grant with one or more of his co-authors. Nor does the statute provide that where two or more joint authors enter into separate *grants*, a majority of those authors is needed to terminate any one of those *grants*.

Plaintiffs argue that the term "grant" as used in section 203(a)(1) refers collectively to all transfers by joint authors, even if the transfers were separate transactions. This argument is not persuasive. Nowhere does the statute indicate that the term "grant" has a special meaning and encompasses all transfers of interest by joint authors, regardless of whether the joint authors individually transferred their interests through different instruments

---

[1] The Act added section 201(a), which states, "The authors of a joint work are coowners of copyright in the work."

at different times.[2]

Furthermore, it makes sense to interpret the term "grant" to refer to a *single* transaction whereby the rights of one or more joint authors was transferred, because the time for terminating a grant is calculated from the date of execution of the grant. Under Plaintiffs' interpretation, in the case of separate transfers by joint authors, there would be uncertainty regarding the date of execution, which could become a moving target. For example, if joint authors A, B, C, and D each separately transferred their interests, with an interval of several years between each transfer, would the "date of execution" keep changing as each author transfers his/her interest? If so, it could be many years after A's transfer that the "grant" is considered "executed."

Finally, it would be contrary to the purpose of the Act to require a majority of all joint authors who had, at various times, transferred their copyright interests in a joint work to terminate the legally permissible *separate* grant by one joint author of his undivided copyright interest in the work. The purpose of the Act was to "safeguard[ ] authors against unremunerative transfers" and address "the unequal bargaining position of authors, resulting in part from the impossibility of determining a work's value until it has been exploited." H.R. Rep. No. 94-1476, at 124 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5740. Under Plaintiffs' interpretation, it would be more difficult to terminate an individual grant than it would be to make it in the first place.

Plaintiffs attempt to support their position by pointing to the law governing pre-1978 grants. Grants executed prior to January 1, 1978 are terminable by each executing joint author (to the extent of the particular author's interest), even if a majority of the executing joint authors do not join in the termination. 17 U.S.C. § 304(c)(1). As discussed in Nimmer, § 11.03, it appears that Congress treated pre-1978 grants differently because if a grantor of renewal rights failed to survive until such rights vested, the renewal rights would pass to the

---

[2] In this case, it also appears that at least some of the joint authors granted their copyright interests to Scorpio, not CSM, as Willis did. Thus, Plaintiffs would include under the umbrella of a "grant," separate transactions where copyright interests were transferred to related but different entities.

grantor's successors and the original grantee would take nothing.  Accordingly, "[b]ecause joint-author grants of renewal rights thus terminate individually by operation of law upon an author's death, it was thought 'inappropriate' to require anything more than individual termination via the termination provisions." Id.  The stricter requirement for termination of post-1977 grants begs the question of whether a "grant" may encompass separate transfers of interest by joint authors and does not shed any light on the matter before the Court.

Plaintiffs attempt to support their position by relying on language in <u>Sweet Music, Inc v. Melrose Music Corp.</u>, 189 F. Supp. 655 (S.D. Cal. 1960), where the court explained that it did not make a difference to the outcome of the case that plaintiff joined in the same assignment agreement as the deceased co-author as opposed to having executed a separate assignment. However, <u>Sweet Music</u> concerned the enforceability of an assignment of renewal interests by one author where a co-author, who also assigned his renewal interests, died prior to renewal. <u>Sweet Music</u> did not concern the termination of grants under the Copyright Act of 1976 and does not shed light on the issue before the Court.

The Court concludes that because Willis granted his copyright interests in the Compositions separately from the other co-authors, Willis may, under 17 U.S.C. § 203, unilaterally terminate his grants.  Thus, Plaintiffs' declaratory relief claim fails to the extent it is based on the inability of Willis to terminate his grants of copyright.  To be clear, Willis's termination affects only the copyright interests that he previously transferred (his undivided interest in the joint work).  The copyright interests transferred by the other co-authors will not be affected by Willis's termination.

**B. <u>Writer for Hire</u>**

In their Complaint, Plaintiffs allege that Willis has no rights in the copyrights at issue because he was a "writer for hire" who rendered his services as an employee of CSM.  At oral argument, counsel for Plaintiffs represented that they were withdrawing this claim.

C. <u>Percentage of Copyright Interest</u>

In the event Willis is found to have a right to terminate his grants of copyright interest in the Compositions, Plaintiffs seek a declaration that Willis "be limited to the same percentage ownership as he receives as compensation relating to the Compositions and as set forth in the Agreements." (Compl. at 9.) However, Plaintiffs' claim is not supported by the law.

