1   SCOTT+SCOTT LLP
    Walter W. Noss (277580)
2   Kristen M. Anderson (246108)
    707 Broadway, 10th Floor
3   San Diego, CA  92101
    Telephone:  (619) 233-4565
4   Facsimile:  (619) 233-0508
    Email: wnoss@scott-scott.com
5          kanderson@scott-scott.com

6   -and-

    CAPLAN & ROSS, LLP
7   Brian D. Caplan (admitted *pro hac vice*)
    Jonathan J. Ross (admitted *pro hac vice*)
8   270 Madison Avenue, 13th Floor
    New York, NY 10016
9   Telephone:  (212) 973-2376
    Facsimile:  (212) 661-4290
10  Email: bcaplan@caplanross.com
           jross@caplanross.com
11
    *Attorneys for Defendant-Counterclaimant*
12  *Victor Willis*

13              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF CALIFORNIA
14

15  SCORPIO MUSIC (BLACK SCORPIO)       Case No. 3:11-CV-01557-BTM (RBB)
    S.A. and CAN'T STOP PRODUCTIONS,
    INC.,                               **DEFENDANT VICTOR WILLIS' ANSWER
16                                       TO PLAINTIFFS' FIRST AMENDED
                Plaintiffs,              COMPLAINT FOR DECLARATORY
17                                       RELIEF AND COUNTERCLAIM**
    vs.
18  VICTOR WILLIS,
                                        **DEMAND FOR JURY TRIAL**
                Defendant.
19
    _____
    VICTOR WILLIS,
20                                      Hon. Barry T. Moskowitz
                Counterclaimant,
21
    vs.
22  SCORPIO MUSIC (BLACK SCORPIO) S.A.
    and CAN'T STOP PRODUCTIONS, INC.,
23              Counterclaim-Defendants,
24  -and-
25  HENRI BELOLO,
                Additional Counterclaim-
26              Defendant.
27

28
    _____
    ANSWER TO FIRST AMENDED COMPLAINT          Case No. 3:11-CV-01557-BTM (RBB)
    AND COUNTERCLAIM

Defendant-Counterclaimant Victor Willis ("Willis"), by his attorneys, Scott+Scott LLP and Caplan & Ross, LLP, for his Answer to Plaintiffs' First Amended Complaint for Declaratory Relief (the "Amended Complaint") and Counterclaim, responds and alleges as follows:

## ANSWER TO AMENDED COMPLAINT

1.      Denies the allegations contained in Paragraph 1 of the Amended Complaint and respectfully refers the Court to the original Complaint for its contents.

2.      Denies the allegations contained in Paragraph 2 of the Amended Complaint and respectfully refers the Court to the May 7, 2012 Order for its contents.

3.      In response to Paragraph 3 of the Amended Complaint, states that it contains legal conclusions to which no response is required and otherwise denies the allegations contained therein.

4.       In response to Paragraph 4 of the Amended Complaint, states that it contains legal conclusions to which no response is required and otherwise denies the allegations contained therein, except admits that Plaintiffs have filed the First Amended Complaint for the purpose of having a judicial determination of the respective shares of the authors of the Compositions.

5.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Amended Complaint.

6.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the Amended Complaint.

7.      Denies the allegations of Paragraph 7 of the Amended Complaint, except admits that Willis is a citizen of the State of California.

8.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Amended Complaint.

9.      Admits the allegations contained in Paragraph 9 of the Amended Complaint.

10.      Admits the allegations contained in Paragraph 10 of the Amended Complaint.

11.      Admits the allegations contained in Paragraph 11 of the Amended Complaint.

12.      Denies the allegations contained in Paragraph 12 of the Amended Complaint and respectfully refers the Court to the Agreements for their contents and meaning.

13.     Denies the allegations contained in Paragraph 13 of the Amended Complaint, except admits and avers that Willis composed lyrics with the intent that such lyrics would be combined with music to create musical compositions.

14.     Denies the allegations contained in Paragraph 14 of the Amended Complaint, except admits and avers that Willis composed the lyrics to the Compositions.

15.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Amended Complaint.

16.     Admits the allegations contained in Paragraph 16 of the Amended Complaint.

17.     In response to Paragraph 17 of the Amended Complaint, states that it contains legal conclusions to which no response is required.

18.     Denies the allegations contained in Paragraph 18 of the Amended Complaint, except admits that Willis has received accountings accompanied by royalty payments from Plaintiff Can't Stop Productions, Inc. ("CSP").

19.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Amended Complaint, except admits and avers, upon information and belief, that CSP and/or Plaintiff Scorpio Music, S.A. ("Scorpio") registered the subject Compositions with Broadcast Music, Inc. ("BMI").

20.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Amended Complaint, except admits and avers, upon information and belief, that CSP and/or Scorpio registered the subject Compositions with BMI.

21.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Amended Complaint, except admits and avers, upon information and belief, that CSP and/or Scorpio registered the subject Compositions with BMI.

22.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the Amended Complaint, except admits and avers, upon information and belief, that CSP and/or Scorpio registered the subject Compositions with BMI.

