1

2

UNITED STATES DISTRICT COURT

3

SOUTHERN DISTRICT OF CALIFORNIA

4

| | |
|---|---|
| SCORPIO MUSIC (BLACK SCORPIO) S.A. and CAN'T STOP PRODUCTIONS, INC., | Case No.:  11cv1557 BTM(RBB) |

5

Plaintiff,

6

**ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND MOTION TO RETAX COSTS**

7

vs.

VICTOR WILLIS,

8

Defendant.

9

VICTOR WILLIS,

10

Counterclaimant,

11

12

vs.

13

SCORPIO MUSIC (BLACK SCORPIO) S.A., CAN'T STOP PRODUCTIONS, INC. and HENRI BELOLO,

14

15

Counterclaim-Defendants

16

17

        Defendant-Counterclaimant Victor Willis ("Willis") has filed a motion for

18

attorney's fees and a motion to retax costs.  For the reasons discussed below,

Willis's motions are **GRANTED**.

19

//

20

//

1

11cv1557 BTM(RBB)

# I.  BACKGROUND

Defendant Victor Willis ("Willis") is a songwriter and an original member of the Village People.  This lawsuit involves a dispute between Willis, on the one hand, and Plaintiffs/Counter-Defendants Scorpio Music S.A. ("Scorpio"), Can't Stop Productions, Inc. ("Can't Stop") and Counter-Defendant Henri Belolo ("Belolo"), on the other, over copyrights to certain musical compositions.

Between 1977 and 1979, Willis transferred his copyrights in 33 musical compositions (the "Compositions") to Can't Stop.  Copyright registrations for the Compositions, including the hit song "Y.M.C.A.," credit Willis as being one of several writers.

In January 2011, Willis served on Plaintiffs a notice of termination of his grants of copyright with respect to the Compositions.

On July 14, 2011, Plaintiffs commenced this lawsuit.  In their original complaint, Plaintiffs challenged the validity of the notice of termination and sought a judgment declaring that Willis has no right, title, or interest in the copyrights to the Compositions, requiring Willis to withdraw the notice of termination, and enjoining Willis from making any claims to the Compositions' copyrights.

In an order filed on May 5, 2012, the Court granted Willis's motion to dismiss.  The Court held that, contrary to Plaintiffs' contention, Willis could unilaterally terminate his grants under 17 U.S.C. § 203, because Willis granted his copyright

interests in the Compositions separately from the other co-authors.  However, the Court granted Plaintiffs leave to amend their complaint to seek declaratory relief regarding what percentage of copyright interest Willis was entitled to receive back upon termination.

On June 5, 2012, Plaintiffs filed their First Amended Complaint, seeking a judicial determination regarding the percentage of interest in the copyrights at issue that Willis was entitled to recover upon termination.  Plaintiffs contended that the correct measure of Willis's interest was the percentage Willis received in direct payments from BMI, or, at most, 33.3% (representing an equal share assuming there are 3 authors).

On August 1, 2012, Willis filed a Counterclaim.  In his Counterclaim for Declaratory Relief, Willis claimed that Henri Belolo did not contribute to the authorship of the lyrics or the music of 24 of the Compositions ("24 Disputed Works").  Willis did not dispute that Jacques Morali composed the music.  Willis claimed that he was entitled to a declaratory judgment that the notice of termination was valid, that he is a 50% owner of the copyrights to the 24 works, and that he is therefore entitled to recapture 50% of the copyright interests in each of the works.

On September 17, 2012, Counter-Defendants Scorpio, Can't Stop, and Belolo filed a motion to dismiss Willis's Counterclaim on the ground that it was barred by the three-year statute of limitations set forth in 17 U.S.C. § 507(b), as

3

well as the doctrine of laches.  In an order filed on March 4, 2013, the Court denied the motion to dismiss.  The Court found that there were triable issues of fact regarding when Willis's claim to 50% ownership of the copyrights to the 24 Disputed Works was plainly and expressly repudiated.

On March 29, 2013, Counter-Defendants filed a motion for partial summary judgment on Willis's Counterclaim, again arguing that Willis's claim was barred by the statute of limitations.  The Court held that the evidence submitted by Plaintiffs was not enough to establish a "plain and express repudiation" of Willis's claim of 50% ownership.  The Court denied the motion for partial summary judgment without prejudice and instructed Plaintiffs that they were not to file a new motion for partial summary judgment until Willis had a sufficient opportunity to conduct discovery.

On November 1, 2013, after the close of discovery, Counter-Defendants filed another motion for partial summary judgment based on statute of limitations and laches.  The Court denied the motion, finding that there were still triable issues of material fact with respect to whether, more than three years prior to the commencement of this suit, Belolo plainly and expressly repudiated a claim by Willis to 50% ownership of the copyright interests in the 24 Disputed Works.  With respect to the laches issue, the Court denied the motion without prejudice because the availability and/or scope of the defense of laches in copyright cases was

4

1   uncertain and was before the Supreme Court.