Upon termination, Willis would get back what he transferred – his undivided interest in the whole. See 17 U.S.C. § 203(b) (explaining that upon the effective date of termination, "all rights under this title that were covered by the terminated grants revert to the author . . . .") Absent a different agreement among the joint authors (of which there is no evidence in this case), the joint authors shared equally in the ownership of the joint work, even if their respective contributions to the joint work were not equal. <u>Nimmer</u>, § 6.08. Thus, if Willis was one of three joint authors of a musical composition, Willis would have a 1/3 undivided copyright interest in the composition. If Willis granted his copyright interest in the composition to CSM and then later terminated that grant, Willis would get back his 1/3 undivided copyright interest, regardless of what percentage royalty he was paid during CSM's ownership of the copyright interest.

Plaintiffs do not claim that the royalty percentages, which ranged from 12 to 20%, were based on the percentage of Willis's copyright interests, and it does not appear that this was the case. For example, Willis is one of three authors listed on the copyright registration for "YMCA." (Def. Ex. C.) Assuming the three authors were actually joint authors, Willis has a 1/3 undivided interest in the copyright. However, the Adaptation Agreement pertaining to YMCA provides for a 20% royalty. (Def. Ex. B.)

Plaintiffs do not cite any legal authority supporting the proposition that upon termination of his grants, Willis does not get back the percentage of copyright interest he granted, but, rather, is limited to a percentage of ownership equal to the royalty percentage. The Court concludes that Plaintiffs' position lacks merit and dismisses Plaintiffs' declaratory relief claim on this issue.

It appears that there is a dispute between Plaintiffs and Willis, with respect to some or all of the Compositions, regarding the percentage of copyright interest Willis originally held, granted, and wants back. At oral argument, counsel for Willis indicated that Willis contends that Henri Belolo, one of the individuals listed as an author on the copyright registrations for some or all of the Compositions, was not actually a joint author. If Willis is correct, his undivided interest in the Compositions is larger than it appears. For example, Willis would have a 1/2 undivided interest in YMCA instead of a 1/3 undivided interest.

The Complaint makes a passing reference to the dispute regarding authorship. The Complaint states that upon information and belief, Willis claims the right to recapture at least half of the copyrights in each of the Compositions. (Compl. ¶ 34.) The Complaint also states that Willis "ignores the existence of other people listed as writers of the Compositions to claim that he, alone, wrote all of their lyrics." (Compl. ¶ 35.) However, the Complaint does not seek a declaration regarding the determination of the issue of authorship and the percentage of copyright interest Willis granted and is entitled to receive back.

It is necessary for Plaintiffs to know what percentage of the copyright interest Willis is entitled to receive back, because, among other things, it will affect Plaintiffs' duty to account to Willis and the other joint author(s). Therefore, the Court will allow Plaintiffs to amend their Complaint to seek declaratory relief on this issue.

D. **Statute of Limitations**

In the Complaint, Plaintiffs allege that Willis's claim to the copyright in the Compositions is somehow time-barred.

To the extent Plaintiffs argue that Willis is time-barred from arguing that a "co-author" listed on a copyright registration is not actually a joint author, this argument is premature. As already discussed, Plaintiffs have not yet sought a declaration regarding the percentage of Willis's copyright interest in each of the Compositions. To the extent Plaintiffs argue that Willis is time-barred from claiming that the percentage of his copyright interests exceeds the royalty percentages set forth in the Adaptation Agreements, the Court rejects Plaintiffs'

argument. For the reasons discussed above, Plaintiffs' claim that the percentage of copyright interest recoverable by Willis is capped by the royalty percentage has no legal basis, and Plaintiffs have not explained why Willis should be time-barred from asserting his rights under the law.

### E. Termination of Existing Licenses and Derivative Works

Plaintiffs also seek a declaration that Willis is precluded from terminating any licenses issued or derivative works authorized by Plaintiffs prior to the termination of the copyright assignment. Willis does not dispute that existing derivative works may continue to be exploited under existing licenses under the terms of the grants and the existing licenses. See 17 U.S.C. § 203(b)(1). Therefore, it does not appear that there is a controversy in this regard. If Plaintiffs can point to facts showing that there is a controversy regarding utilization of derivative works prepared prior to the termination of the grants, Plaintiffs may amend their Complaint to include these facts.

### III. CONCLUSION

For the reasons discussed above, Willis's motion to dismiss is **GRANTED**. Plaintiffs' Complaint is **DISMISSED** for failure to state a claim. The Court grants Plaintiffs leave to file an amended complaint within 30 days of the entry of this Order. If Plaintiffs do not file an amended complaint, this case shall be closed.

**IT IS SO ORDERED.**

DATED: May 7, 2012

_____
BARRY TED MOSKOWITZ, Chief Judge
United States District Court