23.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Amended Complaint, except admits and avers, upon information and belief, that CSP and/or Scorpio registered the subject Compositions with BMI.

24.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Amended Complaint, except admits and avers, upon information and belief, that CSP and/or Scorpio registered the subject Compositions with BMI.

25.     Denies the allegations contained in Paragraph 25 of the Amended Complaint, except admits that Willis has received accountings accompanied by royalty payments from BMI.

26.     Admits the allegations contained in Paragraph 26 of the Amended Complaint that in January 2011, Willis, through his authorized agent, served the "Notice of Termination" annexed to the Amended Complaint as Exhibit "A," and respectfully refers the Court to the Notice of Termination for its content and meaning.

27.     Denies the allegations contained in Paragraph 27 of the Amended Complaint, except admits that the Notice of Termination provided notice to Scorpio, CSP, and others of termination of numerous grants of copyright, and respectfully refers the Court to the Notice of Termination for its content and meaning.

28.     In response to Paragraph 28 of the Amended Complaint, repeats and realleges each and every response to Paragraphs 1 through 27 of the Amended Complaint as if fully set forth herein.

29.     Admits the allegations contained in Paragraph 29 of the Amended Complaint.

30.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Amended Complaint with respect to Plaintiffs' contentions, states that Paragraph 30 of the Amended Complaint contains legal conclusions to which no response is required and otherwise denies the factual allegations contained therein.

31.     In response to Paragraph 31 of the Amended Complaint, states that it contains legal conclusions to which no response is required and otherwise denies the factual allegations contained therein.

32.     In response to Paragraph 32 of the Amended Complaint, states that it contains legal conclusions to which no response is required and otherwise denies the factual allegations contained therein.

33.     In response to Paragraph 33 of the Amended Complaint, states that it contains legal conclusions to which no response is required and otherwise denies the factual allegations contained therein, except admits and avers that Willis will recapture all of the copyright interests that he conveyed in the Compositions upon the respective effective dates of termination.

34.     In response to Paragraph 34 of the Amended Complaint, states that it contains legal conclusions to which no response is required, and otherwise denies the factual allegations contained therein, except admits and avers that Willis contends that Henri Belolo is not a co-author of the Compositions and that he did not make any copyrightable contributions to the Compositions.

35.     Denies the allegations contained in Paragraph 35 of the Amended Complaint and avers that Willis' timely exercise of his statutory rights to terminate post-1978 grants of copyright in accordance with the provisions and procedures set forth by the U.S. Copyright Act, 17 U.S.C. § 203 et seq., cannot, as a matter of law and public policy, be deemed to be a "threat" or be deemed to cast a "pall" upon Plaintiffs' rights in the Compositions.

36.     Admits the allegations contained in Paragraph 36 of the Amended Complaint.

37.     In response to Paragraph 37 of the Amended Complaint, states that it contains legal conclusions to which no response is required and otherwise denies knowledge or information sufficient to form a belief as to the truth of the factual allegations contained in Paragraph 37, except admits and avers that Willis will recapture all of the copyright interests that he conveyed in the Compositions upon the respective effective dates of termination.

38.     In response to Paragraph 38 of the Amended Complaint, states that it contains legal conclusions to which no response is required and otherwise admits that the parties' dispute as to the percentage interests in the copyrights in the Compositions that Willis will recapture upon the effective dates of termination is ripe for judicial determination.

39.     Admits the allegations contained in Paragraph 39 of the Amended Complaint.

40.     In response to Paragraph 40 of the Amended Complaint, states that it contains legal conclusions to which no response is required.

41.     In response to Paragraph 41 of the Amended Complaint, states that it contains legal conclusions to which no response is required and otherwise does not contain any factual allegations requiring a response.

## FIRST AFFIRMATIVE DEFENSE

42.     The Amended Complaint fails to state a claim against Defendant upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

43.     Plaintiffs' claim for declaratory relief is precluded by the Court's May 7, 2012 Order to the extent Plaintiffs seek a declaration that Willis' recaptured copyright interests should be limited by the 25% income stream he previously received from BMI, as the May 7, 2012 Order has already determined that the percentage of the copyright interest that Willis will recapture upon the effective dates of termination is not limited in any way by the percentage of income he previously received, but instead will be proportionate to the number of co-authors of each respective Composition.

## THIRD AFFIRMATIVE DEFENSE

44.     Plaintiffs' claims are barred, in whole or in part, by reason of Plaintiffs' unclean hands.

## COUNTERCLAIM AGAINST CSP, SCORPIO, AND HENRI BELOLO

## NATURE OF CLAIM

45.     Willis, the original lead singer of the music recording group Village People, wrote the lyrics to many songs recorded by Village People and others, including the "hit" song "Y.M.C.A.," which are the subject of several separate music publishing agreements he entered into with Can't Stop Music ("CSM"), the wholly-owned publishing division of CSP, at various times from January 1, 1978, through December 31, 1979 (the "Copyright Grants").  The Copyright Grants encompass the lyrics written solely by Willis to 33 separate musical compositions (the "Subject Works").