2       On June 20, 2014, after the Supreme Court rendered its decision in <u>Petrella</u>

3   <u>v. Metro-Godwyn-Mayer, Inc.</u>, __ U.S.__, 134 S.Ct. 1962 (2014), Counter-

4   Defendants filed a motion for partial summary judgment, renewing their laches

5   argument.  The Court denied the motion based on its interpretation of <u>Petrella</u>.

6       The jury trial in this case commenced on February 9, 2015.  On March 4,

7   2015, the jury returned a split verdict.  The jury found that for 13 of the 24 Disputed

8   Works, including "YMCA," Willis had established by a preponderance of the

9   evidence that Henri Belolo is not a joint author.  Conversely, the jury found that for

10  11 of the 24 Disputed Works, including "In the Navy," and "Macho Man," Willis had

11  not established by a preponderance of the evidence that Henri Belolo is not a joint

12  author.  The jury also found that Counter-Defendants had not established by a

13  preponderance of the evidence that Willis's claims were barred by the statute of

14  limitations or the doctrine of estoppel.

15      Judgment was entered on March 27, 2015, in accordance with the jury

16  verdict.  The Judgment specified that Willis recaptured 50% of the U.S. Copyright

17  in the 13 compositions on which Willis prevailed and recaptured 33.3% of the U.S.

18  Copyright in the remaining 11 compositions.

19  //

20  //

5

11cv1557 BTM(RBB)

## II.  DISCUSSION

### A.  Motion for Attorney's Fees

#### 1.  Entitlement to Fees

Willis seeks an award of $527,235.84 in attorney's fees as the prevailing party in this action.  As discussed below, the Court finds that an award of attorney's fees is justified and that the requested fees are reasonable.

The Copyright Act provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

In deciding whether to award attorney's fees, courts can look to five nonexclusive factors:  (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence.  Fogerty v. Fantasy, 510 U.S. 517, 534 n. 19 (1994).  The most important factor in determining whether to award fees is whether an award will further the purposes of the Copyright Act.  SOFA Ent., Inc. v. Dodger Prod., Inc., 709 F.3d 1273, 1280 (9th Cir. 2013).  The Act's "primary objective" is to "encourage the production of original literary, artistic, and

6

1   musical expression for the good of the public."  Fogerty, 510 U.S. at 524.

2      The Court finds that Willis is the prevailing party in this action and that he

3   achieved a high degree of success in this litigation.  First, Willis defeated Plaintiffs'

4   claim that he could not unilaterally terminate his grants of copyright under 17

5   U.S.C. § 203.  Next, Willis prevailed on a series of summary judgment motions

6   brought on the grounds of statute of limitations and laches.  Finally, at trial, Willis

7   prevailed on 13 of the 24 musical compositions, including "YMCA," which appears

8   to be the most lucrative of the songs in dispute.  Willis also won on Counter-

9   Defendants' affirmative defenses of statute of limitations and estoppel.

10      Although Willis is the prevailing party, the Court does not find that Counter-

11   Defendants acted frivolously or with an improper motive.  Nor does the Court find

12   that Counter-Defendants made objectively unreasonable factual or legal

13   arguments on the whole.[1]

14      The Court does find, however, that a grant of attorney's fees would advance

15   considerations of compensation and deterrence and would further the purposes of

16

17   _____

18   [1] Plaintiffs argue that at least with respect to the first phase of the litigation
     concerning whether Willis was permitted to terminate his grant of copyright in joint
     works, attorney's fees are not warranted because the issue was a matter of first
19   impression. The Court disagrees.  Plaintiffs' position that Willis could not terminate
     his grant of copyrights was not supported by the language or purpose of the
20   Copyright Act.

7

the Copyright Act.  Section 203, providing for the termination of transfers of copyrights, was designed to "safeguard[ ] authors against unremunerative transfers" and address "the unequal bargaining position of authors, resulting in part from the impossibility of determining a work's value until it has been exploited." H.R. Rep. No. 94-1476, at 124 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5740. Willis is an author who incurred significant attorney's fees in trying to get back what he transferred to Plaintiffs, parties with superior bargaining power, decades ago. An award of attorney's fees is justified to encourage authors like Willis to assert their rights to regain their copyright interests and to deter production companies and other transferees of copyright from attempting to interfere with those rights.

## 2. Amount of Fees

Under federal fee-shifting statutes, the lodestar approach is the "guiding light" in determining a reasonable fee. Perdue v. Kenny A., 599 U.S. 542, (2010). To calculate the "lodestar," the court multiplies the appropriate hourly rate for the work performed by the number of hours reasonably expended on the work.  Id. Although the lodestar calculation may be increased in "rare" and "exceptional" circumstances, there is a strong presumption that the lodestar amount is sufficient. Id. at 1673.  In appropriate cases, the court may adjust the "presumptively reasonable" lodestar figure based on the factors listed in Kerr v. Screen Extras

8

1    Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975), that have not already been

2    subsumed in the lodestar calculation.  Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d 614,

3    622 (9th Cir. 1993).