46.     On January 21, 2011, Willis, pursuant to §203(a) of the U.S. Copyright Act, 17 U.S.C. §203(a), served a Notice of Termination of the Copyright Grants, as the sole grantor thereunder, by regular mail upon Plaintiffs-Counterclaim Defendants Scorpio, CSP, and CSM (as well as on certain other entities not parties to this action), who are or may be the current owners of or claimants to rights in and to one or more of the Subject Works.

47.     In accordance with the applicable provisions of the U.S. Copyright Act, the Notice of Termination set forth timely effective dates of termination of the Copyright Grants and advised Defendants that upon such effective dates, Willis' copyright interests in the Subject Works would revert to him.

48.     Subsequent to the mailing of the Notice of Termination, CSP/CSM, through its attorney, disputed the validity of the Notice of Termination, stating that:

      a.     Willis allegedly was only one of three writers of the works at issue and the relevant copyright statute purportedly required a majority of the writers thereof to join in the Notice of Termination; and

      b.     Willis' contributions to the Subject Works allegedly were made as an "employee for hire," and, thus, the Copyright Grants purportedly are not subject to the termination provisions of the Copyright Act.

49.     In response, Willis, through his counsel, rejected CSP/CSM's claims and maintained the validity and accuracy of the Notice of Termination.

50.     In July 2011, Scorpio and CSP commenced this action seeking a declaration of the invalidity of the Notice of Termination on several grounds, including:

      a.     Willis as one of at least three listed authors for each of the Compositions could not validly terminate without a majority of the co-authors joining in the termination;

      b.     Willis' contributions were works made-for-hire and as such Willis had no termination rights under the Copyright Act; and

      c.     in the event the termination is deemed valid, Willis' recaptured interests should be limited to the same percentage ownership as he receives as compensation relating to the Compositions as set forth in the Copyright Grants, i.e. a 12%-20% corresponding ownership interest.

51.     In response, Willis moved to dismiss the Complaint, which motion was fully briefed and oral argument heard.

52.     By Order dated May 7, 2012, this Court granted the Motion to Dismiss and dismissed Scorpio's and CSP's claims set forth in the original Complaint with prejudice, except the Court granted leave to file an Amended Complaint to seek additional declaratory relief.  Specifically the Court held that:

a.      as the sole "grantor" who executed the Copyright Grants, Willis was entitled to unilaterally serve a Notice of Termination of those Copyright Grants;

b.      with respect to the work-for-hire claim, the Court noted Plaintiffs' representation at oral argument that such claim was withdrawn and, thus, those aspects of the Complaint were dismissed;

c.      with respect to the percentage of ownership to be recaptured, the Court rejected Plaintiffs' claim that Willis' recaptured interests should be limited to the same percentages listed in the Copyright Grants, and further held that Willis' recaptured interests will be proportionate to the number of co-authors of each respective Composition, noting that if there were two co-authors, Willis will recapture a 50% undivided interest in the copyright, and if there are three co-authors Willis will recapture a 33% interest; and

d.      the Court then granted leave to the Plaintiffs to file an Amended Complaint seeking declaratory relief with respect to a dispute between the parties, alluded to in the motion papers and during oral argument, as to the authorship of certain of the Compositions.

53.     On June 5, 2012, Scorpio and CSP filed an Amended Complaint seeking certain declaratory relief with respect to the authorship dispute, but which may not result in the complete determination of the parties' disputes concerning the Notice of Termination.

54.     Accordingly, Willis now brings this Counterclaim seeking a declaratory judgment and related relief, pursuant to 28 U.S.C. §§2201 and 2202, in order to resolve the parties' remaining disputes as to the validity of the Notice of Termination and the parties' respective rights in the Subject Works following termination of the Copyright Grants.

55.     Specifically, Willis seeks a declaration, and related relief, that:

(i) the Notice of Termination is valid and complies in all respects with the provisions of 17 U.S.C. §203(a) and related federal regulations; and

(ii) Willis is the sole author of the lyrics to 24 of the Subject Works, notwithstanding Henri Belolo's claim of co-authorship of those lyrics, and will, thus, recapture a 50% copyright interest in each of those 24 disputed Subject Works upon the respective effective dates set forth in the Notice of Termination.

**JURISDICTION AND VENUE**

56.    This Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. §§1331 and 1338 because this action and counterclaim arise under the U. S. Copyright Act of 1976, 17 U.S.C. §§101 *et seq.* (the "U. S. Copyright Act").

57.    By commencing the instant action against Willis, CSP and Scorpio have consented to the personal jurisdiction and venue of this Court with respect to the Counterclaim.

58.    As alleged in greater detail below, at all relevant times, additional Counterclaim-Defendant Henri Belolo ("Belolo") dominated and controlled CSP for his own personal benefit, to the detriment of Willis, and treated CSP as his alter ego.  Accordingly, Belolo is subject to the personal jurisdiction of this Court as the alter ego of CSP.

**PARTIES**

59.    Willis is an individual and the original lead singer of the Village People, and is a resident and citizen of the State of California.

60.    Upon information and belief, CSP is a corporation organized on or about April 3, 1975, under the laws of the State of New York, and together with its division, CSM, have their principal place of business in the City, County, and State of New York.