4        Here, Willis seeks an award of $527,235.84 in attorney's fees.[2]  This amount

5    is comprised of 1,311.7 hours billed at rates varying from $150 (for paralegal time)

6    to $550 for attorney Brian Caplan.  The billing rates for Willis's principal attorneys

7    are as follows:

8        ● Brian D. Caplan:  $550 per hour while a member at Reitler Kallas &

9           Ronsenblatt, LLP (November 2015 and after), and $500 per hour while

10          a partner at Caplan & Ross, LLP.  Mr. Kaplan has represented clients

11          in the entertainment industry and intellectual property matters for 30

12          years.   (Caplan Decl. ¶ 2.)  He is a member of the Copyright Society

13          of the United States and is a frequent lecturer on copyright and

14          litigation topics.  (Id.)

15       ● Jonathan J. Ross:  $350 as a sole practitioner (from September 1,

16          2014 forward) and $400 as a member of Caplan & Ross, LLP.  Mr.

17          Ross has been practicing law since 1993 and has significant

18

19   —————————————

20       [2] This figure is $3,248 less than the amount initially requested.  The reduction is for
     certain billing entries pertaining to communications with media and for time billed in connection
     with the French litigation.

11cv1557 BTM(RBB)

1    experience in litigating copyright and trademark disputes and other

2    commercial disputes.  (Ross Decl. ¶ 2.)

3    ● <u>John Jasnoch</u>:  $300 per hour.  Mr. Jasnoch has been practicing in

4    the area of complex litigation at Scott+Scott for over three years.

5    (Jasnoch Decl. ¶ 2.)

6    Based on the Court's experience handling fee motions, the Court finds that the

7    requested hourly reasonable rates are reasonable and in line with the prevailing

8    rates in the community for similar services of lawyers of comparable skill and

9    reputation.   <u>See, e.g.</u>,  <u>Brighton Collectibles, Inc. v. RK Texas Leather Mfg.</u>,

10   2014WL 5438532 (S.D. Cal. Oct. 24, 2014) (approving hourly rate of $625 for lead

11   counsel with over 30 years of experience in a copyright case).

12   The Court also finds the number of requested hours to be reasonable.  Willis

13   provides a summary breakdown of the hours in his Supplemental Memorandum of

14   Points and Authorities [Doc. 250].  Counter-Defendants argue that time spent on

15   publicity activities and the French litigation should be disallowed.   Willis has

16   already agreed to eliminate these charges.  Counter-Defendants also argue that

17   the fees for Harold Seider that are contained in the billings for Caplan & Ross

18   should not be recoverable because Mr. Seider never participated in the litigation

19   as an attorney of record and is not admitted to practice in California.  However, Mr.

20   Seider, a copyright specialist with over fifty years of experience in the music

1  industry, acted as of counsel to Caplan & Ross during the course of the litigation.

2  (Caplan Decl. ¶ 4.)   Therefore, the inclusion of his time in the fee request is

3  appropriate.  His hourly rate of $360 per hour is more than reasonable.

4      Counter-Defendants also generally argue that due to the participation of

5  three separate law firms, many of the tasks performed were duplicative.   But

6  Counter-Defendants do not identify any specific duplicate billings.  The Court has

7  reviewed the billing summaries and did not discern a pattern of billing for the same

8  work.   Furthermore, the Court does not find it unreasonable for more than one

9  attorney to be present during trial.

10     Therefore, the lodestar figure of $527,235.84 is presumptively reasonable.

11 The Court does not find that an upward or downward adjustment is warranted.

12 Therefore, the Court grants the requested attorney's fees in the amount of

13 $527,235.84.

14

15 B.  Motion to Retax Costs

16     On April 10, 2015, Willis filed an application to tax costs in the amount of

17 $18,500.00.  In an Order filed on May 26, 2015, the Clerk denied the application

18 for failing to comply with Civ.L.R. 54.1(a), which provides:

19     The bill of costs must itemize the costs claimed and must be supported
       by a memorandum of costs, an affidavit of counsel that the costs
20     claimed are allowable by law, are correctly stated, and were
       necessarily incurred, and copies of the invoices for requested costs.

11cv1557 BTM(RBB)

On June 1, 2015, Willis filed a motion to retax costs.  In the motion to retax costs, the only costs sought by Willis are travel expenses and attendance fees for witnesses Russell Dabney and Phillip Hurtt, totaling $3,034.36.  In support of the motion to retax, Willis has submitted the declaration of his attorney, John Jasnoch, along with receipts for the lodging and airfare costs.  Willis should have provided these receipts when he filed his original application to tax costs, and his failure to provide supporting documentation resulted in the denial of his application.

However, because the costs are recoverable pursuant to 18 U.S.C. § 1821(b), (c)(1), and (d)(1)-(2) and were necessarily incurred, the Court will award these costs.  The Court grants Willis's motion to retax costs in the amount of $3,034.36.

//
//
//
//
//
//
//
//

12

11cv1557 BTM(RBB)

### III.  <u>CONCLUSION</u>

For the reasons discussed above, Willis's motion for attorney's fees [Doc. 216] and motion to retax costs [Doc. 238] are **GRANTED**.  The Court awards Willis $527,235.84 in attorney's fees and $3,034.36 in costs.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

Dated:  September 15, 2015

Barry Ted Moskowitz, Chief Judge
United States District Court

13

11cv1557 BTM(RBB)