61.    Upon information and belief, Scorpio (a/k/a Black Scorpio) is an entity (Societe Anonyme) first registered in France on or about June 11, 1976, located in Paris, France, and whose (1) chief officer (President Du Conseil D'Administration) is Belolo, (2) only other directors ( Directeur General) are Belolo's two sons, (3) administrator (Adminstrateur) is a relative of Belolo, and (4) issued shares are all owned and/or controlled directly or indirectly by Belolo.

62.    Upon information and belief, Belolo is a citizen of France and the alter ego of CSP in that he is the managing and sole director of CSP, the sole shareholder of CSP, and, as alleged in Paragraphs 63-68 and 69-99 below, has dominated, controlled, directed, caused, and guided the conduct of CSP complained of herein for his own personal gain, benefit, interest, and to the detriment of Willis.

## **FACTUAL BACKGROUND**

63. Upon information and belief, at all times relevant, CSP and CSM did not maintain any corporate offices in New York, or elsewhere, and instead utilized the New York addresses of CSP's attorneys or accountants; did not maintain any phone numbers or other utilities separate from those of its attorneys and accountants; and had no employees other than Belolo.

64. Upon information and belief, at all times relevant, all functions of CSP and CSM, including the preparation of royalty statements for songwriters such as Willis, were conducted either by Belolo or by Scorpio personnel in France under the direction and control of Belolo.

65. Upon information and belief, at all times relevant, all licensing decisions regarding musical compositions, recordings, and trademarks owned by CSP or CSM were solely made by Belolo.

66. Upon information and belief, at all times relevant, all financial and business decisions of CSP and CSM were solely made by Belolo, including CSP/CSM's entry into a sub-publishing agreement with Scorpio (the "Scorpio Sub-Publishing Agreement").

67. The Scorpio Sub-Publishing Agreement does not represent an arm's length transaction between companies and contains terms that are materially divergent from the customary and usual terms for such agreements between U.S. and foreign music publishers, to the substantial benefit of Belolo personally, and to the detriment of songwriters who entered into agreements with CSP/CSM, such as Willis.

68. In addition to directing and causing CSP/CSM to enter into the Scorpio Sub-Publishing Agreement, and in conjunction therewith, Belolo directed and caused CSP/CSM to use a "Form Contract" with songwriters, which, as discussed in more detail below, would reference, but not identify, purported original French songs allegedly written by Belolo that were then allegedly "adapted" into English by the songwriters, such as Willis, all for the personal benefit of Belolo, and to the detriment of the songwriter.

## __The Copyright Grants__

69.     Between the period January 1, 1978, and December 31, 1979, Willis at various times, as the sole grantor, entered into the Copyright Grants with CSM, a wholly-owned division of CSP.

70.     The Copyright Grants are what are typically referred to in the music industry as music publishing, or songwriter agreements, whereby Willis granted, assigned, and transferred his copyright interests in the Subject Works to CSM in exchange for CSM's obligations to account for and pay to Willis a percentage of the royalties generated from the exploitation of the Subject Works.

71.     Willis is the sole writer identified in each of the Copyright Grants, which are each entered into and executed solely by Willis, on the one hand, and CSM, on the other.  An exemplar copy of one of the Copyright Grants, dated August 8, 1978 (concerning six of the Subject Works, including the iconic song "Y.M.C.A."), is attached hereto as Exhibit 1 and incorporated by reference herein.

72.     The specific details of each of the Copyright Grants, including their respective dates, royalty rates, and song titles are set forth in Exhibit 2 attached hereto and incorporated by reference herein.

73.     Each of the Copyright Grants was drafted and prepared by CSP/CSM.

74.     CSP/CSM drafted the Copyright Grants at the direction of Belolo.

75.     Except for the specific details cited in Exhibit 2, and the signatory on behalf of CSM, each of the Copyright Grants is otherwise identical, and each:

    a.     contains the (erroneous) title "Adaptation Agreement";

    b.     identifies Willis, the sole grantor, as "Adapter" and CSM as "Publisher" in its various provisions;

    c.     provides that Willis' share of the "adapter royalties" is 100%, because he is identified thereon as the only "Adapter";

    d.     provides that Wills grants to CSM, including its successors and assigns "the Adaptation (including the title and lyrics thereof)...together with the worldwide copyright thereof..."; and

    e.     provides for Adapter's "consent to the assignment of this contract or the Adaptations or the copyright thereof...subject, however, to the payment of the royalties herein specified."

76.     Each of the Copyright Grants erroneously state in the Whereas clauses as follows:

> WHEREAS, Adapter has translated the lyrics of or created new lyrics for certain compositions (the "Foreign Work") which, in its English language version as adapted by Adapter, are titled as set forth on Schedule "A" annexed hereto (the "Adaptation").[1]

77.     Notwithstanding the language noted in Paragraph 76 above, and except for the one musical composition titled "Where Is My Woman," recorded by Patrick Juvet, and for which the subject Copyright Grant expressly identifies a previously written French language song entitled "Ou Sont Les Femmes":

a.      none of the Copyright Grants identifies the titles of any alleged pre-existing "Foreign Work";

b.      none of the Copyright Grants names or otherwise identifies any alleged co-authors of the subject works or any Foreign Work;

c.      Willis was not provided with any foreign language lyrics, let alone lyrics to a pre-existing Foreign Work, to be translated, or for which new lyrics were to be created; and

d.      none of the Copyright Grants mentions Scorpio or otherwise identifies Scorpio as the copyright owner of the alleged pre-existing Foreign Work.

78.     Other than "Where is My Woman," each of the Subject Works was a new and original work for which Willis solely authored the lyrics and Jacques Morali composed the music, and were not adapted, translated, or otherwise based on the lyrics or words of any previously written Foreign Work, and were first written and recorded and, upon information and belief, first published in the United States, prior to the writing, recording, or publication of any alleged Foreign Work.

79.     Belolo did not make any contributions to either the lyrics or the music of any of the Subject Works.

80.     Upon information and belief, the Copyright Grants are each based upon a form contract utilized by CSP/CSM (the "Form Contract").

---

[1] All references in this Counterclaim to "Foreign Work" shall have the same reference as used in the Copyright Grants.

81.     During at least the period from 1977 to 1982, it was the custom and practice of CSP/CSM to use the Form Contract to denominate songwriters that assigned their works to CSP/CSM as "adapters," even though such songwriters routinely created new and original music and lyrics that were not based upon or adapted from any previously existing work.

82.     Upon information and belief, Belolo solely caused and directed CSP/CSM to utilize the Form Contract as the template agreement between CSP/CSM and songwriters, such as Willis, Phil Hurtt, Steven Gaines, and others.

83.     Upon information and belief, Belolo solely caused and directed CSP/CSM to institute the use of the Form Contract in order to provide the predicate foundation for Belolo's claim to authorship of the lyrics of the purported "Foreign Works" referred to in the Form Contract, and thereby obtain credit and royalties in connection with the world-wide exploitation of the musical compositions purportedly "adapted" from such Foreign Works and assigned to CSP/CSM by means of the Form Contract.

84.     By causing and directing CSP/CSM to utilize the Form Contract, and then claiming authorship of the lyrics of the purported Foreign Works, Belolo, for his own benefit and self-interest, effectively obtained for himself a 50% share of royalties for all usages of the musical compositions governed by the Form Contract, including both domestic and foreign exploitations of such musical compositions, that would have otherwise belonged to the actual author(s) of the musical compositions, such as Willis.

85.     Through the use of the Form Contract and the Scorpio Sub-Publishing Agreement, Belolo used CSP/CSM for his own purposes to further his scheme to defraud Willis and other songwriters out of significant royalties from the exploitation of the subject musical compositions.

86.     Upon information and belief, the aforementioned scheme resulted in Belolo wrongfully obtaining millions of dollars that should have gone to Willis and other songwriters.

87.     For example, upon information and belief, Belolo, by and through CSP/CSM, caused registrations of the Subject Works with SACEM, the French rights organization that administers the

1   collection and distribution of royalties for uses of musical compositions, which identified Belolo in

2   such registrations as the author of purported original French lyrics "adapted" into English by Willis.

3        88.    Based upon such registrations, SACEM has remitted to Belolo a 50% share of

4   royalties related to the Compositions pursuant to its policy of remitting a 50% portion of royalties to

5   the author of the underlying original language lyrics.

6        89.    Similarly, upon information and belief, Belolo, by and through CSP/CSM, caused

7   registrations of the Subject Works with BMI, an American performing rights organization that

8   administers the collection and distribution of royalties for uses of musical compositions in the United

9   States, which identified Belolo in such registrations as the author of purported original French lyrics

10   "adapted" into English by Willis.

11        90.    Based upon such registrations, BMI has remitted to Belolo a 50% share of royalties

12   related to the Compositions pursuant to its policy of remitting royalties to the author of the

13   underlying original language lyrics.

14        91.    Belolo's reasons for, and self-interest in, causing CSP/CSM to utilize the Form

15   Contract as the template for the Copyright Grants, and to enter into the Scorpio Sub-Publishing

16   Agreement, were laid bare in a letter dated August 10, 2009, from CSP and Belolo's attorney, a copy

17   of which is annexed hereto as Exhibit 3,  in which it is claimed, *inter alia*, that (1) Belolo was not the

18   lyricist of the "adapted" versions of the Compositions, but rather that Belolo was "the lyricist of the

19   original French version" of the Compositions, (2) the alleged original French songs were allegedly

20   first published in France by Scorpio, and (3) the original French songs were then allegedly licensed

21   *by* Scorpio *to* CSP/CSM, pursuant to the Scorpio Sub-Publishing Agreement, for CSP/CSM to create

22   English language "adaptations" of the alleged French songs.

23        92.    By reason of the conduct alleged in paragraphs 73-91 above, Belolo has used his

24   domination and control over CSP to advance his own self-interest, for his own personal benefit, and

25   to the detriment of Willis.

26

27

28

## U. S. Copyright Registrations of the Subject Works

93.    Upon information and belief, between January 1978 and June 1980, Belolo, by and through CSP, solely caused and directed CSP to file in the United States Copyright Office registrations for each of the Subject Works.  Attached as Exhibit 4, and incorporated by reference herein, is a five-page schedule of these registrations (the "U.S. Copyright Registrations") identifying the following information derived from therein: (a) the work's title, (b) the registration number and registration date, (c) the copyright claimant, (d) the date and nation of the first publication, and (e) the authors listed.

94.    Except for the musical composition "Where Is My Woman," each of the U.S. Copyright Registrations identifies Scorpio (Black Scorpio) either in the initial or in a supplemental filing as the copyright claimant (although the registrations were each drafted and filed by CSP at the direction of Belolo).

95.    Each of the U.S. Copyright Registrations:

a.    by a check mark, states in Box 2 thereof that the authors' contributions to the work were not "made for hire";

b.    states in Box 4 thereof that the copyright claimant obtained ownership of the copyright from the authors by "Instrument of Transfer"; and

c.    leaves blank Box 6 ("compilation or derivative work"), which requires the identification, if any, of "any preexisting work or works that the work [being registered] is based on or incorporates."

96.    With respect to 24 of the 33 Subject Works, the U.S. Copyright Registrations identify Belolo as a co-author of the lyrics (the "Disputed Works").

97.    Upon information and belief, Belolo, by and through CSP, solely caused and directed the U.S. Copyright Registrations for the Disputed Works to identify Belolo as a credited co-author of the lyrics.

98.    Upon information and belief, Belolo, by and through CSP, solely caused and directed the use of the Form Contract as the template for the Copyright Grants in order to provide a predicate foundation for identifying Belolo as a co-author on the U.S. Copyright Registrations for the Disputed Works.

99.     By reason of the conduct alleged in Paragraphs 93-98 above, Belolo has used his domination and control over CSP to advance his own self-interest, for his own personal benefit, and to the detriment of Willis.

100.    The remaining nine of the 33 Subject Works were recorded by Patrick Juvet (the "Juvet Works").

101.    Willis authored the English lyrics to the Juvet Works and granted his copyright interests in the nine Juvet Works to CSM, pursuant to three of the Copyright Grants.

102.    The Copyright Grants for the Juvet Works are included within the Notice of Termination.

103.    While Belolo does not claim authorship of the Juvet Works, to the extent CSP and Scorpio dispute the validity of Willis' Notice of Termination with respect to the Copyright Grants for the Juvet Works, they are included within the instant claim for declaratory relief.

### Service of the Notice of Termination

104.    Section 203 of the U.S. Copyright Act, 17 U.S.C. §203, provides in pertinent part, as follows:

(a) Conditions for Termination. – In the case of any work other than a work made for hire, the exclusive or nonexclusive grant of a transfer or license of copyright or of any right under a copyright, executed by the author on or after January 1, 1978, otherwise than by will, is subject to termination under the following conditions:

(1)  In the case of a grant executed by one author, termination of the grant may be effected by that author. . . .

* * *

(3)  Termination of the grant may be effected at any time during a period of five years beginning at the end of thirty-five years from the date of execution of the grant; or if the grant covers the right of publication of the work, the period begins at the end of thirty-five years from the date of publication of the work under the grant or at the end of forty years from the date of execution of the grant, whichever term ends earlier.

(4)  The termination shall be effected by serving an advance notice in writing . . . upon the grantee or the grantee's successor in title.

(A)  The notice shall state the effective date of the termination, … and the notice shall be served not less than two or more than ten years before that date. . . .

(B)  The notice shall comply, in form, content, and manner of service, with requirements that the Register of Copyrights shall prescribe by regulation.

105.    Section 203(b) of the U.S. Copyright Act, 17 U.S.C. §203(b), further provides that:

Upon the effective date of termination, all rights under this title that were covered by the terminated grants revert to the author. . . .

106.    Section 203(b)(2) of the U.S. Copyright Act, 17 U.S.C. §203(b)(2), further provides that:

The future rights that will revert upon termination of the grant become vested on the date the notice of termination has been served as provided by clause 4 of subsection (a).

107.    On January 21, 2011, Willis duly served a Notice of Termination of the Copyright Grants upon the original grantee, CSM, and upon CSP and Scorpio (as well as on certain other entities not parties to this action) who are or may be the current owners of or claimants to the rights in and to one or more of the Subject Works.  A copy of the Notice of Termination is annexed hereto as Exhibit 5 and is incorporated by reference herein.

108.    Concurrent with the mailing of the Notice of Termination, and in accordance with the provisions of 37 C.F.R. §201.10 (d) and (f), a Certificate of Service of such mailing, a copy of which is attached as Exhibit 6, together with the requisite filing fees, as well as a true and correct copy of the Notice of Termination were mailed to the U.S. Copyright Office, Document Recordation Section, and was duly filed and recorded in the U.S. Copyright Office on January 25, 2011, at V-3600, D-964 P1-29.

109.    As indicated in the Notice of Termination, the "effective dates" of termination of the Subject Works range from June 15, 2013, through May 21, 2015, all of which are within "the five-year period beginning at the end of thirty-five years... from the date of publication of the work" where the "grant covers the right of publication of the work," as required under §203(a)(3) of the U.S. Copyright Act.

110.    The Notice of Termination was served by regular mail on January 21, 2011, which is "not less than two years or more than ten years" before the stated "effective date of the termination," as required under §203(a)(4)(A).

111.    Subsequent to the service of the Notice of Termination, CSP/CSM, through its attorney, sent a letter dated January 28, 2011, a copy of which is attached as Exhibit 7, which claimed that, "for a multitude of reasons Mr. Willis has no termination rights," and among the specific reasons cited therein by the CSP/CSM attorney are that: (1) under the statute, "termination rights can only be exercised by the majority of the writers who had made the assignment," and Willis "is not credited as being the sole writer of any of the compositions referred to" in the Notice of Termination, but rather Willis "is, at most, one out of three of the listed writers of any particular song"; and (2) Willis was "a writer for hire," and "as such he has no copyrights to terminate."  The CSP/CSM attorney then concluded that unless the Notice of Termination was withdrawn and that no action be taken to "unlawfully interfere with [his] client's rights in the compositions," then he will "enforce [his] client's rights to the full extent provided by law and seek damages and sanctions, where appropriate, against both Mr. Willis and parties acting on his behalf."

112.    In response thereto, Willis, through his attorney, in a letter dated February 23, 2011, a copy of which is attached as Exhibit 8, addressed the points raised by the CSP/CSM attorney, and cited the language of §203(a) that "unequivocally provides" that in the case of "a grant executed by one author, termination of the grant may be effected by that author... In the case of a grant executed by two or more authors of a joint work, termination of the grant may be effected by a majority of the authors who executed it," so that contrary to the position of the CSM attorney, "it is the number of grantors of the specific grant at issue that controls, not the number of purported authors of the work as whole."   The February 23, 2011 letter further rejected the contention that "'Willis' contributions...were works made for hire'" and cited, *inter alia*, the absence of such language in any of the Copyright Grants, and the lack of documentation that would confirm Willis' status as an employee.

113.    The February 23, 2011 letter concludes that the Notice of Termination is valid and effective, and that in establishing and protecting Willis' right in the works whose grants are being terminated, such rights would include, *inter alia*, Willis' "entitlement to a 50% share of the United States copyright...from and after the effective dates of their respective terminations."

114.    In response to the letter of Willis' attorney, the CSP/CSM attorney, in a letter dated February 23, 2011, a copy of which is attached as Exhibit 9, wrote that Willis' attorney's letter raised, "a series of specious arguments in support of the, at best, misguided, if not completely frivolous attempt ...to terminate the transfer of copyrights in certain compositions" and "that further discussions with you on the issue of copyright termination would be pointless."

115.    In July 2011, Scorpio & CSP commenced this action against Willis.

116.    By Order dated May 7, 2012, the Court dismissed the original Complaint for failure to state a claim and granted leave to Scorpio and CSP to file an Amended Complaint addressing the authorship dispute.

117.    On June 5, 2012, Plaintiff filed an Amended Complaint that seeks declaratory relief with respect to some aspects but not all of the remaining disputes between the parties concerning the Notice of Termination.

118.    The Amended Complaint, in part, erroneously attempts to avoid the merits of the authorship dispute by invoking the U.S. Copyright Act's three-year statute of limitations.

119.    The U.S. Copyright Act's three-year statute of limitations does not preclude Willis from enforcing his statutory rights and recovering all of his copyright interests in the Subject Works upon the effective dates of termination.

120.    The public policy of the U.S. Copyright Act's termination provisions is to safeguard authors against unremunerative transfers, given the unequal bargaining position of authors at the time of the initial assignment of their copyright rights.  The policy is achieved by providing authors, such as Willis, with an opportunity to recapture and remarket their works after 35 years of exploitation by the original grantee.

121.    Since Willis agreed, in the Copyright Grants, to receive an income percentage of 12%-20% of the revenue from the exploitation of the Subject Works, he had no interest or incentive to monitor copyright registrations or credits for accuracy, so long as he was receiving the bargained-for consideration he agreed to in the Copyright Grants, which Copyright Grants did not name or otherwise identify any co-authors of the Subject Works.

122.    An author's statutory recapture rights vest upon the service of a Notice of Termination pursuant to §203(b)(2) of the U.S. Copyright Act, which in this instance occurred in January 2011.

123.    Section 203(a)(3) of the U.S. Copyright Act further provides for a specific five-year window in which Notices of Termination must be served, and if a Notice of Termination is not timely served within such statutory window, the termination right is lost.

124.    However, if a Notice of Termination is timely served, §203(b) of the U.S. Copyright Act then mandates that "all rights under [the U.S. Copyright Act] that were covered by the terminated grants revert to the author."

125.    Accordingly, the U.S. Copyright Act's general three-year limitations period, set forth in 17 U.S.C. §507(b), which states that no civil action shall be maintained under the U.S. Copyright Act, "unless it is commenced within three years after the claim accrued," does not bar this Counterclaim or otherwise preclude Willis from enforcing his statutory right to recover all of his copyright interests in the Subject Works.

## COUNTERCLAIM
(Declaratory Relief Against Scorpio, CSP, and Belolo
Pursuant to 28 U.S.C. §§2201 *et seq.*)

126.    Willis repeats and re-alleges each and every allegation in paragraphs 45 through 125 above as if fully set forth herein.

127.    By reason of the foregoing, an actual and justiciable controversy of sufficient immediacy and reality has arisen and now exists between Willis and Counterclaim Defendants under federal copyright law, 17 U.S.C. §§101 *et seq.*, and in particular §203 thereof, concerning their

1   respective rights and interests in the post-termination U.S. copyrights in the Subject Works for which

2   Willis desires a declaration of rights.

3        128.   Willis contends that:

4           a.   the Notice of Termination is valid and effective as to the Copyright Grants for each of the 33 Subject Works in that Willis has complied in all respects with all of the requirements of the provisions of §203(a) of the United States Copyright Act and 37 C.F.R. §201.10;

5

6

7           b.   Willis' contributions to each of the Subject Works was: (1) a new and original work; (2) not adapted, translated, or otherwise based on the lyrics or words of any previously written Foreign Work; and (3) first written, recorded, and published in the United States prior to the writing, recording, or publication of any Foreign Work;

8

9

10           c.   Henri Belolo did not contribute to the authorship of the lyrics or the music of the 24 Disputed Works for which Willis solely composed the lyrics and Jacques Morali solely composed the music; and

11

12           d.   from and after the respective effective dates of termination set forth in the Notice of Termination, an undivided 50% interest in and to the copyrights in each of the 24 Disputed Works will revert to Willis.

13

14        129.   Counterclaim Defendants dispute each of the contentions set forth in Paragraph 128

15   above.

16        130.   Declaratory relief from this Court is necessary pursuant to the Declaratory Judgment

17   Act, 28 U.S.C. §§2201 *et seq.*, so that the parties may know their respective rights and obligations

18   with respect to the Subject Works.

19        131.   By reason of the foregoing, Willis is entitled to a declaratory judgment and related

20   relief, declaring that the Notice of Termination is valid in all respects, and that, upon termination,

21   Willis will recapture his 50% copyright interests in the 24 Disputed Works.

22 **JURY DEMAND**

23        132.   Pursuant to Fed. R. Civ. P. Rule 38(b), Willis demands a trial by jury on all issues

24   properly triable.

25 **PRAYER FOR RELIEF**

26      WHEREFORE, Defendant-Counterclaimant Victor Willis respectfully requests that this

27   Court enter judgment as follows:

28       A.   On Plaintiffs' First Amended Complaint:

1        i.    Dismissing Plaintiffs' claim in its entirety.

2        ii.   Awarding Willis his costs and disbursements incurred, including his reasonable
              attorneys' fees, in defending such claim.

3    B.    On the Counterclaim:

4

5        i.    Declaring that the Notice of Termination is valid and effective in all
              respects as to each of the Subject Works, and that, as of the respective
              effective dates of termination set forth in the Notice of Termination, an
6             undivided 50% interest in and to the United States copyrights in each of
              the Disputed Works will revert to Willis.

7

8        ii.   Directing CSP, Scorpio, and Belolo to account to Willis, from and after the
              respective effective dates of termination, for all income derived from the Subject
              Works in the United States (other than any statutorily exempt income derived
9             from pre-termination derivative works) and pay to Willis 50% of such income for
              the Disputed Works.

10

11       iii.  Awarding Willis his costs and disbursements incurred, including reasonable
              attorneys' fees, in prosecuting the Counterclaim.

12   C.    Awarding Willis such other and further equitable and legal relief as this Court may

13        deem necessary, just and proper.

14   DATED:  August 1, 2012                    Respectfully Submitted,

15                                             SCOTT+SCOTT LLP

16                                              /s/ Walter W. Noss
                                               Walter W. Noss (277580)
17                                             Kristen M. Anderson (246108)
                                               707 Broadway, 10th Floor
18                                             San Diego, CA  92101
                                               Telephone:  (619) 233-4565
19                                             Facsimile:  (619) 233-0508
                                               Email: wnoss@scott-scott.com
20                                                      kanderson@scott-scott.com

21                                             -and-

22                                             CAPLAN & ROSS, LLP
                                               Brian D. Caplan (admitted *pro hac vice*)
23                                             Jonathan J. Ross (admitted *pro hac vice*)
                                               270 Madison Avenue, 13th Floor
24                                             New York, NY 10016
                                               Telephone:  (212) 973-2376
25                                             Facsimile:  (212) 661-4290
                                               Email: bcaplan@caplanross.com
26                                                      jross@caplanross.com

27                                             *Attorneys for Defendant-Counterclaimant*
                                               *Victor Willis*

28

ANSWER TO FIRST AMENDED COMPLAINT        21        Case No. 3:11-CV-01557-BTM (RBB)
AND COUNTERCLAIM

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2012, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 1, 2012.

    /s/ Walter W. Noss
Walter W. Noss (277580)
SCOTT+SCOTT LLP
707 Broadway, 10th Floor
San Diego, CA  92101
Telephone:  (619) 233-4565
Facsimile:  (619) 233-0508
Email:  wnoss@scott-scott.com

*Attorney for Defendant-Counterclaimant Victor Willis*